UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEBRASKA

In re:

HANSEN-MUELLER CO.,[1]

Debtor.

Case No. 25-81226

Chapter 11

### DEBTOR'S MOTION FOR APPROVAL OF AGREED ORDER AUTHORIZING INTERIM USE OF CASH COLLATERAL AND PROVIDING ADEQUATE PROTECTION AND SETTING FINAL HEARING

Hansen-Mueller Co., as debtor and debtor-in-possession (the "Debtor") in the above-referenced Chapter 11 case (the "Case") moves this Court pursuant to 11 U.S.C. § 363(c)(2), Bankruptcy Rules 4001(b) and 9014, and Local Rule 4001-2, for authority to use cash collateral on an interim basis and to provide adequate protection to BMO Bank, N.A. ("BMO"), as administrative agent for and collateral agent for certain revolver and term loan lenders ("Secured Lenders") described in the Credit Agreement and Security Agreement each dated March 30, 2023, as subsequently amended and restated or otherwise modified from time to time (collectively, the "Loan") and to set a final hearing on Debtor's authority to use cash collateral on a final basis, pursuant to the agreed Proposed Interim Order attached hereto as **Exhibit A**. As grounds therefore, Debtor states as follows:

### JURISDICTION AND VENUE

1.      This Court has jurisdiction over this case pursuant to 28 U.S.C. § 1334 and venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

---

[1] The Debtor in this chapter 11 case, along with the last four digits of Debtor's federal tax identification number, is: Hansen-Mueller Co. (9385). Debtor's location is 13321 California Street, Suite 100, Omaha, NE 68154.

2.      This is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A) and (O), and the Debtor consents to entry of a final order by the Court in connection with this Motion to the extent it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

3.      The statutory bases for the relief requested by this Motion are sections 345 and 363 of the Bankruptcy Code, Bankruptcy Rules 6003 and 6004, and Local Rule 9013-1.

## BACKGROUND

5.      The Debtor filed its voluntary petition under Chapter 11 of the United States Bankruptcy Code on November 17, 2025 (the "Petition Date").

6.      Since the date of the filing of its bankruptcy petition, the Debtor has remained in possession of its assets and has operated its business and managed its financial affairs as a Debtor-in-Possession pursuant to 11 U.S.C. §§ 1107 and 1108.

7.      A detailed description of the Debtor and its business, the facts and circumstances leading up to the filing of this Chapter 11 Case, and the facts supporting this Motion are set forth in greater detail in the *Declaration of Michael Compton, Chief Restructuring Officer of Hansen-Mueller Co., in Support of Chapter 11 Petition and First Day Motions*, (the "First Day Declaration"), filed contemporaneously herewith.

### Concise Statement of the Material Terms of the Proposed Interim Order

8.      Pursuant to Bankruptcy Rule 4001(b), the Debtors submit the following concise statement of the material terms of the Proposed Interim Order[2]:

---

[2] Any summary of any terms of the Proposed Interim Order contained in this motion is qualified in its entirety by reference to the provisions of the Proposed Interim Order. The entered interim order will control in the event of any inconsistency between the descriptions set forth in this motion and the Proposed Interim Order.

| **Summary of Material Terms** | | **Location** |
|---|---|---|
| **Parties with an Interest in Cash Collateral** Bankruptcy Rule 4001(b)(1)(B)(i) | BMO Bank, N.A. FKA BMO Harris Bank, N.A. Macquarie Bank Limited Farm Credit Mid-America, PCA Farm Credit Services of America, PCA CoBank, FCB | |
| **Purposes for Use of Cash Collateral** Bankruptcy Rule 4001(b)(1)(B)(ii) | In accordance with the terms and conditions of the Proposed Interim Order and Approved Budget, for (i) working capital, general corporate purposes, and administrative costs and expenses of the Debtor incurred in the Chapter 11 Case, including first-day related relief subject to the terms hereof; and (ii) adequate protection payments to the Secured Creditors. The Approved Budget is attached as Exhibit 1 to the Proposed Interim Order. | ¶ F, Ex.1 |
| **Budget** Bankruptcy Rule 4001(b)(1)(B)(ii) | The Approved Budget is attached as Exhibit 1 to the Proposed Interim Order. | ¶ 3(a), Ex. 1 |
| **Termination Date and Termination Event** Bankruptcy Rule 4001(b)(1)(B)(iii) | The termination date is January 2, 2026, which date may be extended with the express written consent of BMO (which consent may be granted via electronic mail). The occurrence of Termination Event aka Event of Default includes (i) failure to make a payment required under the Proposed Interim Order, (ii) failure to comply with any covenant, agreement, or provision of the Proposed Interim Order, (iii) use of Cash Collateral to fund any payment in respect of any unauthorized prepetition or postpetition claim, (iv) the Proposed Interim Order or the Replacement Liens or Superpriority Claims ceasing to be in full force or effect, (v) the Court modifying the Proposed Interim Order (before any Final Hearing), (vi) the Court dismissing the Case, (vii) the Court converting the Case to chapter 7, (viii) the appointment of a trustee or examiner, or (ix), the Debtor filing a motion seeking or supporting (v) through (ix). | ¶¶ 4, 9 |
| **Adequate Protection** Bankruptcy Rule 4001(b)(1)(B)(iv) | Secured Lenders are granted Replacement Liens, Superpriority Claims, paid the postpetition fees and expenses, and their postpetition interest shall accrue at the default rate and be added to increase the outstanding principal balance. | ¶¶ 4, 5 |
| **Carveout Bankruptcy Rule 4001(b)(1)(B)(iii)** | The Proposed Interim Order provides a carveout of certain statutory fees and allowed professional fees of the Debtor and any Committee appointed in the Chapter 11 | ¶ 8(a) |

| | Case pursuant to section 1103 of the Bankruptcy Code, and a Post-Carveout Trigger Notice Cap, all as detailed in the Proposed Interim Order (the "Carveout"). | |
|---|---|---|
| **Waiver/Modification of Automatic Stay** Bankruptcy Rule 4001(b)(1)(B)(iii) | If an Event of Default is not cured, the stay of section 362 of the Bankruptcy Code shall be automatically terminated without further notice or order, and the Secured Lenders shall be permitted to exercise all remedies set forth herein, in the Loan, and as otherwise available at law against the Collateral, as set forth in the Proposed Interim Order. | ¶ 12 |
| **Stipulations of the Debtor** Bankruptcy Rule 4001(b)(1)(B)(iii) | The Proposed Interim Order contains certain stipulations by the Debtors, among other things, to: (i) the amount of the claims of the Secured Lenders as of the Petition Date; (ii) the validity and priority of the liens and security interests securing the Prepetition Obligations; (iii) the lack of a basis to challenge or avoid the validity, enforceability, priority, or perfection of the liens and security interests securing the Prepetition Obligations; and (iv) the fact that the Secured Lenders have a continuing security interest in all or substantially all of the Cash Collateral. | ¶ D |
| **Binding Effect of the Debtor's Stipulations on Third Parties** Bankruptcy Rule 4001(b)(1)(B)(iii) | The Debtor has admitted, stipulated, and agreed to the various stipulations and admissions contained in the Proposed Interim Order, which stipulations and admissions shall be binding upon the Debtor and any successors thereto. The Debtor's admission, stipulation, and acknowledgement is without prejudice to the rights of any non-Debtor party in interest. | ¶ D |
| **506(c) Waiver** Bankruptcy Rule 4001(b)(1)(B)(iii) | Only upon entry of a Final Order, and subject to the terms of the Final Order, in exchange for Secured Lenders' agreement to subordinate their Replacement Liens and Superpriority Claim to the Carveout, no costs or expenses of administration which have been or may be incurred in the Chapter 11 Case at any time shall be charged against the Secured Lenders, or any of their claims or the Prepetition Collateral pursuant to sections 105 or 506(c) of the Bankruptcy Code, or otherwise, without the prior written consent of the Secured Lenders, and no such consent shall be implied from any other action, inaction, or acquiescence by any such agents or lenders | ¶ 16 |

