UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEBRASKA

In re:

HANSEN-MUELLER CO.,[1]

Debtor.

Case No. 25-81226

Chapter 11

### INTERIM ORDER (I) AUTHORIZING THE DEBTOR TO PAY CERTAIN PREPETITION CLAIMS OF CRITICAL VENDORS AND (II) GRANTING RELATED RELIEF

Upon the motion, dated November 17, 2025 (the "Motion") (Doc. 13), of the Debtor Hansen-Mueller Co. (the "Debtor"), in the above-referenced Chapter 11 case (the "Case"), requesting entry of an order (this "Order"), pursuant to sections 105(a), 363, 1107(a), and 1108 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 9013-1(m) of the Local Rules of Bankruptcy Practice (the "Local Rules"), that, among other things, authorizes, but does not direct, the Debtor to pay certain prepetition claims of Critical Vendors and to set a final hearing on the Motion in connection with Debtor's authority to use cash collateral on a final basis.

Having considered the Motion and the evidence submitted or proffered at the hearing on this Interim Order (the "Interim Hearing"); and in accordance with Bankruptcy Rules 2002, 4001(b), 4001(d) and 9014 and all applicable Local Rules, notice of the Motion and the Interim Hearing having been provided pursuant to Bankruptcy Rule 4001(b)(1)(C); an Interim Hearing

---

[1] The Debtor in this chapter 11 case, along with the last four digits of Debtor's federal tax identification number, is: Hansen-Mueller Co. (9385). Debtor's location is 13321 California Street, Suite 100, Omaha, NE 68154.

having been held and concluded on November 17, 2025; and it appearing that approval of the interim relief requested in the Motion is necessary to avoid immediate and irreparable harm to the Debtor pending the Final Hearing and otherwise is fair and reasonable and in the best interests of the Debtor, its creditors, the estate, and all parties in interest, and is essential for the continued operation of the Debtor's business and the preservation of the value of the Debtor's assets; and after due deliberation and consideration, and good and sufficient cause appearing therefore:

1. **Motion Granted**. The Motion is hereby granted in accordance with the terms and conditions set forth in this Interim Order.

2. **Authorization to Pay Critical Vendors**. The Debtor is hereby authorized, but not required, to pay, in its sole discretion, without further order of this Court, the Critical Vendor Claims, up to an aggregate amount of $1,200,000.00 without further order of the Court.

3. **Trade Agreement**. The form of Trade Agreement attached as Exhibit B to the Motion is hereby approved. The Debtor is authorized, but not directed, to enter into Trade Agreements. No Trade Agreement will (a) effect a novation of any existing agreements between the Critical Vendor and the Debtor, (b) modify any of the conditions, covenants, representations and warranties, or other terms of any such existing agreements, other than as agreed between the Debtor and the Critical Vendor, (c) constitute an assumption or rejection of any executory contract or prepetition or postpetition agreement, or (d) change the nature or priority of the underlying Critical Vendor Claims or entitle the Critical Vendor to treatment of its claim as an Administrative Expense Claim. Any Critical Vendor that accepts payment pursuant to the authority granted in this Order agrees to supply goods and/or services to the Debtor postpetition on Customary Trade Terms or on such other trade terms as mutually agreed to by the Debtor and such Critical Vendor; *provided, however*, that the Debtor's inability to agree on Customary Trade Terms shall not preclude it from paying a Critical Vendor Claim if the Debtor determines, in the

reasonable exercise of its business judgment, that such payment is necessary to the Debtor's operations. If a Critical Vendor refuses to supply goods and/or services to the Debtor on Customary Trade Terms, or on such other trade terms as mutually agreed to by the Debtor and such Critical Vendor, following receipt of any payment on account of its Critical Vendor Claim, then the Debtor may, in its sole discretion with notice to the affected Critical Vendor, declare any payment made to such Critical Vendor on account of its Critical Vendor Claim to have been on account of any 503(b)(9) Claim, Priority Claim, or Administrative Expense Claim, without giving effect to any rights of setoff or reclamation. Nothing herein shall constitute a waiver of the Debtor's rights to seek damages or other appropriate remedies against any breaching Critical Vendor.

4.     **Authorization to Bank**. All Banks are (a) authorized and directed to receive, process, honor and pay any and all postpetition checks, drafts, electronic transfers and other forms of payment used by the Debtor to satisfy its Critical Vendor Claims to the extent such payments are consistent with and permitted under the Cash Collateral Order; provided that sufficient funds are on deposit in the applicable accounts to cover such payments, and (b) prohibited from placing any holds on, or attempting to reverse, any automatic transfers on account of Critical Vendor Claims. The Banks may rely on the directions and representations of the Debtor as to which checks and fund transfers should be honored and paid pursuant to this Interim Order, and no such Bank shall have any liability to any party for relying on such directions and representations by the Debtor as provided for in this Interim Order.

5.     **Authorization to Remit Payment**. To the extent the Debtor has not yet sought to remit payment on account of the Critical Vendor Claims, the Debtor is authorized, but not directed, to issue checks or provide for other means of payment of the Critical Vendor Claims. Any party

receiving payment from the Debtor is authorized and directed to rely upon the representations of the Debtor as to which payments are authorized by this Interim Order.

6. **No Waiver/Admission.** Nothing in the Motion or this Interim Order or the relief granted (including any actions taken or payments made by the Debtor pursuant thereto) shall be construed as (a) authority to assume or reject any executory contract or unexpired lease of real property, or as a request for the same; (b) an admission as to the validity, priority, or character of any claim or other asserted right or obligation, or a waiver or other limitation on the Debtor's or any other party in interest's ability to contest the same on any ground permitted by bankruptcy or applicable non-bankruptcy law; (c) a promise to pay any claim or other obligation; (d) granting third-party-beneficiary status or bestowing any additional rights on any third party; or (e) being otherwise enforceable by any third party.

7. **Bankruptcy Rules 6003 and 6004**. The Court finds and determines that the requirements of Bankruptcy Rule 6003 are satisfied and that the relief requested is necessary to avoid immediate and irreparable harm. Notwithstanding Bankruptcy Rule 6004(h), this Interim Order shall be effective and enforceable immediately upon entry hereof.

8. **Further Action** The Debtor is authorized and empowered to take all actions necessary to implement this relief granted in this Interim Order.

9. **Objection Deadline / Final Hearing.  Any resistance or request for a hearing regarding the Motion must be filed and served upon the undersigned on or before December 8, 2025.  If no resistance or request for a hearing is timely filed, the Motion may be approved by the Court without further notice of hearing.  If a timely resistance or request for hearing is filed and served, the Clerk of the Bankruptcy Court will schedule a hearing thereon pursuant to Neb. R. Bankr. Proc. 9013.**

10. **Retention of Jurisdiction**. This Court has and will retain jurisdiction to enforce this Interim Order according to its terms.

Dated: November 18th, 2025.

BY THE COURT:

/s/ Thomas L. Saladino
UNITED STATES BANKRUPTCY JUDGE