IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| IN THE MATTER OF: | ) | |
| | ) | Case No. BK-25-81226-TLS |
| | ) | |
| HANSEN-MUELLER CO. | ) | **Chapter 11** |
| | ) | |
| Debtor. | ) | |

**OBJECTION TO DEBTOR'S ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS WITH BRIAN SCHAFER**

Brian Schafer ("Schafer"), creditor and party in interest, by his attorneys Rembolt Ludtke LLP, and pursuant to this Court's Order dated December 3, 2025 (Filing No. 100) hereby objects to the assumption and assignment of any and all contracts made by and between Schafer and Debtor for the reason that Debtor lacks the ability to assume and assign such contracts because the contracts are non-executory and void as a matter of law. In support of his Objection, Schafer states:

1. On or about August 13, 2025, Schafer entered into eleven (11) yellow corn grain contracts with Debtor.  Each of the contracts required Schafer to sell grain to Debtor at a specified price and future date, as identified below (the "Contracts"):

| No. | Date | Contract No. | Price | Bu. Quantity | Delivery Location | Shipment Period |
|---|---|---|---|---|---|---|
| 1 | 8/13/2025 | 167144 | $ 4.2700 | 90,909.09 | Scott City, KS | 11/01/25 - 11/30/25 |
| 2 | 8/13/2025 | 167145 | $ 4.2700 | 90,909.10 | Scott City, KS | 12/01/25 - 12/31/25 |
| 3 | 8/13/2025 | 167147 | $ 4.4475 | 90,909.09 | Scott City, KS | 01/01/26 - 01/31/26 |
| 4 | 8/13/2025 | 167150 | $ 4.4475 | 90,909.09 | Scott City, KS | 02/01/26 - 02/28/26 |
| 5 | 8/13/2025 | 167151 | $ 4.4475 | 90,909.09 | Scott City, KS | 03/01/26 - 03/31/26 |
| 6 | 8/13/2025 | 167158 | $ 4.5575 | 90,909.09 | Scott City, KS | 04/01/26 - 04/30/26 |
| 7 | 8/13/2025 | 167152 | $ 4.5575 | 90,909.09 | Scott City, KS | 05/01/26 - 05/31/26 |
| 8 | 8/13/2025 | 167155 | $ 4.6325 | 90,909.09 | Scott City, KS | 06/01/26 - 06/30/26 |
| 9 | 8/13/2025 | 167159 | $ 4.6325 | 90,909.09 | Scott City, KS | 07/01/26 - 07/31/26 |
| 10 | 8/13/2025 | 167160 | $ 4.6600 | 90,909.09 | Scott City, KS | 08/01/26 - 08/31/26 |
| 11 | 8/13/2025 | 167161 | $ 4.6600 | 90,909.09 | Scott City, KS | 09/01/26 - 09/30/26 |

2.      On October 24, 2025, the Grain Warehouse and Dealer Department of Nebraska Public Service Commission (the "Department") filed a Complaint against Debtor, alleging Debtor had violated Nebraska Statute and Department Rules and Regulations through its failure to pay make payment on demand and simultaneously suspended Debtor's Nebraska grain dealer license.

3.      On or about November 3, 2025, Debtor and the Department entered into a Stipulated Agreement regarding the issues raised in the Department's Complaint. In the Stipulated Agreement, Debtor represented that as of October 31, 2025, "all Nebraska producers had been paid in full for grain previously purchased and delivered." Based in material part on that representation, the Department reinstated Debtor's Nebraska grain dealer license.

4.      On November 17, 2025, Debtor filed a bankruptcy petition in the United States Bankruptcy Court for the District of Nebraska (the "Petition Date").

5.      On December 3, 2025, the Court entered an Order (Filing No. 100) approving the Bidding Procedures and the Assumption and Assignment Procedures ("Bidding Procedures") proposed by Debtor and as attached as Exhibit A to this Court's December 3, 2025 Order.