9.      On or about March 30, 2023, the Debtor, as borrower, and HM Trucking, KC MO

Owner, Sioux City Owner, KC KS Owner, 30th & Cornhusker Lincoln, LLC, 110 East Highway

Gregory, LLC, and 805 S. Union Fremont, LLC, as guarantors, entered into a Credit Agreement

and Security Agreement, among other agreements, (collectively, the "Loan") with BMO Harris

Bank N.A., as administrative agent ("Agent") for certain Secured Lenders under which Secured

Lenders would provide Debtor access to a line of credit (the "Revolving Loan") and fund term

debt in connection with Debtor and its guarantors granting security to Agent for the benefit of the

Secured Creditors in certain real property assets (the "Term Loan").  As collateral for the Loan,

the Debtor granted Agent a security interest in, and right of set-off against, all right, title, and

interest of borrower and guarantor, whether now owned or existing or hereafter created, acquired

or arising, in and to all of the following personal property:  (a) Accounts; (b) Chattel Paper; (c)

Instruments (including Promissory Notes); (d) Documents; (e) General Intangibles (including

Payment Intangibles and Software, patents, trademarks, tradestyles, copyrights, and all other

intellectual property rights, including all applications, registration, and licenses therefor, and all

goodwill of the business connected therewith or represented thereby); (f) Letters of Credit and

Letter-of-Credit Rights; (g) Supporting Obligations; (h) Deposit Accounts; (i) Investment

Property (including certificated and uncertificated Securities, Securities Accounts, Security

Entitlements, Commodity Accounts, and Commodity Contracts); (j) Inventory and Farm

Products; (k) Equipment (including all software, whether or not the same constitutes embedded

software, used in the operation thereof); (l) fixtures; (m) Commercial Tort Claims (as described

on Schedule F to the Security Agreement or on one or more supplements to the Security

Agreement); (n) Rights to merchandise and other Goods (including rights to returned or

repossessed Goods and rights of stoppage in transit) which is represented by, arises from or

related to any of the foregoing; (o) Monies, personal property, and interests in personal property of such borrower and guarantor of any kind or description now held by any Secured Creditor or at any time hereafter transferred or delivered to, or coming into the possession, custody or control of, any Secured Creditor, or any agent or affiliate of any Secured Creditor, whether expressly as collateral security or for any other purpose (whether for safekeeping, custody, collection or otherwise), and all dividends and distributions on or other rights in connection with any such property; (p) supporting evidence and documents relating to any of the above-described property, including, without limitation, computer programs, disks, tapes and related electronic data processing media, and all rights of such borrower or guarantor to retrieve the same from their parties, written applications, credit information, account cards, payment records, correspondence, delivery and installation certificates, invoice copies, delivery receipts, notes and other evidences of indebtedness, insurance certificates and the like, other with all books of account, ledgers and cabinets in which the same are reflected or maintained; (q) Accessions and additions to, and substitutions and replacements of, any and all of the foregoing; and (r) Proceeds and products of the foregoing and all insurance of the foregoing and proceeds thereof" (collectively, the "Personal Property Collateral").  In addition, the Debtor and its subsidiaries (*i.e.*, the guarantors under the Loan), pledged their interest in certain real estate and fixtures (the "Real Estate Collateral" and together with the Personal Property Collateral, the "Collateral") by executing certain mortgages, deeds of trust, assignments of rent, and security instruments in favor of certain Secured Creditors that were recorded in Iowa, Kansas, Missouri, Minnesota, Ohio, and Wisconsin, among other states.  On March 31, 2023, Agent filed a UCC-1 Financing Statement with the Nebraska Secretary of State under "Hansen-Mueller Co.", describing its collateral as "All right, title and interest in and to all personal property and fixtures of the debtor,

whether now owned or existing or hereafter created, acquired or arising." Agent subsequently amended the Financing Statement on July 9, 2024, and July 10, 2024, to change Agent's name and the Debtor's address, respectively.

10. On December 20, 2023, the Debtor and its guarantors entered into the First Amendment and Waiver to Credit Agreement with Agent and the Secured Creditors. On December 21, 2023, Agent filed a UCC-1 Financing Statement with the Nebraska Secretary of State under "Hansen-Mueller Co.", describing the collateral as "All right, title and interest in and to all personal property and fixtures of the Debtor, whether now owned or existing or hereafter created, acquired or arising."

11. On March 30, 2023, the Debtor and its guarantors entered into the Second Amendment and Waiver to Credit Agreement with Agent and the Secured Creditors. Subsequently, the Debtor entered a Third, Fourth, Fifth, Sixth, Seventh, Eighth, Ninth, Tenth, Eleventh, Twelfth, Thirteenth, and Fourteenth Amendment, with the Fourteenth Amendment dated as of October 9, 2025, serving as a Forbearance Agreement as well.

12. As of November 14, 2025, the outstanding principal amount of the Loan is $50,883,149.20, comprised of $32,008,149.16 relating to the Revolving Loan and $18,875,000.00 relating to the Term Loan, plus a deficiency fee of $2,598,404.00, and HM holds approximately $6,000,000.00 in its bank account with Agent, subject to outstanding but uncleared checks and obligations ("Cash Collateral").

13. The Debtor anticipates receiving additional cash in the regular course of its business during the pendency of its bankruptcy case but suspects that such cash receipts will not be as predictable as they were previously.

### Debtor's Cash Needs Post-Petition and Cash Management System

14.     In the near term, the Debtor will need access to the Cash Collateral to fund day-to-day operations in the ordinary course, including its (a) bi-weekly payroll (including benefits) of approximately $340,000.00, plus the $90,000.00 of payroll (including benefits) associated with those employees seconded to its joint venture for which it ultimately will be reimbursed, (b) insurance obligations, including its workers compensation insurance, its health insurance, dental insurance, and life insurance for its employes, and its property, casualty, general liability, auto, and umbrella policies, in the amount of approximately $215,000.00 per month, and (c) taxes and fees, including real estate taxes, personal property taxes of $500,000 due but not yet payable. The certainty of being able to make payments when due is essential to the continued operation of the Debtor's business during the pendency of these cases and thus, the Debtor's ability to maximize the value of its assets.

15.     BMO asserts and Debtor agrees that BMO has a perfected security interest in all of Debtor's Cash Collateral, by virtue of certain prepetition loans and UCC Financing Statements more specifically described in the Interim Order attached as Exhibit 1.

16.     Debtor's primary secured assets include its accounts receivable from the operation of its business, its inventory, cash and equipment, fixtures/improvements, real estate, and an interest in a joint venture.

17.     BMO's security interests attach to cash, inventory, and accounts receivable, which all are cash collateral.

18.     Without the use of cash collateral, the Debtor will not be able to reorganize. Indeed, the Debtor is obligated to make payroll in the amount of $430,000.00 every month, which includes costs of labor, wages and salaries, officer salaries and benefits, and payroll taxes.

19.     Moreover, the Debtor must continue to pay additional expenses for rent in the approximate monthly amount of $180,000.00, in addition to taxes, insurance costs, professional costs and other costs to operate its business.

20.     To preserve the going concern value of the Debtor's business and to liquidate its assets, it is imperative that the Debtor's business be operated, and to operate, the Debtor requires the use of Cash Collateral.

21.     Should the Debtor default on the provisions of adequate protection, BMO shall have the opportunity to obtain further relief from this Court as reflected in the Proposed Interim Order. Moreover, BMO reserves the right to seek additional adequate protection pursuant to the Proposed Interim Order.

22.     Due to the nature of the Debtor's business, it is of critical importance that the Debtor be authorized to use Cash Collateral to continue its business operations. Based on the equities of this case, the Debtor should be authorized to use Cash Collateral, including cash, accounts receivable, and inventory pursuant to 11 U.S.C. § 552(b).