6.      The Bidding Procedures provide that contracts #2 through #11 listed above in Paragraph 1, plus two additional contracts denominated as Contracted Nos. 168106 and 168107 (collectively, the "Contracts")), would be assumable and assignable by the Debtor, unless Schafer filed an objection on or before December 10, 2025.

7.      Debtor hereby objects to the assumption and assignment of the Contracts, and further objects to Debtor's claim in the notice to creditors that if and when Debtor files a motion to approve the auction sale and assume and assign the Contracts to a third party, creditors shall have no right to contest the assumption and assignment.

## THE CONTRACTS ARE NON EXECUTORY

8.     Under Neb. Rev. Stat. § 75-903, all grain dealers doing business in Nebraska shall be licensed by the Public Service Commission. Implicit in each contract is an assurance that Debtor is at all relevant times licensed to deal in grain.  *See Matter of C & S Grain Co., Inc.,* 47 F.3d 233 (7th Cir. 1995).

9.     The suspension of Debtor's grain license gave rise to an inability by Debtor to perform under the Contracts and constituted an anticipatory repudiation by Debtor of its acceptance and payment obligations under the unperformed Contracts.

10.     At the time Debtor's grain license was suspended, Debtor owed Schafer $491,698.03 for 102,080.29 bushels of corn that Schafer delivered prior to the suspension date; an itemization of which is set forth in Schafer's proof of claim filed herein (Claim No. 112-1)

11.     Following the suspension of Debtor's grain license, Debtor has continued in its failure to pay Schafer for delivered grain as set forth in Schafer's Proof of Claim, and such ongoing breach constituted further anticipatory repudiation by Debtor of its payment obligations under the unperformed Contracts.

12.     When Debtor sought to have its grain license reinstated, Debtor made intentionally false material representations to the Department that Debtor had paid all Nebraska producers when in fact Debtor had not paid Schafer. This representation constituted further anticipatory repudiation by Debtor of its payment obligations under the unperformed Contracts.

13.     The extent of a party's contractual obligations after another party repudiates its own obligations is a matter of state law. *See In re Streets & Beard Farm Partnership*, 882 F.2d 233, 235 (7th Cir.1989) (referring to state law to determine whether a contract remained executory).

14. An anticipatory breach regarding the sale of goods is governed by Neb. Rev. Stat. UCC §2-610(c), which states that when a party has repudiated a contract with respect to a performance not yet due, the aggrieved party may suspend his own performance.

15. In addition, Neb. Rev. Stat. UCC § 2-703, states that when a party repudiates with respect to a contract, the aggrieved party may (a) withhold delivery of such goods, (b) resell and recover damages, and/or (c) cancel.

16. In *Trinidad Bean & Elev. Co. v. Frosh*, 92 Neb. App. 1819 (1992), the Nebraska Court of Appeals held that damages based on repudiation are based upon the market price of grain at time a seller learns of the buyer's repudiation, thereby giving rise to an immediate obligation of Schafer under Nebraska law to mitigate the damages caused by Debtor's repudiations.

17. Under Neb. Rev. Stat. UCC § 2-611, a repudiating party cannot retract its repudiation if the aggrieved party has canceled the contract or materially changed his position or otherwise indicated that he considers the repudiation final.

18. The perishability of grain, the financial exposure of suddenly having 1,000,000 bushels of potentially unpriced grain, the loss of income due to Debtor's refusal to pay on prior contracts, and Debtor's obligation to mitigate damages immediately upon learning of the repudiation, have all caused Schafer to deem the repudiation final and materially change Schafer's position.

19. Schafer has told Debtor's grain representatives that he considers the repudiation final.

20. Schafer materially changed his position by entering into new grain contracts from November 20, 2025 through December 1, 2025, with other grain dealers, for the sale of approximately 945,00 bushels out of the 1,000,000 bushels of the grain previously contracted for sale pursuant to the Contracts.