23.     Pursuant to Rule 4001(b)(2), the Debtor requests that it be authorized to use Cash Collateral pursuant to an interim order authorizing the use of Cash Collateral to avoid immediate and irreparable harm to the estate consistent with the Debtor's proposed budget as set forth on Exhibit

24.      1 to the Proposed Interim Order particularly with respect to the payment of salaries, associated taxes and other enumerated costs to operate its business.

25.     Upon information and belief, the Debtor does not owe pre-petition taxes to the Internal Revenue Service and/or any Department of Revenue for any state that the Debtor

operates its business in. In any event, the Debtor is providing notice of this Motion to the following taxing authorities to the extent that they may claim an interest in the Debtor's cash.

26.     On an interim basis, the Debtor requests the use of Cash Collateral consistent with the agreed Proposed Interim Order attached as Exhibit A.

27.     To that end, pursuant to Paragraph 24 of the agreed Interim Order, the Debtor also requests that the Court set a hearing on the Debtor's use of cash collateral on a final basis and a deadline to file a proposed Final Order, as defined in the Interim Order, prior thereto.

### Processing of Checks and Electronic Fund Transfers Should Be Authorized

28.     The Debtor has sufficient funds to pay the amounts described in this Motion by virtue of expected cash flows during the chapter 11 Case and anticipated access to Cash Collateral. In addition, under the Debtor's existing cash management system, the Debtor can readily identify checks or wire transfer requests as relating to authorized payments. Accordingly, the Debtor believes that checks or wire transfer requests, other than those relating to authorized payments, will not be honored, inadvertently. Therefore, the Debtors respectfully request that the Court authorize BMO, when requested by the Debtor, to receive, process, honor, and pay any and all checks or wire transfer requests in respect of the relief requested in this Motion.

### EMERGENCY CONSIDERATION

29.     Bankruptcy Rule 6003 empowers a court to grant relief within the first twenty-one days after the Petition Date "to the extent that relief is necessary to avoid immediate and irreparable harm." Failure to receive the relief requested in this Motion during the first twenty-one days of this chapter 11 case would severely disrupt the Debtor's operations at this critical juncture. The Debtor has satisfied the "immediate and irreparable" harm standard in Bankruptcy Rule 6003 and request that the Court approve the relief requested in this motion on an emergency basis.

## **WAIVER OF BANKRUPTCY RULES 6004**

30.     The Debtor requests that the Court enter an order providing that notice of the relief requested herein satisfies Bankruptcy Rule 6004 and that the Debtor has established cause to exclude such relief from the fourteen-day stay period under Bankruptcy Rule 6004, which is necessary to implement the relief requested in this motion.

## **NOTICE**

31.     The Debtor will provide notice of this Motion to (a) the Office of the United States Trustee for the District of Nebraska; (b) the holders of the 20 largest unsecured claims against the Debtor; (c) the Debtor's prepetition secured lenders, BMO Bank N.A., Farm Credit Services of America, PCA, Farm Credit Mid-America, PCA, and CoBank, FCB; (d) the United States Attorney's Office for the District of Nebraska; (e) the Internal Revenue Service; (f) all parties who have expressed an interest to Ascendant Consulting Partners, LLC in some or all of the assets; (g) counsel to any official committee of unsecured creditors appointed in this chapter 11 case (upon appointment); (h) the Nebraska Department of Revenue; (i) the Alabama Department of Revenue; (j) the Georgia Department of Revenue; (k) the Iowa Department of Revenue; (l) the Kansas Department of Revenue; (m) the Louisiana Department of Revenue; (n) the Minnesota Department of Revenue; (o) the Missouri Department of Revenue; (p) the Ohio Department of Revenue/Department of Taxation; (q) the Oklahoma Department of Revenue; (r) the Tennessee Department of Revenue; (s) the Texas Department of Revenue; (t) the Wisconsin Department of Revenue; (u) the City of Kansas City, Missouri – Revenue Division; (v) the City of Toledo Income Tax; (w) Unified Government Treasury of Wyandotte County, Kansas; (x) Treasurer of Lucas County, Ohio; (y) Jackson County, Missouri Collector; (z) St. Louis County,

Minnesota Auditor;   (aa) Treasurer of Douglas County, Wisconsin; (bb) Treasurer of Saline County, Kansas; (cc) Treasurer of Harris County, Texas; (dd) Treasurer of Woodbury County; (ee) Treasurer of Douglas County, Nebraska; and (ff) all parties on the Rule 2002 Notice list.

32.     The Debtor submits that, under the circumstances, no further notice of the hearing is necessary and requests that any further notice be dispensed with and waived.

## **CONCLUSION**

WHEREFORE, the Debtor respectfully requests that the court enter the Proposed Interim Order attached hereto as Exhibit A, providing the relief sought forth herein and such other, further and different relief as the Court deems just and equitable.

DATED this 17th day of November, 2025.

HANSEN-MUELLER CO., Debtor,

By: /s/ Brian J. Koenig
    Brian J. Koenig, #23807
    Donald L. Swanson, #16385
    Trevor J Lee, #27063
    KOLEY JESSEN P.C., L.L.O.
    1125 South 103rd Street, Suite 800
    Omaha, NE 68124
    (402) 390-9500
    (402) 390-9005 (fax)
    Brian.Koenig@koleyjessen.com
    Don.Swanson@koleyjessen.com
    Trevor.Lee@koleyjessen.com

## **EXHIBT A – INTERIM ORDER**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEBRASKA**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| HANSEN-MUELLER, INC., | ) | Case No. 25-81226 |
| | ) | |
| Debtor. | ) | |
| | ) | |

**INTERIM ORDER (I) AUTHORIZING THE USE OF CASH COLLATERAL,
(II) GRANTING ADEQUATE PROTECTION TO PREPETITION
SECURED LENDERS, AND (III) GRANTING RELATED RELIEF**

Upon the motion (the *"Motion"*)[1] of the above-captioned Debtor and Debtor-in-possession (the *"Debtor"*) pursuant to sections 105, 361, 362, 363 and 507 of the Bankruptcy Code, and Rules 2002, 4001, 6004, and 9014 of the Bankruptcy Rules, and the Local Rules, for entry of this interim order (*"Interim Order"*) and entry of the Final Order (as defined below) by the Court:

(i)     **authorizing the Debtor to use Cash Collateral on the terms set forth in this Interim Order;**

(ii)     **granting adequate protection as set forth in this Interim Order;**

(iii)     **modifying the automatic stay imposed by Bankruptcy Code section 362 to the extent necessary to implement and effectuate the terms and provisions of this Interim Order;**

(iv)     **waiving any applicable stay (including under Bankruptcy Rules 4001 and 6004);**

(v)     **authorizing the Debtor to use Cash Collateral during the period commencing on the date of the Court's entry of this Interim Order and ending on the earlier of (a) the date the Court** enters its order approving the requested relief on a final

---

[1]     Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion.

**EXHIBIT A**

basis (the *"Final Order"*) and (b) the date on which the Debtor**'s** right to use Cash Collateral terminates under the terms of this Interim Order; and

**(vi)   scheduling a final hearing (the *"Final Hearing"*) to consider entry of the Final Order granting the relief requested in the Motion on a final basis.**

The Interim Hearing on the Motion having been held on November 17, 2025; and based upon all of the pleadings filed with the Court, the evidence presented at the Interim Hearing and the entire record herein; and the Court having heard and resolved or overruled all objections to the interim relief requested in the Motion; and the Court having noted the appearances of all parties-in-interest; and it appearing that the relief requested in the Motion is in the best interests of the Debtor, its estate, and its creditors, and other parties-in-interest; and the Debtor having provided sufficient notice of the Motion as set forth in the Motion and it appearing that no further or other notice of the Motion need be given; and after due deliberation and consideration, and sufficient cause appearing therefor:

**BASED ON THE RECORD ESTABLISHED AT THE INTERIM HEARING, THE BANKRUPTCY COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:**

A.   *Jurisdiction; Venue.*   The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.   The Debtor has confirmed its consent, pursuant to Bankruptcy Rule 7008, to the entry of a final order by the Bankruptcy Court in connection with the Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.   Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.   The bases for the relief requested herein are sections 105, 361, 362, 363, and 507 of the Bankruptcy Code, Bankruptcy Rules 2002, 4001, 6004, and 9014, and the Local Bankruptcy Rules.