21. Debtor has never attempted to retract its repudiation, stating as recently as December 3, 2025, in its notice to creditors that Debtor may, but is not obligated, to assume and assign the Contracts.

22. Debtor's employee sent a text message to Schafer on December 5, 2025, acknowledging Schafer communicated his "position" that the contracts were cancelled.

23. When one party to a contract is not obligated to perform, the contract is no longer an executory contract." *Cameron v. Pfaff Plumbing and Heating, Inc.*, 966 F.2d 414 (8th Cir. 1992) (holding that "performance remains due to some extent," as a definition of an "executory contract," is equivalent to the Countryman definition); *C & S Grain Co., Inc.,* 47 F.3d 233 (7th Cir. 1995).

24. Debtor's (i) ongoing failure to pay Schafer for grain delivered under prior contracts, (ii) loss of its grain dealer's license, and/or (iii) materially false representations made to the Department that Debtor had paid Schafer in full, when in fact Debtor had not, constituted anticipatory repudiation under Nebraska law, which served to suspend Schafer's obligation to perform under the Contracts and resulted in the Contracts ceasing to be "executory contracts" under bankruptcy law, and as such, now prevents the Contracts from being assumed and assigned.

### THE CONTRACTS ARE VOID AS A MATTER OF LAW

25. The loss of Debtor's grain dealer license resulted in not just an anticipatory repudiation of the Contracts, but also, or in the alternative, the Contracts becoming void as a matter of Nebraska law.

26. *In re Alvo Grain and Feed, Inc.*, 2008 WL4021345 (D. Neb. Bankr. 2008), this Court held that the loss of a grain dealer's license did not result in the grain contracts becoming void under Nebraska law, in part, based on the position of the Department.

27.    This Court in *Alvo Grain* found persuasive the affidavit of the Executive Director of the Nebraska Public Service Commission, in which the director stated that it was acceptable to assign pre-petition grain contracts for the purchase of grain in order to satisfy Debtor's pre-petition contracts for the sale of grain. *See* Affidavit of Michael Hybl (Fil. # 152).

28.    The Department has since changed its view on the situation, and in *In re Claims Against Banghart Properties,* 32 Neb. App. 168 (2023), the Department adopted the reasoning of *Matter of C & S Grain Co., Inc.,* 47 F.3d 233 (7th Cir. 1995) that Nebraska law does result in the voiding of grain contracts upon the loss of a license.

29.    Once a statute imposes licensure as a precondition for operation and provides a penalty for its violation, a contract for the unlicensed performance of that act is void. 51 Am. Jur. 2d *Licenses and Permits* § 66 (2022); *Mincks Agri Center, Inc. v. Bell Farms, Inc.*, 611 N.W.2d 270 (Iowa 2000); 53 C.J.S. *Licenses* § 128 (2022).

30.    Accordingly, Debtor's loss of its grain dealer's license makes the Contracts void as a matter of Nebraska law.

WHEREFORE, Schafer respectfully requests that the Court sustain the Debtor's Objection, find that the Contracts are not executory contracts, enter an Order declaring that the Contracts have been cancelled or voided, and as such, are not subject to assumption and assignment by the Debtor, and that the Court provide for such further and other relief as is just and equitable under the circumstances.

Dated: December 9, 2025.

BRIAN SCHAFER, party in interest

By:     REMBOLT LUDTKE LLP
        1128 Lincoln Mall, Suite 300
        Lincoln, Nebraska 68508
        (402) 475-5100

By:     /s/ Sheila A. Bentzen
        Sheila A. Bentzen (#25020)
        sbentzen@remboltlawfirm.com
        Benjamin E. Moore (#24173)
        bmoore@remboltlawfirm.com

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on December 9, 2025, he caused a true and correct copy of the foregoing to be filed with the Clerk of the Bankruptcy Court using the CM/ECF system and relies upon the same to send notice to those parties in interest.

/s/ Sheila A. Bentzen
Sheila A. Bentzen (#25020)

4912-4146-4446, v. 2