B.      *Irreparable Harm*.    The interim relief granted herein is necessary to avoid immediate and irreparable harm to the Debtor and the Debtor's estate as more fully set forth below.

C.      *Cash Collateral*.    The Debtor requires the use of Cash Collateral to operate its businesses and pay certain prepetition obligations.

D.      *Prepetition Secured Parties, Prepetition Collateral and the Prepetition Obligations*.  Without prejudice to the rights of any non-Debtor party in interest, the Debtor admits, stipulates, acknowledges and agrees that (a) as of the Petition Date, the Debtor was a party to that certain Credit Agreement, dated as of March 30, 2023 (as amended, amended and restated, supplemented, or otherwise modified from time to time, the *"Credit Agreement"*) with BMO Bank N.A. (*"BMO"*), as administrative agent and collateral agent for certain revolver and term loan lenders (the *"Prepetition Senior Lenders"* and together with BMO, the *"Prepetition Secured Parties"*), (b) the Credit Agreement provides that (1) the Debtor is obligated for principal, accrued and unpaid interest, fees, costs, expenses, indemnities and other amounts arising under the Loan Documents (as defined in the Credit Agreement) (the *"Prepetition Obligations"*), and (2) all of the Prepetition Obligations are secured by first-priority liens (the *"Prepetition Liens"*) on substantially all of the Debtor's assets (the *"Prepetition Collateral"*), and (c) as of the Petition Date, the outstanding Prepetition Obligations include terms loans with an aggregate outstanding principal balance of not less than $18,875,000.00 and revolving loans with an aggregate outstanding principal balance of not less than $32,008,149.16 (the "*Prepetition Revolving Loan Obligations*") for a total outstanding principal balance of not less than $50,883,149.20 and together with the deficiency fee of $2,598,404.00 (the "*Prepetition Obligations*").  Without prejudice to the rights of any non-Debtor party in interest, the Debtor further acknowledges, agrees and stipulates that (a) the Prepetition Liens (1) are valid, binding, enforceable and perfected liens in the Prepetition Collateral, (2) were granted to BMO for the benefit of the Prepetition Senior Lenders

for fair consideration and reasonably equivalent value, (3) are not subject to avoidance, recharacterization or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law, and (4) are subject and subordinate only to valid, perfected and unavoidable liens permitted under the applicable Loan Documents, but only to the extent that (x) such liens are permitted by the applicable Loan Documents to be senior to the applicable Prepetition Liens and (y) such liens are actually senior to the applicable Prepetition Liens under applicable law, and (b)(1) all of the Prepetition Obligations constitute legal, valid and binding obligations of the Debtor, enforceable in accordance with the terms of the applicable Loan Documents, (2) no setoffs, recoupments, offsets, defenses or counterclaims to any of the Prepetition Obligations exist, and (3) no portion of the Prepetition Obligations or any payments made to or for the benefit of the Prepetition Secured Parties are subject to avoidance, recharacterization, recovery, subordination, attack, offset, counterclaim, defense or "claim" (as defined in the Bankruptcy Code) of any kind pursuant to the Bankruptcy Code or applicable non-bankruptcy law.  The foregoing acknowledgments by Debtor of the Prepetition Obligations and the rights, priorities and protections granted to the Prepetition Secured Parties pursuant to the Loan Documents shall be deemed a timely filed proof of claim on behalf of the Prepetition Secured Parties in this Chapter 11 Case, and neither BMO nor the Prepetition Senior Lenders shall be required to file any additional proofs of claim with respect to the Prepetition Obligations.

E.     *Adequate Protection*.  The Adequate Protection Obligations (as defined below) are intended to protect the interests of the Prepetition Secured Parties in the Prepetition Collateral, subject to the rights of the Prepetition Secured Parties to request additional adequate protection as provided herein.

F.     *Immediate Entry of Interim Order*.  The Debtor has requested immediate entry of this Interim Order pursuant to Bankruptcy Rule 4001(b)(2), upon notice provided as set forth in

the Motion, which is, in the Debtor's belief, the best available under the circumstances. The permission granted herein to utilize Cash Collateral is necessary to avoid immediate and irreparable harm to the Debtor. The Debtor has an immediate need to use Cash Collateral to permit the orderly continuation of the operation of its businesses. The Debtor does not have sufficient available sources of working capital and financing to carry on the operation of its businesses without the Debtor's continued ability to use Cash Collateral. Among other things, entry of the Order will minimize disruption of the Debtor's businesses and operations and permit them to pay its operating expenses, subject to the Approved Budget, including, without limitation, to retain its employees, maintain business relationships with its vendors, and maintain customer and vendor confidence by demonstrating an ability to maintain operations. Based upon the foregoing findings, acknowledgements, and conclusions, and upon the record made before the Bankruptcy Court at the Interim Hearing, and good and sufficient cause appearing therefor;

**IT IS HEREBY ORDERED:**

1. *Disposition*. The Motion is granted on an interim basis and on the terms set forth herein. Any objections to the Motion that has not previously been withdrawn, waived, settled, or resolved and all reservations of rights included therein are hereby denied and overruled on its merits, but without prejudice to relief that may be granted on a final basis.

2. *Effectiveness*. This Interim Order shall constitute findings of fact (subject to the terms set forth herein) and conclusions of law and shall take effect and be fully enforceable *nunc pro tunc* to the Petition Date immediately upon entry hereof. Notwithstanding Bankruptcy Rule 4001(a)(3) or any other Bankruptcy Rule, or Rule 62(a) of the Federal Rules of Civil Procedure, this Interim Order shall be immediately effective and enforceable upon its entry and there shall be no stay of execution or effectiveness of this Interim Order.

3.      *Authorization to Use Cash Collateral*.  Pursuant to the terms and conditions of this Interim Order, and in accordance with the Approved Budget (subject to the Permitted Variance) (each as defined below), the Debtor is authorized to use Cash Collateral to pay its fees, costs and expenses in the ordinary course during its Chapter 11 Case through the Termination Date (as defined below).

(a)      ***Budget***.  **Attached hereto as <u>Exhibit 1</u> and incorporated by reference is the *"Approved Budget"* setting forth a budget through and including January 2, 2026 (the *"Budget Period"*), which reflects on a line-item basis the Debtor's anticipated disbursements through such date.  All disbursements of Cash Collateral by the Debtor pursuant to the terms of this Interim Order must be pursuant to the Approved Budget, subject to a permitted variance of 15% per budget line item and on an aggregate basis on a weekly basis (the *"Permitted Variance"*) (*provided* that there shall be no upward variance on Debtor Professional Fees (as defined below)).  The Debtor may use Cash Collateral only to satisfy items in the Approved Budget and only in the amounts provided in the Approved Budget, subject to the Permitted Variance.  The Approved Budget may only be modified with BMO's prior written consent.  The Debtor has reason to believe that the Approved Budget will be adequate, considering all available assets, to pay all administrative expenses due or accruing during the period covered by the Approved Budget.**

(b)      **Each week, the Debtor shall deliver to BMO a variance report comparing actual cash receipts and disbursements of the Debtor with the receipts and disbursements of the Budget, together with a written explanation of variances.**

(c)      ***Cash Management***.  **While this Interim Order remains in effect, the Debtor shall continue to deposit all collections, receipts, and other Cash Collateral in**

**deposit accounts held at BMO (the "*Deposit Accounts*").  The Debtor will not use any**
**funds made available to it except as specified in the Approved Budget and in**
**accordance with the Permitted Variance.**

4.      *Adequate Protection.*  In consideration for the Debtor's use of Cash Collateral, and
as protection against the possibility of diminution in value of the Prepetition Secured Parties'
interest in the Prepetition Collateral on a dollar-for-dollar basis (the *"Diminution in Value"*),
whether or not such Diminution in Value results from the sale, lease or use by the Debtor of the
Prepetition Collateral (including, without limitation, Cash Collateral) or the stay of enforcement
of any Prepetition Liens arising from section 362 of the Bankruptcy Code, or otherwise, the
Prepetition Secured Parties shall receive the following (collectively, the *"Adequate Protection*
*Obligations"*):

(a)      ***Replacement Liens.*  BMO, for its own benefit and the benefit of the**
**Prepetition Senior Lenders, is granted, to the extent of any Diminution in Value,**
**(valid, effective and fully perfected upon the date of entry of this Interim Order and**
**without the necessity of execution by the Debtor of mortgages, security agreements,**
**pledge agreements, financing statements, and other agreements or instruments) first**
**priority postpetition security interests in and liens in all property, assets or interests**
**in property or assets of the Debtor and each Debtor's "estate" (as defined in the**
**Bankruptcy Code) (in each case, whether now existing or hereafter acquired, and all**
**proceeds thereof), including, for the avoidance of doubt, the Cash Collateral,**
***provided* that any liens on proceeds and property recovered in respect of claims and**
**causes of action arising under sections 544, 545, 547, 548, 549, and 550 of the**
**Bankruptcy Code shall be subject to entry of the Final Order (such postpetition**

-7-

security interests and liens, the *"Replacement Liens"* and such collateral, the *"Adequate Protection Collateral"*).

(b)    ***Superpriority Claims.***  BMO, for its own benefit and the benefit of the Prepetition Senior Lenders, to the extent of any Diminution in Value, is granted superpriority administrative expense claims under section 507(b) of the Bankruptcy Code (the *"Superpriority Claims"*) against the Debtor's estate, having priority over any and all other claims against the Debtor, now existing or hereafter arising, of any kind whatsoever, including, without limitation, all administrative expenses of the kinds specified in or arising or ordered under sections 105(a), 326, 328, 330, 331, 363, 503(b), 506(c), 507, 546(c), 726, 1113, and 1114 of the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment, which allowed claims shall be payable from and have recourse to all prepetition and postpetition property of the Debtor and all proceeds thereof.

(c)    ***Postpetition Fees and Expenses.***  The Debtor shall pay to BMO the reasonable and documented fees (including reasonable and documented attorneys' fees), and other out-of-pocket expenses incurred by BMO from the Petition Date through the Budget Period (the *"Lender Professional Fees"*).  The amount of the Lender Professional Fees actually paid, shall be applied to reduce the principal balance of the secured Prepetition Obligations only if it is later established that the Prepetition Secured Parties are undersecured.  None of such fees, costs, expenses or other amounts shall be subject to Court approval (subject to the limitations below) or U.S. Trustee guidelines, and no recipient of any such payment shall be required to file with respect thereto any interim or final fee application with this Court; ***provided,***

*however,* that copies of invoices in summary form for Lender Professional Fees shall be provided contemporaneously to counsel to the Debtor, the U.S. Trustee and counsel to any Committee.  If any party objects to the reasonableness of the fees and expenses of Prepetition Secured Parties, such objection shall be asserted within ten (10) days of receipt of such invoice, and if such objection cannot be resolved within ten (10) days of receipt of such invoices, the objecting party shall file with the Court and serve on counsel for BMO an objection limited to the reasonableness of such fees and expenses (each, a *"Reasonableness Fee Objection"*).  Any hearing on a Reasonableness Fee Objection, regarding payment of any fees, costs, and expenses set forth in a professional fee invoice shall be limited to the reasonableness of the particular items or categories of the fees, costs, and expenses, in each case which are the subject of such objection.  The Debtor shall pay in accordance with the terms and conditions of this Interim Order within ten (10) days after receipt of the applicable invoice (a) the full amount invoiced if no objection has been timely filed, and (b) the undisputed fees, costs, and expenses reflected on any invoice to which a Reasonableness Fee Objection has been timely filed.

(d)    *Payment of Postpetition Interest.*  Interest shall accrue on all of the outstanding Prepetition Obligations at the default rate from and after the Petition Date and shall automatically be added to increase the outstanding principal balance on the Prepetition Obligations.

(e)    *Reservation of Rights.*  Notwithstanding any other provision hereof to the contrary, the grant of Adequate Protection Obligations to the Prepetition Secured Parties pursuant hereto is without prejudice to the right of the Prepetition Secured Parties to seek different or additional adequate protection, including without

limitation the current payment of postpetition interest (at the applicable default rate), to seek payments under section 506(b) of the Bankruptcy Code when this Interim Order or the Final Order, as applicable, is no longer in effect, or to withdraw consent to any further use of Cash Collateral. Nothing herein shall preclude the Prepetition Secured Parties from asserting any additional claims, secured or unsecured, against the Debtor, its affiliates, or any other party under the Bankruptcy Code or applicable nonbankruptcy law. Except as expressly provided herein, nothing contained in this Interim Order (including without limitation, the authorization to use any Cash Collateral) shall impair or modify any rights, claims or defenses available in law or equity to the Prepetition Secured Parties. Nothing in this Interim Order shall constitute an admission that the Prepetition Secured Parties are not entitled to payment or allowance of claims under section 506(b) of the Bankruptcy Code.

5.    *Additional Provisions Regarding Adequate Protection.*

(a)    The Replacement Liens shall cover all property and assets of the Debtor and its estate (now or hereafter acquired and all proceeds thereof), including property or assets, if any, that do not secure the Prepetition Obligations.

(b)    Except as provided in this Interim Order, the Replacement Liens shall not at any time be (i) made subject or subordinated to, or made *pari passu* with any other lien, security interest or claim existing as of the Petition Date, or created under sections 363 or 364(d) of the Bankruptcy Code or otherwise or (ii) subject to any lien or security interest that is avoided and preserved for the benefit of the Debtor's estate under section 551 of the Bankruptcy Code.

(c)    Subject to entry of the Final Order, any provision of any lease, loan document, easement, use agreement, proffer, covenant, license, contract, organizational document, or

other instrument or agreement that requires the consent or approval of one or more landlords, licensors, or other parties, or requires the payment of any fees or obligations to any governmental entity, non-governmental entity or any other person, in order for any of the Debtor to pledge, grant, mortgage, sell, assign, or otherwise transfer any fee or leasehold interest or the proceeds thereof or other collateral, shall have no force or effect with respect to the transactions granting BMO, for the benefit of the Prepetition Senior Lenders, a priority security interest in such fee, leasehold or other interest or other collateral or the proceeds of any assignment, sale or other transfer thereof, by any of the Debtor.

(d)    Unless expressly provided otherwise herein, the Replacement Liens, Superpriority Claims, and other rights, benefits, and remedies granted under this Interim Order to the Prepetition Secured Parties, shall continue in this Chapter 11 Case, in any superseding case or cases under the Bankruptcy Code (including without limitation any case under chapter 7 of the Bankruptcy Code) (a *"Superseding Case"*), and following any dismissal of the Chapter 11 Case, and such liens and claims shall maintain their priority as provided in this Interim Order until all Adequate Protection Obligations have been indefeasibly paid in full in cash and completely satisfied.

(e)    Notwithstanding anything to the contrary herein, the reasonable and documented fees, costs and out-of-pocket expenses of the Prepetition Secured Parties, whether incurred prior to or after the Petition Date, shall be deemed fully earned, nonrefundable, irrevocable, and non-avoidable as of the date of this Interim Order.  All unpaid fees, costs, and expenses shall be included and constitute part of the Superpriority Claims and be secured by the Replacement Liens.

6.      *Perfection of Replacement Liens.*

(a)      **This Interim Order shall be sufficient and conclusive evidence of the validity, perfection, and priority of the Replacement Liens, without the necessity of filing or recording any financing statement or other instrument or document which may otherwise be required under the law or regulation of any jurisdiction or the taking of any other action (including, for the avoidance of doubt, entering into any deposit account control agreement) to validate or perfect (in accordance with applicable non-bankruptcy law) the Replacement Liens, or to entitle BMO and the other Prepetition Secured Parties to the priorities granted herein.**

(b)      **Without limiting the foregoing subparagraph, the Prepetition Secured Parties are hereby authorized, but not required, to file or record financing statements, trademark filings, copyright filings, mortgages, notices of lien or similar instruments in any jurisdiction, or take possession of or control over, or take any other action in order to validate and perfect the liens and security interests granted to them hereunder, in each case without the necessity to pay any mortgage recording fee or similar fee or tax.  Whether or not the Prepetition Secured Parties shall, in their sole discretion, choose to file such financing statements, trademark filings, copyright filings, mortgages, notices of lien or similar instruments, or take possession of or control over, or otherwise confirm perfection of the liens and security interests granted to it hereunder, such liens and security interests shall be deemed valid, perfected, allowed, enforceable, non-avoidable, and not subject to challenge dispute or subordination (except as specified herein), at the time and on the date of entry of this Interim Order.  The Debtor shall, if requested, execute and deliver to the Prepetition Secured Parties all such agreements, financing statements, instruments and other documents as the Prepetition Secured Parties may reasonably request to more fully evidence, confirm,**

**validate, perfect, preserve, and enforce the Replacement Liens.  All such documents will be deemed to have been recorded and filed as of the Petition Date.**

(c)    **A certified copy of this Interim Order may, in the discretion of the Prepetition Secured Parties, be filed with or recorded in filing or recording offices in addition to or in lieu of such financing statements, mortgages, notices of lien, or similar instruments, and all filing offices are hereby directed to accept such certified copy of this Interim Order for filing and recording.**

7.    *Interim Payments*.  At the end of each week ending November 21, and 28, December 5, and 12, 19, and 26, 2025 and January 2, 2026, the Debtor shall pay BMO the amount as reflected in the Approved Budget, which amount shall be applied to the Prepetition Revolving Loan Obligations (subject to disgorgement to the extent Prepetition Secured Parties are found by this Court not to have a first lien priority in Debtor's cash collateral).  At the end of each month, Debtor shall provide BMO with a reconciliation of any incremental receipts and incremental disbursements not accounted for in the Approved Budget and Debtor shall pay those amounts in excess of Debtor's budgeted disbursements (as provided for in the Approved Budget) for the following month to BMO within three (3) business days, which amounts shall be applied to the Prepetition Revolving Loan Obligations (subject to disgorgement to the extent Prepetition Secured Parties are found by this Court not to have a first lien priority in Debtor's cash collateral).

8.    *Liquidation Milestones and Covenants*.  The Debtor shall comply with the Bid Procedures (including the dates set forth therein) as set forth in Debtor's Motion to Establish and Approve Bidding Procedures and Bid Protections for Sale of Debtor's Assets Free and Clear and for Assumption and Assignment of Executory Contracts and Unexpired Leases (the "*Bidding Procedures Motion*"), or as modified with the prior written consent of the Prepetition Senior Lenders, and shall conclude the auctions of its Working Capital Assets and Fixed Assets (as

defined in the Bidding Procedures Motion) no later than December 16, 2025 (as modified or extended with the prior written consent of the Prepetition Senior Lenders). Further, the sale of Debtor's Working Capital Assets and Fixed Assets that are subject to liens of the Prepetition Senior Lenders shall require the consent of the Prepetition Senior Lenders.

9. *Carve-Out*. Notwithstanding anything to the contrary herein, the Debtor's obligations to the Prepetition Secured Parties, and the liens, mortgages, security interests granted herein to secure the Adequate Protection Claim, shall be subject in all respects and subordinate to the Carve-Out.

(a) "*Carve Out*" shall mean the sum, without duplication, of the following: (i) all fees required to be paid to the Clerk of the Bankruptcy Court and to the U.S. Trustee under section 1930(a) of title 28 of the United States Code plus interest pursuant to section 3717 of title 31 of the United States Code, without regard to the notice set forth in (iii) below, and which shall not be subject to any budget; (ii) all reasonable fees and expenses up to $50,000.00 incurred by a chapter 7 trustee under section 726(b) of the Bankruptcy Code (without regard to the notice set forth in (iii) below); (iii) to the extent allowed at any time, whether by interim or final compensation order or any other order of the Court, all unpaid fees and expenses (the *"Allowed Professional Fees"*) incurred by persons or firms retained by the Debtor pursuant to section 327, 328, or 363 of the Bankruptcy Code (collectively, the *"Debtor Professionals"*) or retained by any Official Committee of Unsecured Creditors (the *"Committee"*), but only to the extent a Committee is appointed in the Case pursuant to section 1103 of the Bankruptcy Code (the *"Committee Professionals"* and, together with the Debtor Professionals, the *"Professional Persons"*) at any time before or on the day of delivery by the Prepetition Secured Parties of Carve-Out Trigger Notice (defined below), whether allowed by the Bankruptcy Court prior to or after delivery of a Carve-Out Trigger Notice and without regard to whether such fees and expenses are provided for

in the Budget, in each case pursuant to the terms of the orders authorizing the employment of
Debtor Professionals, or any other related order, as applicable, *provided*, *however*, that if such fees
and expenses exceed amounts set forth for such line items in the Budget (accounting for any
Permitted Variance therefor) then the incurrence and/or payment of such fees or expenses in excess
of the Budget amount and any applicable Permitted Variance shall, at the election of the Prepetition
Secured Parties, constitute a Termination Event hereunder; and (iv) Allowed Professional Fees
incurred after the day of delivery by the Prepetition Secured Parties of the Carve-Out Trigger
Notice, to the extent allowed at any time, whether by interim order, procedural order, or otherwise
in an aggregate amount not to exceed $250,000.00 with respect to Professional Persons (the
amount set forth in this clause (iv) being the *"Post-Carve-Out Trigger Notice Cap"*) (collectively,
the *"Carve-Out Amount"*).  For purposes of the foregoing, *"Carve-Out Trigger Notice"* shall mean
a written notice delivered by email (or other electronic means) by the Prepetition Secured Parties
to the Debtor, its counsel, the U.S. Trustee (and also in hard copy by hand delivery or overnight
mail), and counsel to the Committee (if any), which notice may be delivered following the
occurrence and during the continuation of a Termination Event, stating that the Post-Carve-Out
Trigger Notice Cap has been invoked.

(b)     Nothing herein shall be construed to (i) impair the ability of any party to object to
any of the fees, expenses, reimbursement, or compensation of any professionals, or (ii) alter the
requirement of a Professional Person to file and serve fee applications or otherwise comply with
the Bankruptcy Code, Bankruptcy Rules, or Local Bankruptcy Rules of this Court relating to
payment of fees and reimbursement of expenses of Professional Persons, or with any interim
compensation order or retention order entered by this Court.

10.     *Termination of Cash Collateral Authorization*.  Notwithstanding anything in this
Interim Order to the contrary, the Debtor's authority to use Cash Collateral pursuant to this Interim

Order shall automatically terminate without any further action by the Court, upon the earliest to occur of (such date, the *"Cash Collateral Termination Date"*): (i) January 2, 2026, which date may be extended with the express written consent of BMO (which consent may be granted via electronic mail) and (ii) the occurrence of Termination Event.

11.     *Events of Default*.  The occurrence of any event identified in this Paragraph 11 hereof (each, an *"Event of Default"*) shall constitute a *"Termination Event"* upon two (2) days following delivery of written notice, including notice by e-mail, by BMO to the Debtor, the Debtor's counsel, the U.S. Trustee and counsel to any Committees (such period of time, the *"Waiting Period"*), unless such Event of Default has been cured by the Debtor or waived in writing by BMO during the Waiting Period, *provided, however,* that there shall be no Waiting Period and a Termination Event shall automatically occur in the case of the events described in clauses d. through i. below.

**a.     The Debtor fails to make any payment required under this Interim Order after such payment becomes due under the terms hereof;**

**b.     the Debtor fails to comply in any material respect with any covenant, agreement, or provision of this Interim Order;**

**c.     the Debtor uses Cash Collateral to fund any payments in respect of prepetition or postpetition claims other than (i) as permitted under this Interim Order or any other order of the Court consented to by BMO; or (ii) as otherwise expressly contemplated by the Approved Budget;**

**d.     this Interim Order ceases, for any reason, to be in full force and effect in any respect, or the Replacement Liens or the Superpriority Claims created by this Interim Order cease in any respect to be enforceable and of the same effect and priority purported to be created hereby;**

**e.     the Court shall have entered an order amending, supplementing or otherwise modifying this Interim Order without the consent of BMO;**

**f.     the Court (or any court of competent jurisdiction) enters an order dismissing this Chapter 11 Case;**

      **g.     the Court (or any court of competent jurisdiction) enters an order converting any of this Chapter 11 Case to a case under chapter 7 of the Bankruptcy Code;**

      **h.     the appointment under section 1104 of the Bankruptcy Code of a trustee or an examiner with expanded powers; or**

      **i.     the Debtor files a motion seeking or otherwise supports an effort to secure the occurrence of any of the events described in clauses e through h above.**

The Debtor shall promptly (and in no event any later than [two (2) Business Days] following occurrence) provide written notice by email to counsel to BMO (with a copy to counsel for the U.S. Trustee and any Committee) of the occurrence of any Event of Default.

      12.     *Remedies Upon the Cash Collateral Termination Date*.  Upon the Cash Collateral Termination Date: (a) the Debtor's right to use Cash Collateral shall terminate, (b) all outstanding Adequate Protection Obligations shall become immediately due and payable, and (c) BMO and the other Prepetition Secured Parties may, after the occurrence of the Cash Collateral Termination Date, exercise the rights and remedies available under the Credit Agreement, this Interim Order or applicable law, including without limitation, foreclosing upon and selling all or a portion of the Prepetition Collateral or Adequate Protection Collateral in order to collect the Adequate Protection Obligations.  The automatic stay under Bankruptcy Code section 362 is hereby deemed modified and vacated to the extent necessary or appropriate to permit such actions.  Notwithstanding the occurrence of the Cash Collateral Termination Date or anything herein, all of the rights, remedies, benefits and protections provided to the Prepetition Secured Parties under this Interim Order shall survive the Cash Collateral Termination Date.

      13.     *Restriction on Use of Funds*.  Notwithstanding anything herein to the contrary, unless otherwise consented to by BMO in advance in writing, no Adequate Protection Collateral, proceeds thereof, Cash Collateral, Prepetition Collateral, or proceeds thereof, may be used by any of the Debtor, its estate, any affiliate of the Debtor, any Committee, any trustee or examiner appointed in this Chapter 11 Case or any chapter 7 trustee, or any other person, party or entity to,

directly or indirectly, (a) request authorization to obtain postpetition financing (whether equity or debt) or other financial accommodations pursuant to section 364(c) or (d) of Bankruptcy Code, or otherwise; (b) prosecute or support any action that has the effect of preventing, hindering, or delaying (whether directly or indirectly) the Prepetition Secured Parties in respect of their liens and security interests in the Adequate Protection Collateral or the Prepetition Collateral or any of their rights, powers, or benefits hereunder or in the Credit Agreement anywhere in the world (*provided, however,* that the Committee, if any, may use up to $35,000.00 of the Cash Collateral to investigate and challenge the Prepetition Secured Parties' liens in accordance with paragraph 14 below); or (c) pay any claim of a prepetition creditor except as expressly allowed by this Interim Order or other order of the Court.

14.      *Investigation and Challenge Rights*.  The deadline for parties to investigate and challenge the Prepetition Secured Parties' liens and security interests shall be sixty (60) days from the date of this Interim Order (the *"Investigation Termination Date"*), and the rights of all parties in accordance therewith are expressly preserved.  Any claim incurred in connection with any activities described in this paragraph shall not constitute an allowed administrative expense claim for purposes of section 1129(a)(9)(A) of the Bankruptcy Code.  Any assertion of claims or causes of action of the Debtor or its estate against any of the Prepetition Secured Parties by any party in interest (a *"Challenge"*) must be made by commencing an adversary proceeding on or before the Investigation Termination Date.  Except with respect to any party who, with proper standing, files such an action on or before the Investigation Termination Date, all persons and entities shall be forever barred from bringing or taking such action against any of the Prepetition Secured Parties. For the avoidance of doubt, any trustee appointed or elected in this Chapter 11 Case shall, until the Investigation Termination Date, and thereafter for the duration of any adversary proceeding or contested matter that was commenced prior to the Investigation Termination Date pursuant to this

-18-

paragraph (whether commenced by such trustee or commenced by any other party in interest on behalf of the Debtor's estate), be deemed to be a party other than the Debtor and shall not, for purposes of such adversary proceeding or contested matter, be bound by the acknowledgments, admissions, confirmations and stipulations of the Debtor in paragraph D of this Interim Order.  The Prepetition Secured Parties stipulate and agree that each of the Prepetition Secured Parties will not raise as a defense in connection with any Challenge the ability of creditors to file derivative suits on behalf of the Debtor.  If the Committee (if any) pursues or brings forth a Challenge, the defendant of such Challenge shall not object on the grounds that the Committee lacks standing.

15.     *Necessary Action*.  The Debtor is authorized to take all such actions as are necessary or appropriate to implement the terms of this Interim Order.

16.     *Section 506(c) and Other Waivers*.  Subject to entry of the Final Order and the rights of all parties in interest, no costs or expenses of administration which have been or may be incurred in this Chapter 11 Case at any time (including, without limitation, any costs and expenses incurred in connection with the preservation, protection, or enhancement of value by the Prepetition Secured Parties upon the Prepetition Collateral) shall be charged against any of the Prepetition Secured Parties, or any of the Prepetition Obligations or the Prepetition Collateral pursuant to sections 105 or 506(c) of the Bankruptcy Code or otherwise without the prior express written consent of the affected Prepetition Secured Parties, in their sole discretion, and no such consent shall be implied, directly or indirectly, from any other action, inaction, or acquiescence by any such agents or creditors (including, without limitation, the approval of any budget hereunder). Subject to entry of the Final Order and the rights of all parties in interest, the Prepetition Secured Parties are (i) entitled to all of the rights and benefits of Bankruptcy Code section 552(b) and the "equities of the case" exception shall not apply and (ii) released from any application of the

equitable doctrine of "marshalling" or any other similar doctrine with respect to any of the Prepetition Collateral.

17.     *Binding Effect of Order*.  Immediately upon entry of an order approving this Interim Order (notwithstanding any applicable law or rule to the contrary), the terms and provisions of this Interim Order shall be binding upon all parties in interest in this Chapter 11 Case, including, without limitation, the Debtor, BMO, the Prepetition Senior Lenders, all other creditors of the Debtor, any Committee, and each of their respective successors and assigns (including any trustee appointed under chapter 7 or chapter 11 of the Bankruptcy Code or any other fiduciary hereafter appointed in this Chapter 11 Case), and shall inure to the benefit of the Debtor, BMO, the Prepetition Senior Lenders, and each of their respective successors and assigns.

18.     *Reservation of Rights*.  The terms, conditions, and provisions of this Interim Order are in addition to and without prejudice to the rights of all parties.

19.     *No Waiver*.  This Interim Order shall not be construed in any way as a waiver or relinquishment of any rights that the Debtor or the Prepetition Secured Parties may have to bring or be heard on any matter brought before the Court, except as otherwise set forth herein.  Nothing herein shall preclude the Prepetition Secured Parties from asserting any additional claims, secured or unsecured, against the Debtor, its affiliates, or any other party under the Bankruptcy Code or applicable non-bankruptcy law.   The rights of the Prepetition Secured Parties are expressly reserved and entry of this Interim Order shall be without prejudice to, and does not constitute a waiver, expressly or implicitly, of the following: (a) the Prepetition Secured Parties' rights under the Credit Agreement and all related documents; (b) the Prepetition Secured Parties' rights to seek any other or supplemental relief in respect of the Debtor; (c) any of the Prepetition Secured Parties' rights under the Bankruptcy Code or under non-bankruptcy law; or (d) any other rights, claims, or privileges (whether legal, equitable, or otherwise) of the Prepetition Secured Parties.

20.     *Priority of Terms*.  To the extent of any conflict between or among (a) the express terms or provisions of the Motion, any other order of the Court, or any other agreements, on the one hand, and (b) the terms and provisions of this Interim Order, on the other hand, unless such term or provision herein is phrased in terms of "as defined in" or "as more fully described in" such other document, the terms and provisions of this Interim Order shall govern.  To the extent there is any inconsistency between this Interim Order and any order concerning the Debtor's cash management systems or bank accounts or any other "first day" relief, this Interim Order shall control.

21.     *No Third-Party Rights*.  Except as explicitly provided for herein, this Interim Order does not create any rights for the benefit of any party, creditor, equity holder or other entity other than (i) BMO and the Prepetition Senior Lenders, (ii) the Debtor, and (iii) the respective successors and assigns of each of the foregoing.

22.     *Survival*.  Except as otherwise provided herein, (a) the protections afforded to BMO and the Prepetition Senior Lenders under this Interim Order, and any actions taken pursuant thereto, shall survive the entry of an order (i) dismissing this Chapter 11 Case or (ii) converting this Chapter 11 Case into a case pursuant to chapter 7 of the Bankruptcy Code.

23.     *Headings*.  Section headings used herein are for convenience only and are not to affect the construction of or to be taken into consideration in interpreting this Interim Order.

24.     *Final Hearing Date*.  The Final Hearing to consider the entry of the Final Order approving the relief sought in the Motion shall be held on _____, 2025 at _____ a.m./p.m. before the Honorable _____ at the United States Bankruptcy Court for the District of Nebraska, 111 S. 18th Street, Courtroom _____, Omaha, Nebraska 68102.

25.     *Adequate Notice*.  The notice given by the Debtor of the Interim Hearing was given in accordance with Bankruptcy Rules 2002 and 4001(b)(3), and the Local Bankruptcy Rules, and

was adequate and sufficient.  Under the circumstances, no further notice of the request for the relief granted at the Interim Hearing is required.  The Debtor shall promptly mail copies of this Interim Order and notice of the Final Hearing to the Notice Parties, any known entity effected by the terms of the Final Order, and any other entity requesting notice after the entry of this Interim Order.  Any objection to the relief sought at the Final Hearing shall be made in writing setting forth with particularity the grounds thereof, and filed with the Bankruptcy Court and served so as to be actually received no later than seven (7) days prior to the Final Hearing by the following: (i) the Debtor, Michael Compton, 13321 California Street, #100, Omaha, Nebraska 68154; (ii) proposed counsel to the Debtor, Brian Koenig, Koley Jessen P.C., L.L.O., 1125 S. 103rd Street, Suite 800, Omaha, Nebraska 68124; (iii) counsel to BMO, James P. Sullivan, Chapman and Cutler LLP, 320 S. Canal Street, Chicago, Illinois 60606 and Robert Gonderinger Croker Huck, 2120 South 72nd Street, Suite 1200, Omaha, Nebraska 68124; (iv) counsel to the Committee, if any; (v) the Office of the United States Trustee for District of Nebraska, 111 S. 18th Plaza, Suite 1148, Omaha, Nebraska 68102, Attn: Jerry L. Jensen; and (vi) any party that has requested notice pursuant to Bankruptcy Rule 2002, and shall be filed with the Clerk of the Bankruptcy Court.

26.     *Retention of Jurisdiction*.  The Court shall retain exclusive jurisdiction overall all matters pertaining to the implementation, interpretation, and enforcement of this Interim Order, including following confirmation and consummation of any chapter 11 plan for any one or more of the Debtor.

Dated: November __, 2025         _____
Omaha, Nebraska                  UNITED STATES BANKRUPTCY JUDGE

**EXHIBIT 1**

**APPROVED BUDGET**

**Hansen-Mueller**

**Cash Collateral Budget**

**November 8, 2025 - January 2, 2026**

| | F N | Description | November | | | December | | | | January | TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | 14-Nov Proj. | 21-Nov Proj. | 28-Nov Proj. | 5-Dec Proj. | 12-Dec Proj. | 19-Dec Proj. | 26-Dec Proj. | 2-Jan Proj. | Proj. |
| | | **CASH RECEIPTS** | | | | | | | | | |
| | | *A/R Cash Receipts* | | | | | | | | | |
| | | A/R Cash Receipts | 3,302 | 2,718 | 3,514 | 5,462 | 6,616 | 6,737 | 4,552 | 2,367 | 35,266 |
| | | *Non-A/R Cash Receipts* | | | | | | | | | |
| | | Net Margin Call | 1,455 | - | - | - | - | - | - | - | 1,455 |
| | | *Auction Proceeds* | | | | | | | | | |
| | | Auction Proceeds | - | - | - | - | - | - | - | - | - |
| | | **Total Collections** | 4,757 | 2,718 | 3,514 | 5,462 | 6,616 | 6,737 | 4,552 | 2,367 | 36,721 |
| | | **DISBURSEMENTS** | | | | | | | | | |
| | | *Freight & Handling* | | | | | | | | | |
| | | Freight & Handling | 301 | 544 | 443 | 1,050 | 1,050 | 607 | - | - | 3,994 |
| | | *Wages & Benefits* | | | | | | | | | |
| | | Wages & Benefits | - | 462 | - | 462 | - | 462 | - | 462 | 1,849 |
| | | *Insurance Payments* | | | | | | | | | |
| | | Insurance Payments | - | 57 | 86 | 90 | 45 | 45 | 45 | - | 367 |
| | | *Property Tax Payments* | | | | | | | | | |
| | | Property Tax Payments | - | - | - | 275 | - | - | - | - | 275 |
| | | *Operating Costs* | | | | | | | | | |
| | | Operating Costs | - | 147 | 205 | 293 | 125 | 112 | 112 | 264 | 1,258 |
| | | **Operating Disbursements** | 301 | 1,209 | 734 | 2,170 | 1,220 | 1,226 | 157 | 726 | 7,743 |
| | | *Professional Fees* | | | | | | | | | |
| | | Professional Fees | 585 | 2 | - | 606 | 45 | - | - | 508 | 1,746 |
| | | *Other Disbursements* | | | | | | | | | |
| | | Principal Payments | - | - | - | - | - | - | - | 375 | 375 |
| | | Interest & Fees | 262 | - | - | - | - | - | - | - | 262 |
| | | Revolver Paydowns | 3,435 | 3,307 | 2,780 | 3,437 | 6,100 | 5,511 | 4,394 | 758 | 29,722 |
| | | Other Disbursements | 3,697 | 3,307 | 2,780 | 3,437 | 6,100 | 5,511 | 4,394 | 1,133 | 30,359 |
| | | **Total Disbursements** | 4,583 | 4,518 | 3,514 | 6,213 | 7,365 | 6,737 | 4,551 | 2,367 | 39,848 |
| | | **Net Cash Flow** | 173 | (1,800) | 0 | (750) | (749) | (0) | 1 | (0) | (3,126) |
| | | Inc/(Dec) in Cash - Book | 173 | (1,800) | 0 | (750) | (749) | (0) | 1 | (0) | (3,126) |
| | | Change in O/S Checks | (958) | - | - | - | - | - | - | - | (958) |
| | | Inc/(Dec) in Cash - Bank | (784) | (1,800) | 0 | (750) | (749) | (0) | 1 | (0) | (4,084) |
| | | Ending Cash - Bank | 5,300 | 3,500 | 3,500 | 2,750 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 |

**EXHIBIT 1**