# EXHIBIT "A"

## 11 U.S.C. § 557 – GRAIN CLAIM FORM – Hansen-Mueller Co.
(Bankruptcy Case Number: 25-81226-TLS in the U.S. Bankruptcy Court, District of Nebraska)

**(Deadline for Filing this Grain Claim Form with the Bankruptcy Court is 11:59 P.M. February 2, 2026)**

> PLEASE BE ADVISED THAT THE FILING of THIS Grain Claim Form DOES NOT RELIEVE A GRAIN CLAIMANT, OR ANY OTHER PARTY, FROM THE REQUIREMENT OF FILING A PROOF OF CLAIM IN THIS BANKRUPTCY CASE IN ORDER TO BE ENTITLED TO PARTICIPATE IN ANY DISTRIBUTIONS FROM THE ESTATE. THUS, ANY CREDITOR OR INTERESTED PARTY ALSO SHOULD FILE A PROOF OF CLAIM AS CONTEMPLATED BY FED. R. BANKR. P. 3001 and 3002, et al.

> The deadline for filing Proofs of Claim with the U.S. Bankruptcy Clerk is 11:59 p.m. on January 26, 2026.

1. Name and Contact Information of Interested Grain Party:

Name: __FLEMING GRAIN & CATTLE, LLC_____

Address: __Robert S. Fleming & Margery Lynn Fleming, 6084 Arthur Cemetery Rd.,____

Troy, TX 73579_____

Telephone: ___(254)760-2481_____

Email: _fgctexas@gmail.com_____

2. Type of Grain in which Interest is asserted:

☐ Wheat
☑ **Corn**
☐ Oats
☐ Soybeans
☐ Barley
Other: _____

3. Amount of Grain* (Bushels) in which Interest is asserted:

*For Interests asserted in multiple Grain types, provide separate amounts for each type, along with a listing of each Contract No., each location to which the Grain was delivered, and each date of delivery. You may refer to an attached exhibit containing such information and attach supporting documentation as necessary.

| Contract No. | Grain Type | Amount of Bushels | Delivery Location | Date(s) |
|---|---|---|---|---|
| | Wheat | | | |
| 167312, | Corn | 10,001.43 bu. yellow | Oakwood, Texas | |

| Contract No. | Grain Type | Amount of Bushels | Delivery Location | Date(s) |
|---|---|---|---|---|
| 168038 | | corn | (Sanderson Farms) | |
| | Oats | | | |
| | Soybeans | | | |
| | Barley | | | |
| | Other (name) | | | |

4.      Basis for Interest: (attach additional sheets of paper as necessary)

☐ Grain stored with Debtor

☑ **Security Interest held in Grain**

☐ Reclamation

☐ Holders of warehouse receipts or other documents of title

☑ **State or other law basis for asserting priority of claim** (include specific statute and/or case law supporting claim):

Texas Property Code Chapter 70, Subchapter E (see, e.g., attached copy of Tex. Prop. Code § 70.4045. Perfection and Priority of Agricultural Lien on Crops);

Article 9 of UCC_____

☑ **Other:**      See attached Claim Summary_____

_____

5.      Please list and attach any documents that support your property right or secured interest in Grain. (If needed you may attach additional sheets of paper.)

Attachments:

1.  Claim Summary

2.  Copy of Tex. Prop. Code § 70.4045. Perfection and Priority of Agricultural Lien on Crops

3.  Proof of Claim #432 (Fleming Grain & Cattle, LLC) filed on 1/23/2026 with the Court's Claims Register in the Hansen-Mueller Bankruptcy Case, asserting a secured claim in the amount of $45,205.82, and including the following attachments:

(a)      Customer Holdings (Yellow Corn) (12/8/2025)
(b)      Purchase Contract 167312 (8/15/2025) for 19,000 bushels of yellow corn @$4.50/bu. to Oakwood, Texas
(c)      Purchase Contract 168038 (8/28/2025) for 10,000 bushels of yellow corn @4.54/bu. to Oakwood, Texas
(d)      Weight Tickets

4.  Proof of Claim #494 (The First National Bank of Central Texas) filed on 1/31/2026 in connection with Fleming Grain & Cattle, LLC claim

6.      Please list State(s) of governing law applicable to rights:  _Texas_____

2

11 U.S.C. § 557 – GRAIN CLAIM FORM – Hansen-Mueller Co.

7.     Name and Contact Information of Attorney Represented Interested Grain Party:

| |
|---|
| Name: __DAVID R. LANGSTON__ |
| State & Bar Card # __11923800 (Texas)__ |
| Law Firm: __MULLIN HOARD & BROWN, LLP__ |
| Address: __1500 Broadway, Suite 700, Lubbock, Texas 79401__ |
| Telephone: __(806) 765-7491__ |
| Email: __dlangston@mhba.com__ |

**PLEASE TAKE NOTICE:** If you intend to rely on any documents supporting your claim at the 557 Hearing, you must attach said documents to this form. These would include, for instance, any/all scale tickets, warehouse receipts, filed UCC-1 financing statements, or other documentation supporting the above amounts and interests. If documentation is voluminous or otherwise confidential, please attach a summary of the documents in your possession or control which contains such information. **You may not rely on any documents at the 557 Hearing that are not attached to or referenced in this form.**

To be considered, all 557 Forms must be filed with the Bankruptcy Court by February 2, 2026, at 11:59 p.m. Central Time, or such interest may not be considered by the Bankruptcy Court.

Date: 01/30/2026

_Robert Fleming, President_

(Signature of Authorized Representative of Grain Claimant)

11 U.S.C. § 557 – GRAIN CLAIM FORM – Hansen-Mueller Co.

In re Hansen-Mueller Co.
Bankruptcy Case No 25-81226-TLS

<b>11 U.S.C. § 557 – GRAIN CLAIM FORM CLAIM SUMMARY</b>

<b><u>FLEMING GRAIN & CATTLE, LLC</u></b>

**Claimant:** Fleming Grain & Cattle, LLC
**Contact Person:** Robert S. Fleming & Margery Lynn Fleming

**Address:**      6084 Arthur Cemetery Rd.
          Troy, TX 73579
**Tel:** (254) 760-2481
**Email:** fgctexas@gmail.com

**Claim Amount: <u>$45,205.82</u>**
**Date of Last Delivery:** 9/16/2025

Fleming Grain & Cattle, LLC (the "**Claimant**") sold and delivered multiple orders of yellow corn to Hansen-Mueller Co. (the "**Debtor**"), all or part of which was stored at the Hansen-Mueller grain storage facility. The yellow corn was delivered to the Hansen-Mueller, Oakwood, Texas facility (Sanderson Farms) in September of 2025. The Claimant is owed a total amount of at least **<u>$45,205.82</u>** (the "**Claim Amount**") for delivery of 10,001.43 bushels of yellow corn to Hansen-Mueller.

Claimant filed **POC #432** (1/23/2026) for a secured claim amount of **<u>$45,205.82</u>** for delivery of 10,001.43 bushels of yellow corn under Purchase Contracts 167312 and 168038.

The unpaid Claim Amount of **<u>$45,205.82</u>** is secured per the Notice of Perfection of Agricultural Lien **[Dkt. 173]** filed on behalf of the Claimant in the Bankruptcy Case, on 12/10/2025 pursuant to 11 U.S.C. § 546(b)(1)(A) which arises under Texas Property Code Chapter 70, Subchapter E.

**Attachments:**

The following attachments are provided in support of Claimant's 11 U.S.C. § 557 – Grain Claim Form:

1.      Copy of Tex. Prop. Code § 70.4045. Perfection and Priority of Agricultural Lien on Crops

2.      Proof of Claim #432 (Fleming Grain & Cattle, LLC) filed on 1/23/2026 with the Court's Claims Register in the Hansen-Mueller Bankruptcy Case, asserting a secured claim in the amount of $45,205.82, and including the following attachments:

    (a) Customer Holdings (Yellow Corn) (12/8/2025)
    (b) Purchase Contract 167312 (8/15/2025) for 19,000 bushels of yellow corn @$4.50/bu. to Oakwood, Texas

1

(c) Purchase Contract 168038 (8/28/2025) for 10,000 bushels of yellow corn @4.54/bu. to Oakwood, Texas

(d) Weight Tickets

3. Proof of Claim #494 (The First National Bank of Central Texas) filed on 1/31/2026 in connection with Fleming Grain & Cattle, LLC claim

**Argument:**

## **Statutory Agricultural Lien Held by the Claimant**

Claimant is an unpaid agricultural producer of yellow corn delivered to the Debtor (a grain warehouse or contract purchaser) at its locations in the State of Texas, and therefore, is entitled to the protections set out in Texas Property Code §§ 70.401–70.410.

Under Texas Property Code § 70.403, an agricultural lien attaches on the date on which physical possession of the agricultural crop is delivered or transferred by the agricultural producer to the warehouse or to the contract purchaser or the purchaser's agent, or if there is to be a series of deliveries on the date of the first delivery of the agricultural crop. Tex. Prop. Code Ann. § 70.403.

An agricultural lien is perfected at the time the lien attaches under Tex. Prop. Code § 70.403; Tex. Prop. Code Ann. § 70.4045(a). The lien continues to be perfected if a financing statement covering the agricultural crop is filed on or before the 90th day after the date:

(1) the physical possession of the crop is delivered or transferred by the agricultural producer to warehouse or the contract purchaser or the purchaser's agent, if there is only one delivery; or

(2) of the last delivery of the crop to the warehouse or the contract purchaser or the purchaser's agent, if there is a series of deliveries.

Tex. Prop. Code Ann. § 70.4045(a). If a financing statement covering the agricultural crop is not timely filed, the lien is considered unperfected. Tex. Prop. Code Ann. § 70.4045(b).

Bankruptcy Filing Occurred Before Expiration of 90-Day Filing Period

Texas law permits Producer to maintain perfection by filing a financing statement within 90 days after delivery of the crop. The Debtor filed the present bankruptcy case on November 17, 2025, which was before expiration of the 90-day statutory filing period. Because the automatic stay in 11 U.S.C. § 362(a)(4) and (a)(5) prohibits the filing of a post-petition financing statement with the Secretary of State, the Claimant timely filed a Notice of Perfection of Agricultural Lien [Dkt #119] on December 5, 2025 pursuant to 11 U.S.C. § 546(b)(1)(A) to preserve and continue perfection of its lien. Pursuant to Texas Property Code § 70.4045(c), the Claimant's statutory agricultural lien holds priority over any conflicting security interest in the crops or their proceeds created by the Debtor in favor of a third-party lender.

<u>Choice of Law: Texas Law Applies</u>

While farm products are located in a jurisdiction, the local law of that jurisdiction governs perfection, the effect of perfection or nonperfection, and the priority of an agricultural lien on the farm products. Tex. Bus. & Com. Code Ann. § 9.302 (West).

Claimant delivered the grain to Hansen-Mueller's facility in Texas. Because the farm products were located in Texas at the time the agricultural lien attached and was perfected, Texas law governs issues of perfection and priority. Accordingly, Texas state law applies to the Claimant's agricultural lien on the grain.

The federal choice-of-law analysis would look to the UCC and the Second Restatement of Conflicts of Law to determine which state has the 'most significant relationship' to the case." *Fishback Nursery, Inc., v. PNC Bank, Nat'l Assoc.*, 920 F.3d 932, 936 (5th Cir. 2019) (citing *In re Mirant Co.*, 675 F.3d 530, 536 (5th Cir. 2012)). The Fifth Circuit determined that "agricultural lien perfection and priority were governed by law of jurisdiction where farm products were located" *Fishback Nursery, Incorporated v. PNC Bank, National Association*, 920 F.3d 932 (2019).

However, the Court need only perform a choice of law analysis if the laws of the states in question conflict on a disputed substantive issue. *Great Am. Ins. Co. v. ACE Am. Ins. Co.*, 325 F. Supp. 3d 719, 725 (N.D. Tex. 2018); *Schneider Nat'l Transport v. Ford Motor Co.*, 280 F.3d 532, 536 (5th Cir. 2002) ("If the laws of the states do not conflict, then no choice-of-law analysis is necessary."); *Greenberg Traurig of N.Y., P.C. v. Moody*, 161 S.W.3d 56, 69-70 (Tex. App.—Houston [14th Dist.] 2004, no pet.) ("A court must make a conflicts-of-laws decision only when the case is connected with more than one state and the laws of the states in question differ on one or more points in issue.").

In this case, UCC 9-302 (Law Governing Perfection and Priority of Agricultural Liens) is identical under Texas law (Tex. Bus. & Com. Code Ann. § 9.302) and Nebraska law (Neb. Rev. St. U.C.C. § 9-302).

"The Court need not engage in the Restatement analysis when there is a statutory directive: "A court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law." Restatement (Second) of Conflict of Laws § 6 (1971); accord Restatement § 6(1) cmt. b." *Goosehead Ins. Agency, LLC v. Williams Ins. & Consulting, Inc.*, 533 F. Supp. 3d 367, 381 (N.D. Tex., Fort Worth, 2020).

Texas has a statute which specifically controls the choice of law issue. In Texas, the state conflict of laws statute is Texas UCC § 9.301, therefore, the following general rules determine the law governing perfection, the effect of perfection or nonperfection, and the priority of a security interest in collateral:

(1) Except as otherwise provided in this section, while a debtor is located in a jurisdiction, the local law of that jurisdiction governs perfection, the effect of perfection or nonperfection, and the priority of a security interest in collateral.

(2) While collateral is located in a jurisdiction, the local law of that jurisdiction governs perfection, the effect of perfection or nonperfection, and the priority of a possessory security interest in that collateral.

Tex. Bus. & Com. Code Ann. § 9.301.

In specific, Texas U.C.C. has a provision, § 9.302 of the Texas Business and Commerce Code, which specifies that agricultural lien perfection and priority are governed by the law of the jurisdiction where "farm products are located." Tex. Bus. & Com. Code § 9.302.

Texas UCC Section 9.307(b) defines a debtor's location as "individual's principal residence" for a debtor who is an individual; its "place of business" or "chief executive office" for a debtor that is an organization. 9.307(e) defines the debtor's "location" as the state of "organization" for a registered organization such as an L.L.C. Tex. Bus. & Com. Code Ann. § 9.307. *See Matter of First River Energy, L.L.C.*, 986 F.3d 914, 925 (5th Cir. 2021)

Federal bankruptcy courts are required under the *Butner* doctrine to recognize state-created property interests, including agricultural liens, unless a compelling federal interest requires a different result. In *Butner v. U.S.*, 440 U.S. 48 (1979), the Supreme Court established that "property interests are created and defined by state law. Unless some federal interest requires a different result, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding." This principle directly applies to agricultural liens, which are recognized as "interests in farm products" under both state law and UCC definitions. *Butner v. United States*, 440 U.S. 48, 55, 99 S. Ct. 914, 918, 59 L. Ed. 2d 136 (1979).

This principle applies to security interests:

"The justifications for application of state law are not limited to ownership interests; they apply with equal force to security interests, including the interest of a mortgage in rents earned by mortgaged property." *Butner*, 440 U.S. at 55, 99 S.Ct. 914.

The bankruptcy estate under 11 U.S.C. § 541 includes all legal and equitable interests of the debtor, but the scope and validity of those interests are determined by state law. In bankruptcy proceedings, state law determines interests in property and the priority of competing liens. *In re Glinz*, 46 B.R. 266, 271 (Bankr. D.N.D. 1984) (citations omitted). Courts particularly look to state statutes when determining the enforceability and priority of interests in crops. *Id*. (citations omitted).

In sum, the Claimant's claim is secured per the Notice of Perfection of Agricultural Lien [Dkt. 119] filed on behalf of the Claimant in the Bankruptcy Case, on 12/5/2025 pursuant to 11 U.S.C. § 546(b)(1)(A) which arises under Texas Property Code Chapter 70, Subchapter E.

<u>Attorney's Fees</u>

Claimant is entitled to recovery of attorney's costs under § 70.409 of the Texas Property Code, which provides that:

> "An agricultural producer who prevails in an action brought to enforce a lien created under this subchapter is entitled to recover:
>
> > (1) reasonable and necessary attorney's fees and court costs; and
> > (2) interest on funds subject to the lien at the judgment interest rate as provided by Chapter 304, Finance Code."

Tex. Prop. Code Ann. § 70.409 (West).

## **Operating Lender Lien**

Alternatively, The First National Bank of Central Texas ("**FNB**") holds a valid, perfected, and first-priority security interest in Claimant's crops and the proceeds thereof, including the grain and grain proceeds currently held by Hansen-Mueller.

Claimant has filed Proof of Claim #494 on 1/31/2026 on behalf of The First National Bank of Central Texas ("**FNB**") based upon its status as a codebtor with Hansen-Mueller Co. because Hansen-Mueller is holding grain or grain proceeds that are subject to FNB's perfected security interest.

Claimant is indebted to FNB on an outstanding promissory note with a current outstanding balance owing. Repayment of this indebtedness is secured by liens against Claimant's crops and crop proceeds, created by a security agreement and perfected by the filing of a UCC-1 financing statement.

Claimant has delivered yellow corn to Hansen-Mueller and, as reflected on its POC #432, Claimant is owed proceeds from the sale of such corn. The proceeds of the yellow corn constitute "crop proceeds" and are encumbered by FNB's perfected security interest by virtue of its security agreement and UCC-1 financing statement filed with the Texas Secretary of State.

On the Petition Date of November 17, 2025, Hansen-Mueller Co. was indebted to BMO Bank, N.A. ("**BMO Bank**") in an amount exceeding 50 million dollars. The repayment of such indebtedness is secured by a security interest BMO Bank holds against grain inventory. The BMO Bank's security interest in inventory is perfected by the filing of a UCC-1 financing statement filed with the Secretary of State of Nebraska on 3/31/2023.

Accordingly, FNB holds a valid, perfected, and first-priority security interest in Claimant's crops and crop proceeds for one or more of the following reasons:

1. <u>FNB's security interest has priority over BMO Bank's security interest under the principle of first-in-time, first-in-right, and pursuant to Article 9 of the Uniform Commercial Code.</u>

Claimant asserts that FNB's perfected security interest in Claimant's crops and crop proceeds attached prior to, and is separate and distinct from, BMO Bank's security interest in Hansen-Mueller's inventory. The grain and resulting proceeds at issue constitute proceeds of Claimant's crops, not unencumbered inventory of Hansen-Mueller. Accordingly, under the principle of first-in-time, first-in-right, and pursuant to Article 9 of the Uniform Commercial Code, FNB's security interest has priority over any competing security interest asserted by BMO Bank with respect to the grain or proceeds derived therefrom.

The ultimate determinant of priority will be which bank filed their financing statement first or perfected their security interest first under the general rule of UCC Section 9-322(a). In this case, UCC 9-322 (Priorities among conflicting security interests in and agricultural liens on same collateral) is identical under Texas law (Tex. Bus. & Com. Code Ann. § 9.322) and Nebraska law (Neb. Rev. St. U.C.C. § 9-322); therefore, no choice-of-law analysis is needed. *Schneider Nat'l Transport v. Ford Motor Co.*, 280 F.3d 532, 536 (5th Cir. 2002) ("If the laws of the states do not conflict, then no choice-of-law analysis is necessary."); *Greenberg Traurig of N.Y., P.C. v. Moody*, 161 S.W.3d 56, 69-70 (Tex. App.—Houston [14th Dist.] 2004, no pet.) ("A court must make a conflicts-of-laws decision only when the case is connected with more than one state and the laws of the states in question differ on one or more points in issue.").

2.  <u>BMO Bank's lien never attached to the collateral at issue</u>.

BMO's security interest is in Hansen-Mueller's inventory. The grain and proceeds at issue are not Hansen-Mueller's inventory; they are proceeds of Claimant's crops delivered for sale and subject to FNB's lien. Under UCC §§ 9-203 and 9-315, a security interest attaches only to collateral in which the debtor has rights, and a perfected security interest in crops continues in identifiable proceeds.

Because Hansen-Mueller never obtained unencumbered ownership of the grain free of FNB's lien, BMO's inventory lien never attached to the grain or its proceeds. Regardless of priority status, FNB is the only secured party with a valid lien in this specific collateral.

3.  <u>Hansen-Mueller had no rights in the grain subject to FNB's lien</u>.

Under Article 9 of the Uniform Commercial Code, a security interest attaches only to collateral in which the debtor has rights. UCC § 9-203(b)(2). Hansen-Mueller did not acquire ownership of the grain free and clear of FNB's perfected security interest; rather, the grain constituted proceeds of Claimant's crops that remained encumbered by FNB's lien at all times. Because a debtor cannot grant a security interest greater than the rights it possesses, Hansen-Mueller could grant BMO Bank a security interest only in whatever limited equity, if any, Hansen-Mueller held in the grain. That equity interest was subordinate to FNB's prior and continuing security interest. Thus, BMO's inventory lien could only attach to Hansen-Mueller's equity, which was subordinate to FNB's lien Accordingly, BMO Bank's inventory lien could not prime FNB's lien, regardless of the relative timing of the parties' financing statements. A debtor cannot grant a security interest greater than the rights it holds. UCC § 9-203(b)(2).

4. <u>UCC Article 9's farmer-protective framework protects FNB's security interest notwithstanding downstream possession or sale.</u>

Article 9 is structured to protect crop lenders, identifiable proceeds, and farmers' secured creditors against downstream inventory financing. Allowing an inventory lender to wipe out a perfected crop-proceeds lien merely because the grain passed through a grain elevator would undermine the UCC's proceeds framework.

Article 9 provides that a perfected security interest in crops continues in identifiable proceeds of those crops, including grain and sale proceeds, notwithstanding delivery to a third party. UCC § 9-315(a). Hansen-Mueller's possession of the grain for storage, marketing, or sale did not extinguish FNB's security interest or transform the grain into unencumbered inventory of Hansen-Mueller. Accordingly, BMO Bank's inventory lien could attach, if at all, only to Hansen-Mueller's limited interest and could not defeat FNB's continuing security interest in the proceeds of Claimant's crops. Allowing an inventory lender to displace a perfected crop-proceeds lien merely because the grain passed through a grain handler would contravene Article 9's proceeds framework and its protections for secured agricultural lenders.

For one or more of the above reasons, FNB holds a valid, perfected, and first-priority security interest in Claimant's crops and the proceeds thereof, including the grain and grain proceeds currently held by Hansen-Mueller. Because FNB's security interest attached and was perfected prior to any competing interest asserted by BMO Bank in Hansen-Mueller's inventory, FNB's lien has priority under UCC § 9-322. Accordingly, POC# 494 of FNB was properly filed, and the grain and related proceeds should be recognized as subject to FNB's superior lien interest and excluded from any treatment as unencumbered inventory of Hansen-Mueller or as collateral securing BMO Bank's claims.

Vernon's Texas Statutes and Codes Annotated
  Property Code (Refs & Annos)
    Title 5. Exempt Property and Liens
      Subtitle B. Liens
        Chapter 70. Miscellaneous Liens (Refs & Annos)
          Subchapter E. Agricultural Liens (Refs & Annos)

V.T.C.A., Property Code § 70.4045

## § 70.4045. Perfection and Priority of Agricultural Lien on Crops

Effective: September 1, 2017
Currentness

(a) Notwithstanding Chapter 9, Business & Commerce Code, a lien created under this subchapter is perfected at the time the lien attaches under Section 70.403 and continues to be perfected if a financing statement covering the agricultural crop is filed on or before the 90th day after the date:

(1) the physical possession of the crop is delivered or transferred by the agricultural producer to the warehouse or the contract purchaser or the purchaser's agent, if there is only one delivery; or

(2) of the last delivery of the crop to the warehouse or the contract purchaser or the purchaser's agent, if there is a series of deliveries.

(b) If a financing statement covering the agricultural crop is not filed within the time prescribed by Subsection (a)(1) or (2), as applicable, the lien is considered unperfected.

(c) Notwithstanding Chapter 9, Business & Commerce Code, and except as provided by Subsection (d), a lien created and perfected under this subchapter has priority over a conflicting security interest in or lien on the agricultural crop or the proceeds from the sale of the crop created by the warehouse or the contract purchaser in favor of a third party, regardless of the date the security interest or lien created by the warehouse or the contract purchaser attached. This subsection does not affect:

(1) the validity or priority of a security interest or lien:

(A) created and perfected to secure a loan directly to the agricultural producer; or

(B) created and perfected under Chapter 9, Business & Commerce Code, to secure a loan to a warehouse or a contract purchaser on a company-owned crop in favor of a secured lender;

(2) the validity or priority of a cotton ginner's lien created under Section 70.003(d); or

(3) the rights of a holder of a negotiable warehouse receipt.

(d) Subsection (c) does not apply to a contract purchaser who purchases an agricultural crop from an agricultural producer under a marketing contract created under:

(1) Section 52.016, Agriculture Code; or

(2) regulations adopted by the United States Department of Agriculture under Title 7 of the United States Code.

**Credits**
Added by Acts 2015, 84th Leg., ch. 628 (S.B. 1339), § 5, eff. Sept. 1, 2015. Amended by Acts 2017, 85th Leg., ch. 887 (H.B. 3063), § 5, eff. Sept. 1, 2017.

V. T. C. A., Property Code § 70.4045, TX PROPERTY § 70.4045
Current through the end of the 2025 Regular and Second Called Sessions of the 89th Legislature.

---

**End of Document**　　　　　　　　　　　　　　　　　© 2026 Thomson Reuters. No claim to original U.S. Government Works.

**Fill in this information to identify the case:**

Debtor 1 _____

Debtor 2 _____
(Spouse, if filing)

United States Bankruptcy Court for the: _____ District of _____

Case number _____

Official Form 410

# Proof of Claim

04/25

**Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.**

**Filers must leave out or redact** information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy** (Form 309) **that you received.**

| Part 1: | Identify the Claim |
|---|---|

**1. Who is the current creditor?**

_____
Name of the current creditor (the person or entity to be paid for this claim)

Other names the creditor used with the debtor   _____

**2. Has this claim been acquired from someone else?**

❑ No
❑ Yes.  From whom? _____

**3. Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

**Where should notices to the creditor be sent?**

_____
Name

_____
Number        Street

_____
City                          State                 ZIP Code

Contact phone   _____

Contact email   _____

**Where should payments to the creditor be sent?** (if different)

_____
Name

_____
Number        Street

_____
City                          State                 ZIP Code

Contact phone   _____

Contact email   _____

Uniform claim identifier (if you use one):

__ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __

**4. Does this claim amend one already filed?**

❑ No
❑ Yes.  Claim number on court claims registry (if known) _____      Filed on _____
                                                                                                                MM / DD   / YYYY

**5. Do you know if anyone else has filed a proof of claim for this claim?**

❑ No
❑ Yes.  Who made the earlier filing? _____

| Part 2: | Give Information About the Claim as of the Date the Case Was Filed |
|---|---|

**6. Do you have any number you use to identify the debtor?**

❑ No
❑ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: ____  ____  ____  ____

**7. How much is the claim?**

$_____. **Does this amount include interest or other charges?**

❑ No
❑ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

**8. What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

_____

**9. Is all or part of the claim secured?**

❑ No
❑ Yes.  The claim is secured by a lien on property.

**Nature of property:**

❑ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim.*
❑ Motor vehicle
❑ Other. Describe: _____

**Basis for perfection:** _____
Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

**Value of property**: $_____
**Amount of the claim that is secured:** $_____

**Amount of the claim that is unsecured:** $_____ (The sum of the secured and unsecured amounts should match the amount in line 7.)

**Amount necessary to cure any default as of the date of the petition:** $_____

**Annual Interest Rate** (when case was filed)_____%
❑ Fixed
❑ Variable

**10. Is this claim based on a lease?**

❑ No
❑ Yes. **Amount necessary to cure any default as of the date of the petition.** $_____

**11. Is this claim subject to a right of setoff?**

❑ No
❑ Yes. Identify the property: _____

**Proof of Claim**

**12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?**

A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority.

☐ No

☑ Yes. *Check one:*

| | Amount entitled to priority |
|---|---|
| ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $_____ |
| ☐ Up to $3,800* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $_____ |
| ☐ Wages, salaries, or commissions (up to $17,150*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $_____ |
| ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $_____ |
| ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $_____ |
| ☑ Other. Specify subsection of 11 U.S.C. § 507(a)( 6 ) that applies. | $          8,450.00 |

\* Amounts are subject to adjustment on 4/01/28 and every 3 years after that for cases begun on or after the date of adjustment.

---

## Part 3:    Sign Below

The person completing this proof of claim must sign and date it. FRBP 9011(b).

If you file this claim electronically, FRBP 5005(a)(3) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.**

*Check the appropriate box:*

☑ I am the creditor.

☐ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date    01/23/2026
                    MM / DD / YYYY

_Margery Lynn Fleming_
Signature

Print the name of the person who is completing and signing this claim:

| | | | |
|---|---|---|---|
| Name | Margery | Lynn | Fleming |
| | First name | Middle name | Last name |
| Title | Managing Member | | |
| Company | Fleming Grain & Cattle, LLC | | |
| | Identify the corporate servicer as the company if the authorized agent is a servicer. | | |
| Address | 6084 Arthur Cemetery Rd. | | |
| | Number          Street | | |
| | Troy | TX | 76579 |
| | City | State | ZIP Code |
| Contact phone | (254) 760-4739 | Email | fgctexas@gmail.com |

In re Hansen-Mueller Co.
Bankruptcy Case No 25-81226-TLS

## CLAIM SUMMARY
## FLEMING GRAIN & CATTLE, LLC

Fleming Grain & Cattle, LLC (the "**Claimant**") sold and delivered multiple orders of yellow corn to Hansen-Mueller Co. (the "**Debtor**"), all or part of which was stored at the Hansen-Mueller grain storage facility. The yellow corn was delivered to the Hansen-Mueller, Oakwood, Texas facility (Sanderson Farms) in September 2025. The Claimant is owed an amount of at least $45,205.82 for the deliveries.

Full amount of the claim for yellow corn ($45,205.82) is secured per the Notice of Perfection of Agricultural Lien [Dkt. 173] filed on behalf of the Claimant in the Bankruptcy Case, on 12/10/2025 pursuant to 11 U.S.C. § 546(b)(1)(A) which arises under Texas Property Code Chapter 70, Subchapter E.

Attachments:

1.  Customer Holdings (Yellow Corn) (12/8/2025)

2.  Purchase Contract 167312 (8/15/2025) for 19,000 bushels of yellow corn @$4.50/bu. to Oakwood, Texas

3.  Purchase Contract 168038 (8/28/2025) for 10,000 bushels of yellow corn @4.54/bu. to Oakwood, Texas

4.  Weight Tickets

1

# CLAIM SUMMARY
## FLEMING GRAIN & CATTLE, LLC (Cont'd)

| FLEMING GRAIN & CATTLE, LLC CLAIM INFORMATION | | | | | | | |
|---|---|---|---|---|---|---|---|
| Claimant | Contact Information | Contract Terms | Last Day of Delivery | Total Weight (Bushels) | Product | Claim Amount | Date of Perfection |
| Fleming Grain & Cattle, LLC 6084 Arthur Cemetery Rd., Troy, TX 73579 | Robert S. Fleming & Margery Lynn Fleming Tel: (254)760-2481 Email:fgctexas@gmail.com | | 9/16/2025 | | Yellow Corn | | 12/10/2025 per the Notice of Perfection of Agricultural Lien [Dkt. 173] |
| | | | Weight Ticket # | Weight (Bushels) | | | |
| | | Purchase Contract 167312 (8/15/2025) for 19,000 bushels of yellow corn @$4.50/bu. to Oakwood, Texas | 138909 | 1013.57 | | $4,561.07 | |
| | | | 138967 | 1015.71 | | $4,570.71 | |
| | | | 138969 | 993.93 | | $4,472.68 | |
| | | | 139037 | 997.86 | | $4,490.36 | |
| | | | 139040 | 995.71 | | $4,480.71 | |
| | | Subtotal for Purchase Contract 167312 | | 5,016.79 bu. | | $22,575.54 | |
| | | Purchase Contract 168038 (8/28/2025) for 10,000 bushels of yellow corn @4.54/bu. to Oakwood, Texas | 139771 | 981.79 | | $4,457.31 | |
| | | | 139779 | 1011.79 | | $4,593.51 | |
| | | | 139784 | 1001.79 | | $4,548.11 | |
| | | | 139872 | 997.50 | | $4,528.65 | |
| | | | 139890 | 991.79 | | $4,502.71 | |

2

| | | | |
|---|---|---|---|
| Subtotal for Purchase Contract 168038 | | 4,984.64 bu. | $22,630.28 |
| TOTAL | | 10,001.43 bu. | $45,205.82 |

3

# Hansen-Mueller
## Customer Holdings (Purchase)
## YELLOW CORN, All offices

Case 25-81226-TLS   Claim 432   Filed 01/23/26   Desc Main Document   Page 7 of 25

| Customer ID / Contract # | Scale Ticket | Lading Number | Delivery Date | Gross Bushels | Net Bushels | Net Store Bushels | Accumulated Storage | | Amount | Type | Prelim # |
|---|---|---|---|---|---|---|---|---|---|---|---|
| FLETR Fleming Grain & Cattle LLC | | | | | | | | | | | |
| 167312 | 138909 | 138909 | 09/01/25 | 1,013.57 | 1,013.57 | 1,013.57 $ | - | $ | 4,561.07 | Unreleased - 09/26/25 | |
| 167312 | 138967 | 138967 | 09/02/25 | 1,015.71 | 1,015.71 | 1,015.71 $ | - | $ | 4,570.70 | Unreleased - 09/27/25 | |
| 167312 | 138969 | 138969 | 09/02/25 | 993.93 | 993.93 | 993.93 $ | - | $ | 4,472.69 | Unreleased - 09/27/25 | |
| 167312 | 139037 | 139037 | 09/03/25 | 997.86 | 997.86 | 997.86 $ | - | $ | 4,490.37 | Unreleased - 09/28/25 | |
| 167312 | 139040 | 139040 | 09/03/25 | 995.71 | 995.71 | 995.71 $ | - | $ | 4,480.70 | Unreleased - 09/28/25 | |
| 168038 | 139771 | 139771 | 09/15/25 | 981.79 | 981.79 | 981.79 $ | - | $ | 4,457.33 | Unreleased - 09/25/25 | |
| 168038 | 139779 | 139779 | 09/15/25 | 1,011.79 | 1,011.79 | 1,011.79 $ | - | $ | 4,593.53 | Unreleased - 09/25/25 | |
| 168038 | 139784 | 139784 | 09/15/25 | 1,001.79 | 1,001.79 | 1,001.79 $ | - | $ | 4,548.13 | Unreleased - 09/25/25 | |
| 168038 | 139872 | 139872 | 09/16/25 | 997.50 | 997.50 | 997.50 $ | - | $ | 4,528.65 | Unreleased - 09/26/25 | |
| 167312 | 139890 | 139890 | 09/16/25 | 28.95 | 28.95 | 28.95 $ | - | $ | 130.28 | Unreleased - 10/11/25 | |
| 167312-OF | 139890 | 139890 | 09/16/25 | 962.84 | 962.84 | 962.84 $ | - | $ | 4,332.78 | Unreleased - 10/11/25 | |
| *** FLETR Total *** | | | | 10,001.44 | 10,001.44 | 10,001.44 $ | - | $ | 45,166.23 | | |
| *** Type Total : Unreleased *** | | | | 10,001.44 | 10,001.44 | 10,001.44 $ | - | $ | 45,166.23 | | |

## YELLOW CORN

| | Gross Bushels | Net Bushels | Net Store Bushels | Accumulated Storage | | Amount |
|---|---|---|---|---|---|---|
| Deferred | - | - | - | $ - | $ | - |
| Off-site | - | - | - | $ - | $ | - |
| Held | - | - | - | $ - | $ | - |
| In-Transit | - | - | - | $ - | $ | - |
| Storage | - | - | - | $ - | $ | - |
| UnPriced | - | - | - | $ - | $ | - |
| Unreleased | 10,001.44 | 10,001.44 | 10,001.44 | $ - | $ | 45,166.23 |
| WH Receipt | - | - | - | $ - | $ | - |
| Pending | - | - | - | $ - | $ | - |
| Spot pending | - | - | - | $ - | $ | - |

EXHIBIT

1



**HANSEN·MUELLER**

## PURCHASE CONTRACT
AND CONFIRMATION

| | | |
|---|---|---|
| Purchased from: | Seller<br>Fleming Grain & Cattle LLC<br>9494 Arthur Cemetery Road<br>Troy TX 76579 | Buyer<br>Hansen-Mueller<br>1100 W Cambridge Circle Dr<br>Suite 800<br>Kansas City KS 66103 |

|  | #FLETR | Date: | 08/15/2025 |
|---|---|---|---|
| | | Contract No: | 167312 |
| | | Please show on invoice | |
| Contact: Rachel Barry/ | | Your Number: | |

| Commodity: | Yellow Corn | Discount: | 1SANLA |
|---|---|---|---|
| Quantity/Units: | 19,000.00 Bushels | Pay terms: | NET 25 |
| Price: | $4.50 Bu. U25 | | |
| Delivered: | Oakwood, TX - Truck | | |
| Grades: | Destination | | |
| Weights: | Destination | | |
| Shipment Period: | 08/15/2025 - 09/30/2025 | | |

**PLEASE SIGN AND RETURN.**

Special instructions/Remarks:

20 loads of #2 or better YC delivered to Oakwood, TX August Septmber 2025
Destination Weights and Grades
Sanderson Farms Discounts to Apply

NGFA trade rules and arbitration rules to govern, along with Seller's page 2 or backside standard terms and conditions.

| | | |
|---|---|---|
| Accepted _____ | Hansen-Mueller | |
| By: _____ | Signed: _____ | |
| Date: _____ | Date: _____ | |

**EXHIBIT**

**2**

# INVOICE

**Fleming Grain & Cattle, LLC**
Robert & Lynn Fleming
6084 Arthur Cemetery Rd
Troy, TX 76579                                         **DATE**    9/8/2025
254.760.2481
fgctexas@gmail.com

**SOLD TO**    Hansen-Mueller                 **SHIP TO**    **Oakwood**
                                              **CONTRACT**       **167312**

| DATE | TICKET | DESCRIPTION | Gross | Tare | Net | BUSHELS | PRICE | TOTAL |
|------|--------|-------------|-------|------|-----|---------|-------|-------|
|  |  |  |  |  |  |  |  |  |
| 9/1/25 | 138909 | Yellow Corn | 83660 | 26900 | 56760 | 1013.57 | $4.50 | $4,561.07 |
| 9/2/25 | 138967 | Yellow Corn | 83720 | 26840 | 56880 | 1015.71 | $4.50 | $4,570.71 |
| 9/2/25 | 138969 | Yellow Corn | 82900 | 27240 | 55660 | 993.93 | $4.50 | $4,472.68 |
| 9/3/25 | 139037 | Yellow Corn | 82700 | 26820 | 55880 | 997.86 | $4.50 | $4,490.36 |
| 9/3/25 | 139040 | Yellow Corn | 82780 | 27020 | 55760 | 995.71 | $4.50 | $4,480.71 |
|  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |
|  | 5 |  |  |  |  |  |  |  |
|  |  |  |  |  |  | 5,016.79 |  | $22,575.54 |

*6297*

Sanderson Farms
485 HWY 79
Oakwood, TX 75855
903-661-3162

**Receipt Number**  138909
**Operator**  MARILU KK
**Product**  01W WHOLE CORN
**Vendor**
**Quantity (lb)**  0
**Vehicle**
**Bin**  101

**Time In**  9/1/2025 8:31:39 AM
**Time Out**  9/1/2025 8:36:01 AM
**Weight In (lb)**  83660
**Weight Out (lb)**  26900
**Net Weight (lb)**  56760

**Weight In Manual**  False
**Weight Out Manual**  False

## State of Texas Public Weigher # 0782194

## Sanderson Farms Oakwood Tx.

6298

Sanderson Farms
485 HWY 79
Oakwood, TX 75855
903-661-3162

**Receipt Number**     138967
**Operator**     MARILU
**Product**     01W WHOLE CORN
**Vendor**     HANSEN Hansen
**Quantity (lb)**     0
**Vehicle**     6298 TRUCK 1
**Bin**     103

**Time In**     9/2/2025 7:54:58 AM
**Time Out**     9/2/2025 7:59:06 AM
**Weight In (lb)**     83720
**Weight Out (lb)**     26840
**Net Weight (lb)**     56880

**Weight In Manual**     False
**Weight Out Manual**     False

## State of Texas Public Weigher # 0782194

## Sanderson Farms Oakwood Tx.

*6299*

Sanderson Farms
485 HWY 79
Oakwood, TX 75855
903-661-3162

**Receipt Number**    138969
**Operator**    MARILU KK
**Product**    01W WHOLE CORN
**Vendor**    HANSEN Hansen
**Quantity (lb)**    0
**Vehicle**    6299 TRUCK 1
**Bin**    103

**Time In**    9/2/2025 8:43:52 AM
**Time Out**   9/2/2025 8:50:52 AM
**Weight In (lb)**    82900
**Weight Out (lb)**   27240
**Net Weight (lb)**   55660

**Weight In Manual**    False
**Weight Out Manual**    False

## State of Texas Public Weigher # 0782194

## Sanderson Farms Oakwood Tx.

6300

Sanderson Farms
485 HWY 79
Oakwood, TX 75855
903-661-3162

**Receipt Number**     139037
**Operator**           DERIK
**Product**            01W WHOLE CORN
**Vendor**             HANSEN Hansen
**Quantity (lb)**      0
**Vehicle**            6300 TRK 1
**Bin**                102

**Time In**    9/3/2025 7:45:19 AM
**Time Out**   9/3/2025 7:49:47 AM
**Weight In (lb)**    82700
**Weight Out (lb)**   26820
**Net Weight (lb)**   55880

**Weight In Manual**    False
**Weight Out Manual**   False

## State of Texas Public Weigher # 0782194

## Sanderson Farms Oakwood Tx.

6301

**Receipt Number** 139040
**Operator** DERIK
**Product** 01W WHOLE CORN
**Vendor** HANSEN Hansen
**Quantity (lb)** 0
**Vehicle** 6301 TRK 108
**Bin** 102

Sanderson Farms
485 HWY 79
Oakwood, TX 75855
903-661-3162

**Time In** 9/3/2025 8:49:24 AM
**Time Out** 9/3/2025 8:56:18 AM
**Weight In (lb)** 82780
**Weight Out (lb)** 27020
**Net Weight (lb)** 55760

**Weight In Manual** False
**Weight Out Manual** False

## State of Texas Public Weigher # 0782194

## Sanderson Farms Oakwood Tx.

**Fleming Grain and Cattle, LLC**
6084 Arthur Cemetery Rd.
Troy, Texas 76579
(254) 760-2481

6297

# 106189

Date_____

Customer_ Hansen Oakwood

Farm_____

Commodity_ SPEED

83560
27040
_____
56520

Carrier_ OLD

Driver_____ on _____ off_____

Weigher_____

138909

**Fleming Grain and Cattle, LLC**
6084 Arthur Cemetery Rd.
Troy, Texas 76579
(254) 760-2481

6298

# 106189

Date_____

Customer_ Hansen Sanderson

Farm_____

Commodity_ Oakwood

83600
26740
_____
56860

Carrier_ OLD

Driver_____ on _____ off_____

Weigher_____ Din 2

138967

**Fleming Grain and Cattle, LLC**
6084 Arthur Cemetery Rd.
Troy, Texas 76579
(254) 760-2481

6299

# 106189

Date_____

Customer_ Hansen Oakwood

Farm_____

Commodity_____

82640
27340
_____
55300

Carrier_ New

Driver_____ on _____ off_____

Weigher_____

138969

**Fleming Grain and Cattle, LLC**
6084 Arthur Cemetery Rd.
Troy, Texas 76579
(254) 760-2481

6300

# 106189

Date_____

Customer_ Hansen Oakwood

Farm_____

Commodity_____

82600
26700
_____
55900

Carrier_ OLD

Driver_____ on _____ off_____

Weigher_____ Din 2

138977

**Fleming Grain and Cattle, LLC**
6084 Arthur Cemetery Rd.
Troy, Texas 76579
(254) 760-2481

6301

# 106189

Date_____

Customer Hansen Oakwood

Farm_____

Commodity_____

82540

27080

Carrier New

Driver_____ on _____ off_____

Weigher Franklin

139040



## PURCHASE CONTRACT
AND CONFIRMATION

| Purchased from: | Seller<br>Fleming Grain & Cattle LLC<br>9494 Arthur Cemetery Road<br>Troy TX 76579 | Buyer<br>Hansen-Mueller<br>1100 W Cambridge Circle Dr<br>Suite 800<br>Kansas City KS 66103 |
|---|---|---|

|  | #FLETR | Date: | 08/28/2025 |
|---|---|---|---|
|  |  | Contract No: | 168038 |
|  |  | Please show on invoice |  |
| Contact: Rachel Barry/ |  | Your Number: |  |

| Commodity: | Yellow Corn | Discount: | 1SANLA |
|---|---|---|---|
| Quantity/Units: | 10,000.00 Bushels | Pay terms: | NET 25 |
| Price: | $4.54 Bu. Z25 |  |  |
| Delivered: | Oakwood, TX - Truck |  |  |
| Grades: | Destination |  |  |
| Weights: | Destination |  |  |
| Shipment Period: | 08/28/2025 - 09/30/2025 |  |  |

**PLEASE SIGN AND RETURN.**

Special instructions/Remarks:

10 loads of #2 or better YC delivered to Oakwood, TX August Septmber 2025
Destination Weights and Grades
Sanderson Farms Discounts to Apply

NGFA trade rules and arbitration rules to govern, along with Seller's page 2 or backside standard terms and conditions.

Accepted _____        Hansen-Mueller

By: _____        Signed: _____

Date: _____        Date: _____

EXHIBIT
3

INVOICE

**Fleming Grain & Cattle, LLC**
Robert & Lynn Fleming
6084 Arthur Cemetery Rd
Troy, TX 76579
254.760.2481
fgctexas@gmail.com

DATE    9/16/2025

SOLD TO    Hansen-Mueller

SHIP TO    **Oakwood**
CONTRACT    **168038**

| DATE | TICKET | DESCRIPTION | Gross | Tare | Net | BUSHELS | PRICE | TOTAL |
|------|--------|-------------|-------|------|-----|---------|-------|-------|
|      |        |             |       |      |     |         |       |       |
| 9/15/25 | 139771 | Yellow Corn | 82660 | 27680 | 54980 | 981.79 | $4.54 | $4,457.31 |
| 9/15/25 | 139779 | Yellow Corn | 83440 | 26780 | 56660 | 1011.79 | $4.54 | $4,593.51 |
| 9/15/25 | 139784 | Yellow Corn | 83260 | 27160 | 56100 | 1001.79 | $4.54 | $4,548.11 |
| 9/16/25 | 139872 | Yellow Corn | 83540 | 27680 | 55860 | 997.50 | $4.54 | $4,528.65 |
| 9/16/25 | 139890 | Yellow Corn | 82880 | 27340 | 55540 | 991.79 | $4.54 | $4,502.71 |
|      |        |             |       |      |     |         |       |       |
|      |        |             |       |      |     |         |       |       |
|      |        |             |       |      |     |         |       |       |
|      |        |             |       |      |     |         |       |       |
|      |        |             |       |      |     |         |       |       |
|      | 5      |             |       |      |     |         |       |       |
|      |        |             |       |      |     | 4,984.64 |       | $22,630.28 |

63620
ML
6372

Sanderson Farms
485 HWY 79
Oakwood, TX 75855
903-661-3162

**Receipt Number**      139771
**Operator**            MARILU *ML*
**Product**             01W WHOLE CORN
**Vendor**              HANSEN Hansen
**Quantity (lb)**       0
**Vehicle**             6372 TRUCK 1
**Bin**                 103

**Time In**      9/15/2025 6:36:38 AM
**Time Out**  9/15/2025 6:43:09 AM
**Weight In (lb)**    82660
**Weight Out (lb)**  27680
**Net Weight (lb)**  54980

**Weight In Manual**      False
**Weight Out Manual**     False

# State of Texas Public Weigher # 0782194

# Sanderson Farms Oakwood Tx.

6383

Sanderson Farms
485 HWY 79
Oakwood, TX 75855
903-661-3162

**Receipt Number**     139779
**Operator**           MARILU
**Product**            01W WHOLE CORN
**Vendor**             HANSEN Hansen
**Quantity (lb)**      0
**Vehicle**            6383 TRUCK 1
**Bin**                101

**Time In**     9/15/2025 7:41:47 AM
**Time Out**  9/15/2025 7:46:28 AM
**Weight In (lb)**     83440
**Weight Out (lb)**  26780
**Net Weight (lb)**  56660

**Weight In Manual**      False
**Weight Out Manual**    False

# State of Texas Public Weigher # 0782194

# Sanderson Farms Oakwood Tx.

Sanderson Farms
485 HWY 79
Oakwood, TX 75855
903-661-3162

*6384*

| | |
|---|---|
| **Receipt Number** | 139784 |
| **Operator** | MARILUMC |
| **Product** | 01W WHOLE CORN |
| **Vendor** | HANSEN Hansen |
| **Quantity (lb)** | 0 |
| **Vehicle** | 6384 TRUCK 1 |
| **Bin** | 101 |

| | |
|---|---|
| **Time In** | 9/15/2025 9:09:01 AM |
| **Time Out** | 9/15/2025 9:24:52 AM |
| **Weight In (lb)** | 83260 |
| **Weight Out (lb)** | 27160 |
| **Net Weight (lb)** | 56100 |

| | |
|---|---|
| **Weight In Manual** | False |
| **Weight Out Manual** | False |

## State of Texas Public Weigher # 0782194

## Sanderson Farms Oakwood Tx.

6394
ML

Sanderson Farms
485 HWY 79
Oakwood, TX 75855
903-661-3162

**Receipt Number**    139872
**Operator**    MARILU
**Product**    01W WHOLE CORN
**Vendor**    HANSEN Hansen
**Quantity (lb)**    0
**Vehicle**    6394 TRUCK 1
**Bin**    103

**Time In**    9/16/2025 6:33:28 AM
**Time Out**    9/16/2025 6:40:30 AM
**Weight In (lb)**    83540
**Weight Out (lb)**    27680
**Net Weight (lb)**    55860

**Weight In Manual**    False
**Weight Out Manual**    False

## State of Texas Public Weigher # 0782194

## Sanderson Farms Oakwood Tx.

6396

**Receipt Number**   139890
**Operator**   MARILU
**Product**   01W WHOLE CORN
**Vendor**   HANSEN Hansen
**Quantity (lb)**   0
**Vehicle**   6396 TRUCK 1
**Bin**   103

Sanderson Farms
485 HWY 79
Oakwood, TX 75855
903-661-3162

**Time In**   9/16/2025 9:04:00 AM
**Time Out**   9/16/2025 9:08:54 AM
**Weight In (lb)**   82880
**Weight Out (lb)**   27340
**Net Weight (lb)**   55540

**Weight In Manual**   False
**Weight Out Manual**   False

## State of Texas Public Weigher # 0782194

## Sanderson Farms Oakwood Tx.

**Fleming Grain and Cattle, LLC**
6084 Arthur Cemetery Rd.
Troy, Texas  76579
(254) 760-2481

# 108494    6372

Date_____

Customer__Hansen Sanderson__

Farm_____

Commodity__Gorden__

82640

GROSS    82640 lb
02:34PM 09/12/2025

Carrier__Ledbetter__

Driver_____ on _____ off_____

Weigher_____

139771

---

**Fleming Grain and Cattle, LLC**
6084 Arthur Cemetery Rd.
Troy, Texas  76579
(254) 760-2481

# 6383
108484

Date__8/13/25__

Customer__HANSEN/Mueller-Oakwal__

Farm__CORN (GORDEN)__

Commodity_____

GROSS    83860 lb

26780

Carrier__OLD__

Driver_____ on _____ off_____

Weigher_____

139779

---

**Fleming Grain and Cattle, LLC**
6084 Arthur Cemetery Rd.
Troy, Texas  76579
(254) 760-2481

# 108404    6384

Date_____

Customer__Hanson-Sanderson__

Farm_____

Commodity__Gorden__

81920
82670

GROSS    81180 lb
02:02PM 09/13/2025

81180

83260
Oakwood

27160
Oakwood

Carrier__New__

Driver_____ on _____ off_____

Weigher_____

139784

---

**Fleming Grain and Cattle, LLC**
6084 Arthur Cemetery Rd.
Troy, Texas  76579
(254) 760-2481

3
# 109977    6394

Date_____

Customer__~~Oakwood~~ - Oakwood__

Farm_____

Commodity__Gorden__

HANSEN/mueller

GROSS    82840 lb
02:05PM 09/16/2025

82840

**EXHIBIT**
**4**

Carrier__LEDBETTER__

Driver_____ on _____ off_____

Weigher_____

139872

**Fleming Grain and Cattle, LLC**
6084 Arthur Cemetery Rd.
Troy, Texas  76579
(254) 760-2481

108494 6396

Date 9/15/25

0Asku

Customer  HANsen/muelle

Farm

Commodity  CORN / GORDEN

GROSS    62600 LL
08:13PM 09/15/2025

27680

Carrier  New

Driver _____ on _____ off _____

Weigher _____ 139890

**Fill in this information to identify the case:**

Debtor 1    Hansen-Mueller Co.

Debtor 2
(Spouse, if filing)

United States Bankruptcy Court for the:  District of Nebraska

Case number   25-81226-TLS

Official Form 410

# Proof of Claim

04/25

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy** (Form 309) **that you received.**

### Part 1:    Identify the Claim

| | | |
|---|---|---|
| 1. Who is the current creditor? | First National Bank of Central Texas <br> Name of the current creditor (the person or entity to be paid for this claim) <br><br> Other names the creditor used with the debtor | |
| 2. Has this claim been acquired from someone else? | ☑ No <br> ☐ Yes.  From whom? | |
| 3. Where should notices and payments to the creditor be sent? <br><br> Federal Rule of Bankruptcy Procedure (FRBP) 2002(g) | **Where should notices to the creditor be sent?** <br><br> First National Bank of Central Texas <br> Name <br> 1835 N. Valley Mills Dr. <br> Number     Street <br> Waco          TX        76710 <br> City          State       ZIP Code <br><br> Contact phone  (254) 772-9330 <br> Contact email  will.coward@fnbct.bank <br><br> Uniform claim identifier (if you use one): <br> _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ | **Where should payments to the creditor be sent?** (if different) <br><br> Name <br><br> Number     Street <br><br> City          State       ZIP Code <br><br> Contact phone <br> Contact email |
| 4. Does this claim amend one already filed? | ☑ No <br> ☐ Yes.  Claim number on court claims registry (if known) _____ | Filed on _____ <br> MM / DD / YYYY |
| 5. Do you know if anyone else has filed a proof of claim for this claim? | ☐ No <br> ☑ Yes.  Who made the earlier filing?  Fleming Grain & Cattle LLC - POC 432 | |

**Part 2:    Give Information About the Claim as of the Date the Case Was Filed**

| | |
|---|---|
| 6. **Do you have any number you use to identify the debtor?** | ☐ No<br>☑ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor:  5   2   0   0 |

7. **How much is the claim?**       $_____45,205.82 . **Does this amount include interest or other charges?**

   ☑ No

   ☐ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

8. **What is the basis of the claim?**

   Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

   Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

   Limit disclosing information that is entitled to privacy, such as health care information.

   Lien against grain to secure farm loan to grain producer (Fleming

   Grain & Cattle LLC) (see attached loan documents)

9. **Is all or part of the claim secured?**

   ☐ No
   ☑ Yes.    The claim is secured by a lien on property.

   **Nature of property:**

   ☐ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim.*
   ☐ Motor vehicle
   ☑ Other. Describe:    10,001.43 bu. yellow corn delivered to Hansen-Mueller by Fleming Grain & Cattle LLC, and proceeds thereof

   **Basis for perfection:**    UCC Financing Statement 23-0029149565 (see attached)

   Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

   **Value of property:**                     $_____45,205.82
   **Amount of the claim that is secured:**    $_____45,205.82

   **Amount of the claim that is unsecured:**  $_____0.00 (The sum of the secured and unsecured amounts should match the amount in line 7.)

   **Amount necessary to cure any default as of the date of the petition:**    $_____45,205.82

   **Annual Interest Rate** (when case was filed)_____%
   ☐ Fixed
   ☐ Variable

10. **Is this claim based on a lease?**

   ☑ No

   ☐ Yes. **Amount necessary to cure any default as of the date of the petition.**    $_____

11. **Is this claim subject to a right of setoff?**

   ☑ No

   ☐ Yes. Identify the property: _____

**12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?**

A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority.

☑ No

☐ Yes. *Check one:*

| | Amount entitled to priority |
|---|---|
| ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $_____ |
| ☐ Up to $3,800* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $_____ |
| ☐ Wages, salaries, or commissions (up to $17,150*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $_____ |
| ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $_____ |
| ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $_____ |
| ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(__) that applies. | $_____ |

\* Amounts are subject to adjustment on 4/01/28 and every 3 years after that for cases begun on or after the date of adjustment.

---

## Part 3:  Sign Below

The person completing this proof of claim must sign and date it. FRBP 9011(b).

If you file this claim electronically, FRBP 5005(a)(3) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.**

*Check the appropriate box:*

☐ I am the creditor.

☐ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☑ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date  01/31/2026
MM / DD / YYYY

_Albert Urbanek_
Signature

**Print the name of the person who is completing and signing this claim:**

| Name | Albert | | Urbanek |
|---|---|---|---|
| | First name | Middle name | Last name |
| Title | Partner | | |
| Company | USB Joint Venture | | |
| | Identify the corporate servicer as the company if the authorized agent is a servicer. | | |
| Address | 7802 FM 361 | | |
| | Number   Street | | |
| | Richmond | TX | 77469 |
| | City | State | ZIP Code |
| Contact phone | (281) 239-5379 | Email | cottonfarmer63@msn.com |

### The First National Bank of Central Texas
1835 N. Valley Mills Drive
Waco, TX 76710
254-772-9330

| LLC Activity Statement |
|---|

**FLEMING GRAIN & CATTLE LLC**
6084 ARTHUR CEMETERY RD
TROY TX 76579

| General Information | | | |
|---|---|---|---|
| Account Number: | ▮200 | Customer Number: | ▮ |
| Home Phone: | | Work Phone: | |
| Loan Term: | 9 | Loan Type: | Ag Production |
| Interest Rate: | 6.750000 % | Origination Date: | 10/02/2025 |
| | | Date Range: | 10/2/2025-1/29/2026 |
| Loan Officer: | Will Coward | | |
| Collateral: | 23 - Crops | | |
| Call Report: | Loans to Agricultural Production | | |
| Loan Purpose: | Non-consumer | | |

| Balance & Payment Information | | | |
|---|---|---|---|
| Original Amount: | $1,255,000.00 | Payment Due Date: | 06/30/2026 |
| Current Balance: | $554,164.49 | Payment Amount: | $0.00 |
| Accrued Interest: | $4,515.73 | Principal/Interest: | $0.00 |
| Daily Per Diem: | $102.48247 | Payment Type: | Loan is single payment at maturity basis |

| Loan History | | | | |
|---|---|---|---|---|
| Posting Date | Transaction Description | | Amount | Principal Balance |
| 10/02/2025 | Interest Rate Change | 7.25000000 % | $0.00 | |
| 10/03/2025 | New Loan Advance | | $1,255,000.00 | $1,255,000.00 |
| 10/06/2025 | Automatic Prine Transfer from DDA | | ($1,584.00) | $1,253,416.00 |
| 10/06/2025 | Automatic Prine Transfer from DDA | | ($26,816.78) | $1,226,599.22 |
| 10/06/2025 | Automatic Prine Transfer from DDA | | ($12,591.69) | $1,214,007.53 |
| 10/06/2025 | Automatic Prine Transfer from DDA | | ($8,124.28) | $1,205,883.25 |
| 10/06/2025 | Automatic Prine Transfer from DDA | | ($9,274.82) | $1,196,608.43 |
| 10/06/2025 | Automatic Prine Transfer from DDA | | ($69,407.23) | $1,127,201.20 |
| 10/06/2025 | Automatic Prine Transfer from DDA | | ($8,496.07) | $1,118,705.13 |
| 10/06/2025 | Automatic Prine Transfer from DDA | | ($8,751.28) | $1,109,953.85 |
| 10/06/2025 | Automatic Prine Transfer from DDA | | ($9,425.83) | $1,100,528.02 |
| 10/07/2025 | Automatic Prine Transfer from DDA | | ($28,500.00) | $1,072,028.02 |
| 10/14/2025 | Automatic Prine Transfer from DDA | | ($33,500.00) | $1,038,528.02 |
| 10/14/2025 | Automatic Prine Transfer from DDA | | ($8,689.50) | $1,029,838.52 |

January 29, 2026

Page: 1

**COMMERCIAL PROMISSORY NOTE**

**First National Bank of Central Texas**
1835 N Valley Mills Dr
Waco, Texas 76710
Gatesville
(254)772-9330

| LOAN NUMBER | NOTE DATE | PRINCIPAL AMOUNT | MATURITY DATE |
|---|---|---|---|
| ▮5200 | October 2, 2025 | $1,255,000.00 | June 30, 2026 |

**LOAN PURPOSE:** INVENTORY LOAN TO PAY OPERATING RLOC BALANCE IN FULL

**BORROWER INFORMATION**
FLEMING GRAIN & CATTLE LLC
6084 ARTHUR CEMETERY RD
TROY, TX 76579

NOTE. This Commercial Promissory Note will be referred to in this document as the "Note."

LENDER. "Lender" means First National Bank of Central Texas whose address is 1835 N Valley Mills Dr, Waco, Texas 76710, its successors and assigns.

BORROWER. "Borrower" means each person or legal entity who signs this Note.

PROMISE TO PAY. For value received, receipt of which is hereby acknowledged, on or before June 30, 2026 (the "Maturity Date"), the Borrower promises to pay the principal amount of One Million Two Hundred Fifty-five Thousand and 00/100 Dollars ($1,255,000.00) and all interest on the outstanding principal balance and any other charges, including service charges, to the order of Lender at its office at the address noted above or at such other place as Lender may designate in writing. The Borrower will make all payments in lawful money of the United States of America.

PAYMENT SCHEDULE. All unpaid principal, accrued and unpaid interest and any outstanding charges shall be due in a single payment on the Maturity Date.

INTEREST.

Interest Rate and Scheduled Payment Changes. Interest will begin to accrue on the date of this Note. The initial variable interest rate on this Note will be 7.250 % per annum. This interest rate may change on October 3, 2025 and every day thereafter. Each date on which the interest rate may change is called the "Change Date." Beginning with the first Change Date, Lender will calculate the new interest rate based on Wall Street Journal in effect on the Change Date (the "Index"). The interest rate will never be greater than 18.000% or less than 5.000%.

Index Replacement. If the Index is Unavailable on the Change Date, the interest rate will be calculated using a "Replacement Index" and a new commercially reasonable "Replacement Margin."

Index Unavailability. The Index is considered "Unavailable" when one or more of the following events occurs:

(1) A public statement by or on behalf of the administrator of the Index, or supervisor thereof or a relevant governmental authority, that (a) the administrator will cease publishing the Index and there is no successor administrator that will continue publication of the Index, or (b) that the Index has been discontinued, is no longer reliable or representative, or may no longer be used;

(2) The Index is not published by the administrator of the Index for five consecutive business days without advance announcement that the disruption is temporary; or

(3) Lender reasonably determines that the Index no longer reflects the Lender's cost of funding.

Replacement Index and Replacement Margin. Lender will select the Replacement Index and determine an associated Replacement Margin. Lender shall make a reasonable effort to select a Replacement Index and a Replacement Margin that, when added together, Lender reasonably expects will minimize any change to the cost of the loan. The Replacement Index shall be (a) a replacement Index selected or recommended by a relevant governmental authority or a committee endorsed or convened thereby, (b) a comparable successor or alternative Index and Margin that is, at such time, broadly viewed as acceptable market practice for similar loans in lieu of the Index, or (c) a successor or alternative Index rate as Lender may reasonably determine. The Replacement Margin shall be determined by utilizing a margin adjustment method which is, at such time, (a) selected or recommended by a relevant governmental authority or a committee endorsed or convened thereby, (b) broadly viewed as acceptable market practice, or (c) any other method as the Lender may reasonably determine.

Compliance with Law. Nothing contained herein shall be construed as to require the Borrower to pay interest at a greater rate than the maximum allowed by law. If, however, from any circumstances, Borrower pays interest at a greater rate than the maximum allowed by law, the obligation to be fulfilled will be reduced to an amount computed at the highest rate of interest permissible under applicable law and if, for any reason whatsoever, Lender ever receives interest in an amount which would be deemed unlawful under applicable law, such interest shall be automatically applied to amounts owed, in Lender's sole discretion, or as otherwise allowed by applicable law.

Accrual Method. Interest on this Note is calculated on a 365/365 day basis.

PREPAYMENT PENALTY. This Note may be prepaid, in full or in part, at any time, without penalty.

SECURITY TO NOTE. Security for this Note is granted pursuant to the following security document(s):

• Security Agreement dated October 2, 2025 evidencing security interest in ALL OF DEBTOR'S EQUIPMENT NOW OWNED OR HEREAFTER ACQUIRED, TOGETHER WITH ALL SUBSTITUTES AND REPLACEMENTS THEREOF, ALL ACCESSIONS

AND ATTACHMENTS THERETO, NOW, OR HEREAFTER ADDED TO OR USED IN CONNECTION WITH SUCH EQUIPMENT, ALL PROCEEDS THEREOF AND WHEREVER LOCATED; ALL OF DEBTORS FARM PRODUCTS TO INCLUDE BUT NOT LIMITED TO ALL GROWING CROPS, ANNUAL OR PERENNIAL, AND ALL PRODUCTS OF THE CROPS TO INCLUDE STORED GRAIN AND SILAGE INVENTORY: AND ALL FEED, SEED, FERTILIZER, CHEMICALS, MEDICINES, AND OTHER SUPPLIES USED OR PRODUCED IN FARMING OPERATIONS AND ALL PROCEEDS THEREOF AND WHEREVER LOCATED: ALL OF DEBTORS LIVESTOCK NOW OWNED OR HEREAFTER ACQUIRED, INCLUDING BUT NOT LIMITED TO ALL PRODUCTS AND PROCEEDS THEREOF AND WHEREVER LOCATED..

**GUARANTY.** In support of this transaction, a Guaranty dated October 2, 2025 has been executed by ROBERT S FLEMING; and a Guaranty dated October 2, 2025 has been executed by MARGERY LYNN FLEMING.

**RIGHT OF SET-OFF.** To the extent permitted by law, Borrower agrees that Lender has the right to set-off any amount due and payable under this Note, whether matured or unmatured, against any amount owing by Lender to Borrower including any or all of Borrower's accounts with Lender. This shall include all accounts Borrower holds jointly with someone else and all accounts Borrower may open in the future. Such right of set-off may be exercised by Lender against Borrower or against any assignee for the benefit of creditors, receiver, or execution, judgment or attachment creditor of Borrower, or against anyone else claiming through or against Borrower or such assignee for the benefit of creditors, receiver, or execution, judgment or attachment creditor, notwithstanding the fact that such right of set-off has not been exercised by Lender prior to the making, filing or issuance or service upon Lender of, or of notice of, assignment for the benefit of creditors, appointment or application for the appointment of a receiver, or issuance of execution, subpoena or order or warrant. Lender will not be liable for the dishonor of any check when the dishonor occurs because Lender set-off a debt against Borrower's account. Borrower agrees to hold Lender harmless from any claim arising as a result of Lender exercising Lender's right to set-off.

**RELATED DOCUMENTS.** The words "Related Documents" mean all promissory notes, security agreements, mortgages, deeds of trust, deeds to secure debt, business loan agreements, construction loan agreements, resolutions, guaranties, environmental agreements, subordination agreements, assignments, and any other documents or agreements executed in connection with the indebtedness evidenced by this Note, whether now or hereafter existing, including any modifications, extensions, substitutions or renewals of any of the foregoing. The Related Documents are hereby made a part of this Note by reference thereto, with the same force and effect as if fully set forth herein.

**DEFAULT.** Upon the occurrence of any one of the following events (each, an "Event of Default" or "default" or "event of default"), Lender's obligations, if any, to make any advances will, at Lender's option, immediately terminate and Lender, at its option, may declare all indebtedness of Borrower to Lender under this Note immediately due and payable without further notice of any kind notwithstanding anything to the contrary in this Note or any other agreement: (a) Borrower's failure to make any payment on time or in the amount due; (b) any default by Borrower under the terms of this Note or any other Related Documents; (c) any default by Borrower under the terms of any other agreement between Lender and Borrower; (d) the death, dissolution, or termination of existence of Borrower or any guarantor; (e) Borrower is not paying Borrower's debts as such debts become due; (f) the commencement of any proceeding under bankruptcy or insolvency laws by or against Borrower or any guarantor or the appointment of a receiver; (g) any default under the terms of any other indebtedness of Borrower to any other creditor; (h) any writ of attachment, garnishment, execution, tax lien or similar instrument is issued against any collateral securing the loan, if any, or any of Borrower's property or any judgment is entered against Borrower or any guarantor; (i) any part of Borrower's business is sold to or merged with any other business, individual, or entity; (j) any representation or warranty made by Borrower to Lender in any of the Related Documents or any financial statement delivered to Lender proves to have been false in any material respect as of the time when made or given; (k) if any guarantor, or any other party to any Related Documents terminates, attempts to terminate or defaults under any such Related Documents; (l) Lender has deemed itself insecure or there has been a material adverse change of condition of the financial prospects of Borrower or any collateral securing the obligations owing to Lender by Borrower. Upon the occurrence of an event of default, Lender may pursue any remedy available under any Related Document, at law or in equity.

**GENERAL WAIVERS.** To the extent permitted by law, the Borrower severally waives any required notice of presentment, demand, acceleration, intent to accelerate, protest, and any other notice and defense due to extensions of time or other indulgence by Lender or to any substitution or release of collateral. No failure or delay on the part of Lender, and no course of dealing between Borrower and Lender, shall operate as a waiver of such power or right, nor shall any single or partial exercise of any power or right preclude other or further exercise thereof or the exercise of any other power or right.

**JOINT AND SEVERAL LIABILITY.** The liability of all parties obligated in any manner under this Note shall be joint and several, to the extent of their respective obligations.

**SEVERABILITY.** If a court of competent jurisdiction determines any term or provision of this Note is invalid or prohibited by applicable law, that term or provision will be ineffective to the extent required. Any term or provision that has been determined to be invalid or prohibited will be severed from the rest of this Note without invalidating the remainder of either the affected provision or this Note.

**SURVIVAL.** The rights and privileges of the Lender hereunder shall inure to the benefits of its successors and assigns, and this Note shall be binding on all heirs, executors, administrators, assigns, and successors of Borrower.

**ASSIGNABILITY.** Lender may assign, pledge or otherwise transfer this Note or any of its rights and powers under this Note without notice, with all or any of the obligations owing to Lender by Borrower, and in such event the assignee shall have the same rights as if originally named herein in place of Lender. Borrower may not assign this Note or any benefit accruing to it hereunder without the express written consent of the Lender.

**DUTY TO NOTIFY.** Borrower agrees to notify Lender if there is any change in the beneficial ownership information provided to Lender. Additionally, Borrower agrees to provide Lender with updated beneficial ownership information in the event there is any change in the beneficial ownership information provided to Lender.

**GOVERNING LAW.** This Note is governed by the laws of the state of Texas except to the extent that federal law controls.

**HEADING AND GENDER.** The headings preceding text in this Note are for general convenience in identifying subject matter, but have no limiting impact on the text which follows any particular heading. All words used in this Note shall be construed to be of such gender or number as the circumstances require.

**ATTORNEY'S FEES, COSTS, AND EXPENSES.** Borrower agrees to pay all of Lender's costs, fees, and expenses arising out of or related to the enforcement of this Note or the relationship between the parties. Included in the fees that Lender may recover from Borrower are the reasonable attorney's fees that Lender incurs, including all fees incurred in the course of representing Lender before, during, or after any lawsuit, arbitration, or other proceeding and those incurred in appeals, whether the issues arise out of contract, tort, bankruptcy, or any other area of law. Included in the costs and expenses which Lender may recover are all court, alternative dispute resolution or other collection costs, and all expenses incidental to perfecting Lender's security interests and liens, preserving the collateral (including payment of taxes and insurance), records searches, and expenses related to audits, inspection, and copying. All costs and expenses Lender is entitled to recover shall accrue interest at the highest rate set forth hereunder or in any of the Related Documents.

**TRANSFERABLE RECORD.** Borrower agrees that this Note is intended to be and shall be treated as an effective, enforceable, and valid transferable record.

**WAIVER OF JURY TRIAL.** All parties to this Note hereby knowingly and voluntarily waive, to the fullest extent permitted by law, any right to trial by jury of any dispute, whether in contract, tort, or otherwise, arising out of, in connection with, related to, or incidental to the relationship established between them in this Note or any other instrument, document or agreement executed or delivered in connection with this Note or the Related Documents.

By signing this Note, Borrower acknowledges reading, understanding, and agreeing to all its provisions and receipt hereof.

FLEMING GRAIN & CATTLE LLC

OCT 0 3 2025

By: ROBERT S FLEMING
Its: LLC Member Manager

OCT 0 3 2025

By: MARGERY LYNN FLEMING
Its: LLC Member Manager

## COMMERCIAL SECURITY AGREEMENT

**First National Bank of Central Texas**
1835 N Valley Mills Dr
Waco, Texas 76710
Gatesville
(254)772-9330

| LOAN NUMBER | AGREEMENT DATE | |
|---|---|---|
| ▮5200 | October 2, 2025 | |

**BORROWER INFORMATION**
FLEMING GRAIN & CATTLE LLC
6084 ARTHUR CEMETERY RD
TROY, TX 76579

**DEBTOR INFORMATION**

FLEMING GRAIN & CATTLE LLC
6084 ARTHUR CEMETERY RD
TROY, TX 76579

**AGREEMENT.** "Agreement" means this Commercial Security Agreement.

**BORROWER.** "Borrower" means FLEMING GRAIN & CATTLE LLC.

**DEBTOR.** "Debtor" means FLEMING GRAIN & CATTLE LLC.

**LENDER.** "Lender" means First National Bank of Central Texas whose address is 1835 N Valley Mills Dr, Waco, Texas 76710, its successors and assigns.

**SECURITY INTEREST GRANT.** Debtor, in consideration of the Obligations, hereby agrees to all of the terms of this Agreement and further hereby specifically grants Lender a continuing security interest in the Collateral. Debtor further grants Lender a security interest in the proceeds of said Collateral; the proceeds of hazard insurance and eminent domain or condemnation awards involving the Collateral; all products of, substitutions, replacements, and accessions to such Collateral or interests therein; any and all deposits or other sums at any time credited by or due from Lender to Debtor; and any and all instruments, documents, policies, and certificates of insurance, securities, goods, accounts receivable, choses in action, chattel paper, cash, property, and the proceeds thereof (whether or not the same are Collateral or proceeds thereof hereunder), owned by Debtor or in which Debtor has an interest which are now or at any time hereafter in possession or control of Lender, or in transit by mail or carrier to or from Lender, or in possession of any third party acting on Lender's behalf, without regard to whether Lender received the same in pledge, for safekeeping, as agent or otherwise, or whether Lender has conditionally released the same. Debtor's grant of a continuing security interest in the Collateral secures to Lender the payment of all Obligations, including all renewals and extensions thereof, whether heretofore, now, or hereafter existing or arising and howsoever incurred or evidenced, whether primary, secondary, contingent, or otherwise.

**DESCRIPTION OF COLLATERAL.** The collateral covered by this Agreement (the "Collateral") is all of the Debtor's property described below which the Debtor now owns or may hereafter acquire or create and all proceeds and products thereof, whether tangible or intangible, including proceeds of insurance and which may include, but shall not be limited to, any items listed on any schedule or list attached hereto.

Farm Products. "Farm Products" shall consist of all Debtor's goods, other than standing timber, with respect to which Debtor is engaged in a farming operation and which are: (i) crops grown, growing, or to be grown, including but not limited to crops produced on plants, trees, vines, and bushes, and aquatic goods produced in aquacultural operations; (ii) livestock, born or unborn, including but not limited to aquatic goods produced in aquacultural operations; (iii) supplies used or produced in Debtor's farming operation; or (iv) products of crops or livestock in their unmanufactured states.

Equipment. "Equipment" shall consist of all goods of the Debtor that are not inventory, farm products, or consumer goods. Equipment includes, but is not limited to, all equipment and fixtures of every nature and description whatsoever, now owned or hereafter acquired by Debtor, wherever located, including all machinery, manufacturing equipment, shop equipment, furnishings, furniture, record keeping equipment, and vehicles, together with all accessions, parts, embedded software, attachments, accessories, tools, and dies, or appurtenances thereto intended for use in connection therewith, and all substitutions, betterments, and replacements thereof and additions thereto.

Specific Collateral. "Specific" refers to the specific property, together with all related rights, described below.
SPECIFIC COLLATERAL DESCRIPTION: ALL OF DEBTOR'S EQUIPMENT NOW OWNED OR HEREAFTER ACQUIRED, TOGETHER WITH ALL SUBSTITUTES AND REPLACEMENTS THEREOF, ALL ACCESSIONS AND ATTACHMENTS THERETO, NOW, OR HEREAFTER ADDED TO OR USED IN CONNECTION WITH SUCH EQUIPMENT, ALL PROCEEDS THEREOF AND WHEREVER LOCATED.; ALL OF DEBTORS LIVESTOCK NOW OWNED OR HEREAFTER ACQUIRED, INCLUDING BUT NOT LIMITED TO ALL PRODUCTS AND PROCEEDS THEREOF AND WHEREVER LOCATED.; and ALL OF DEBTORS FARM PRODUCTS TO INCLUDE BUT NOT LIMITED TO ALL GROWING CROPS, ANNUAL OR PERENNIAL, AND ALL PRODUCTS OF THE CROPS TO INCLUDE STORED GRAIN AND SILAGE INVENTORY; AND ALL FEED, SEED, FERTILIZER, CHEMICALS,

MEDICINES, AND OTHER SUPPLIES USED OR PRODUCED IN FARMING OPERATIONS AND ALL PROCEEDS THEREOF AND WHEREVER LOCATED.

**OBLIGATIONS.** "Obligations" means any and all of Borrower's obligations to Lender, whether they arise under this Agreement or the note, loan agreement, guaranty, or other evidence of debt executed in connection with this Agreement, or under any other mortgage, trust deed, deed of trust, security deed, security agreement, note, lease, instrument, contract, document, or other similar writing heretofore, now, or hereafter executed by the Borrower to Lender, including any renewals, extensions and modifications thereof, and including oral agreements and obligations arising by operation of law. The Obligations include all interest and all of Lender's costs, fees, and expenses recoverable pursuant to this Agreement, any other agreement between the parties, or under applicable law, including all such costs, fees, and expenses that may arise after the filing of any petition by or against Borrower or Debtor under the Bankruptcy Code, irrespective of whether the Obligations do not accrue because of an automatic stay. Without limiting the foregoing, the Obligations expressly include the following:

> **Promissory Note.** The principal amount of $1,255,000.00 evidenced by the promissory note dated October 2, 2025 made by Borrower payable to the order of Lender, and all interest, charges, and other amounts which may be or may become owed as provided under the terms of said promissory note, and any and all amendments, modifications, renewals, extensions, reamortizations, or substitutions thereof.

**CROSS-COLLATERALIZATION.** Debtor agrees that any security interest provided in Collateral under this Agreement or any Collateral provided in connection with any and all other indebtedness of Debtor to Lender, whether or not such indebtedness is related by class or claim and whether or not contemplated by the parties at the time of executing each evidence of indebtedness, shall act as Collateral for all said indebtedness. This cross-collateralization provision shall not apply to any Collateral that is/are household goods or a principal dwelling.

**FUTURE ADVANCES AND AFTER-ACQUIRED PROPERTY.** Future advances may be made at any time by the Lender under this Agreement to the extent allowed by law. The security interest grant contained in this Agreement also applies to any Collateral of the type(s) identified in this Agreement that the Debtor acquires after this Agreement is executed, except that no security interest attaches to after-acquired consumer goods unless the Debtor acquires rights in such goods within 10 days of Lender giving value. In anticipation of future advances by Lender, the Debtor authorizes Lender to file any necessary financing statements to protect Lender's security interest.

**RELATED DOCUMENTS.** "Related Documents" means all promissory notes, security agreements, mortgages, deeds of trust, deeds to secure debt, business loan agreements, construction loan agreements, resolutions, guaranties, environmental agreements, subordination agreements, assignments of leases and rents, and any other documents or agreements executed in connection with this Agreement whether now or hereafter existing, including any modifications, extensions, substitutions or renewals of any of the foregoing. The Related Documents are hereby made a part of this Agreement by reference thereto, with the same force and effect as if fully set forth herein.

**GENERAL REPRESENTATIONS, WARRANTIES, AND COVENANTS.** Debtor represents, warrants, and covenants the following:

> **Farming Operation.** Debtor is presently engaged in a farming operation with respect to all Collateral classified as Farm Equipment or Farm Products, including but not limited to raising, cultivating, propagating, fattening, grazing, or other farming livestock, or aquacultural operation, and Debtor will not discontinue Debtor's farming operation without prior written notification to Lender (Debtor's farming operation will hereinafter be included in the term "business" whenever said term is used in this Agreement to refer to Debtor's business).

> **Debtor's Existence and Organization.** Debtor is fully formed and in good standing under all laws governing Debtor and Debtor's business. Debtor has or will provide Lender with documentation regarding Debtor's state of organization or formation, and Debtor further warrants that Debtor will not change Debtor's state of organization or formation without Lender's prior written consent. Debtor will assist Lender with any changes to any documents, filings, or other records resulting or required by any change in the Debtor's state of organization or formation. The execution of this Agreement will not create any breach of any provision of the Debtor's organizational documents.

> **Authority.** Debtor has the power and authority to execute this Agreement and the Related Documents and to bind Debtor to the obligations created in this Agreement and the Related Documents. The execution of this Agreement will not create any breach of any other agreement to which the Debtor is or may become a party. Debtor has obtained all licenses, permits, and the like which Debtor is required by law to file or obtain, and all such taxes and fees for such licenses and permits required to be paid have been paid in full.

> **Debtor's Name.** Debtor will not conduct business under any name other than that given at the beginning of this Agreement, nor change, nor reorganize the type of business entity as described, except upon the prior written approval of Lender, in which event the Debtor agrees to execute any documentation of whatsoever character or nature required by Lender for filing or recording, at the Debtor's expense, before such change occurs.

> **Business Address.** Debtor will keep all records of account, documents, evidence of title, and all other documentation regarding its business and the Collateral at the address specified at the beginning of this Agreement, unless notice thereof is given to Lender at least ten (10) days prior to the change of any address for the keeping of such records.

> **Title.** Debtor has or will acquire free and clear title to all of the Collateral, unless otherwise provided herein. All of the Collateral exists and is or will be actual property of the Debtor.

> **No Encumbrances or Transfer of Collateral.** Debtor will not allow or permit any lien, security interest, adverse claim, charge, or encumbrance of any kind against the Collateral or any part thereof without Lender's prior written consent. Except as otherwise provided under this Agreement, Debtor will not, without Lender's prior written consent, sell assign, transfer, lease, charter, encumber, hypothecate, or dispose of the Collateral or any part thereof or any interest therein nor will Debtor offer to sell, assign, transfer, lease, charter, encumber, hypothecate, or dispose of the Collateral or any part thereof or any interest therein.

**Priority.** The security interest granted to Lender shall be a first security interest unless Lender specifically agrees otherwise, and Debtor will defend the same against the claims and demands of all persons.

**Facilitation of Security Interest.** Debtor will fully cooperate in placing, perfecting, and maintaining Lender's lien or security interest against or in the Collateral and Debtor agrees to take whatever actions requested by Lender to perfect and continue Lender's security interest in the Collateral. Debtor specifically authorizes the Lender to file the necessary financing statements to perfect the Lender's security interest in the Collateral.

**Location of Collateral.** All of the Collateral is located in the state where the Debtor is located, as identified in this Agreement, unless otherwise certified to and agreed to by Lender, or, alternatively, is in possession of the Lender. Debtor will not remove or change the location of any Collateral without Lender's prior written consent and will allow the Lender to inspect the Collateral upon reasonable request.

**Use of Collateral.** Debtor will use the Collateral only in the conduct of its own business, in a careful and proper manner. Debtor will not use the Collateral or permit it to be used for any unlawful purpose.

**Good Condition and Repair.** Debtor will, at all times, maintain the Collateral in good condition and repair.

**Financial Information and Filing.** All financial information and statements delivered by Debtor to Lender have been prepared in accordance with generally accepted accounting principles consistently applied, and fully and fairly present the financial condition of Debtor and there has been no material adverse change in Debtor's business, Collateral, or condition, either financial or otherwise, since Debtor last submitted any financial information to Lender. Debtor has filed all federal, state and local tax returns and other reports and filings required by law to be filed before the date of this Agreement and has paid all taxes, assessments, and other charges that are due and payable prior to the date of this Agreement. Debtor has made reasonable provision for these types of payments that are accrued but not yet payable. Debtor does not know of any deficiency or additional assessment not disclosed in the Debtor's books and records.

**No Litigation.** There are no existing or pending suits or proceedings, including set-off or counterclaim, which are threatened or pending against Debtor which may result in any material adverse change in Debtor's financial condition or which might materially affect any of the Collateral. Debtor will promptly notify Lender in writing of all threatened and actual litigation, governmental proceedings, default, and every other occurrence that may have a material adverse effect on Debtor's business, financial condition, or the Collateral.

**No Misrepresentations.** All representations and warranties in this Agreement and the Related Documents are true and correct and no material fact has been omitted.

**INSURANCE.** Debtor is required to: (1) keep the collateral insured against damage in the amount equal to or exceeding the Obligations or in such other amount as Lender may specify; (2) purchase the insurance from an insurer that is authorized to do business in the state of Texas or an eligible surplus lines insurer; and (3) name Lender as the person to be paid under the policy in the event of a loss. Debtor must, if required by Lender, deliver to Lender a copy of the policy and proof of the payment of premiums. If Debtor fails to meet any requirement listed in this section, the Lender may obtain collateral protection insurance on behalf of Debtor at the Debtor's expense.

Lender is granted a security interest in the proceeds of such insurance and may apply such proceeds as it may receive toward the payment of the Obligations, whether or not due, in such order as the Lender may in its sole discretion determine. Debtor agrees to maintain, at its own expense, public liability and property damage insurance upon all its other property, to provide such policies in such form as the Lender may approve. All policies of insurance shall provide for a minimum 30 days' written notice of cancellation to Lender. Debtor agrees that Lender is authorized to act as attorney for Debtor in obtaining, adjusting, settling, and canceling such insurance and endorsing any drafts or instruments issued or connected with such insurance. Debtor specifically authorizes Lender to disclose information obtained in conjunction with this Agreement and from policies of insurance to prospective insurers of the Collateral. Lender may, but is not required to, make payment or obtain insurance policies on the Collateral without waiving any default under this Agreement. All costs incurred by the Lender, including reasonable attorneys' fees, court costs, expenses, and other charges thereby incurred, shall become a part of the Obligations and shall be payable on demand. If requested by Lender, all insurance policies shall include a lender's loss payable endorsement.

**ADDITIONAL COLLATERAL.** In the event that Lender should, at any time, determine that the Collateral or Lender's security interest in the Collateral is impaired, insufficient, or has declined or may decline in value, or if Lender should deem that payment of the Obligations is insecure, time being of the very essence, then Lender may require, and Debtor agrees to furnish, additional Collateral that is satisfactory to Lender. Lender shall provide notice as provided for in this Agreement to Debtor regarding additional Collateral. Lender's request for additional Collateral shall not affect any other subsequent right of Lender to request additional Collateral.

**FINANCING STATEMENT(S) AND LIEN PERFECTION.** Lender is authorized to file a conforming financing statement or statements to perfect its security interest in the Collateral, as provided in Revised Article 9, Uniform Commercial Code - Secured Transactions. Debtor agrees to provide such information, supplements, and other documents as Lender may from time to time require to supplement or amend such financing statement filings, in order to comply with applicable state or federal law and to preserve and protect the Lender's rights in the Collateral. The Debtor further grants the Lender a power of attorney to execute any and all documents necessary for the Lender to perfect or maintain perfection of its security interest in the Collateral, and to change or correct any error on any financing statement or any other document necessary for proper placement of a lien on any Collateral which is subject to this Agreement.

**LANDLORD'S WAIVER.** Upon request, Debtor shall furnish to Lender, in a form and upon such terms as are acceptable to Lender, a landlord's waiver of all liens with respect to any Collateral covered by this Agreement that is or may be located upon leased premises.

**RELATIONSHIP TO OTHER AGREEMENTS.** This Agreement and the security interests (and pledges and assignments, as applicable) herein granted are in addition to (and not in substitution, novation or discharge of) any and all prior or contemporaneous security agreements, security interest, pledges, assignments, mortgages, liens, rights, titles, or other interests in favor of Lender or assigned to Lender by others in connection with the Obligations. All rights and remedies of Lender in all such agreements are cumulative.

**TAXES, LIENS, ETC.** The Debtor agrees to pay all taxes, levies, judgments, assessments, and charges of any nature whatsoever relating to the Collateral or to the Debtor's business. If the Debtor fails to pay such taxes or other charges, the Lender, at its sole discretion, may pay such charges on behalf of the Debtor; and all sums so dispensed by the Lender, including reasonable attorneys' fees, court costs, expenses, and other charges relating thereto, shall become a part of the Obligations and shall be payable on demand.

**ENVIRONMENTAL HAZARDS.** Debtor certifies that the Collateral has never been, and so long as this Agreement continues to be a lien on the Collateral, never will be used in violation of any local, state or federal environmental laws, statutes or regulations or used for the generation, storage, manufacture, transportation, disposal, treatment, release or threatened release of any hazardous substances and Debtor will immediately notify Lender in writing of any assertion made by any party to the contrary.

DEBTOR INDEMNIFIES AND HOLDS LENDER AND LENDER'S DIRECTORS, OFFICERS, EMPLOYEES, AND AGENTS HARMLESS FROM ANY LIABILITY OR EXPENSE OF WHATSOEVER NATURE, INCLUDING REASONABLE ATTORNEYS' FEES, INCURRED DIRECTLY OR INDIRECTLY AS A RESULT OF DEBTOR'S INVOLVEMENT WITH HAZARDOUS OR ENVIRONMENTALLY HARMFUL SUBSTANCES AS MAY BE DEFINED OR REGULATED AS SUCH UNDER ANY LOCAL, STATE OR FEDERAL LAW OR REGULATION OR DEBTOR'S OWNERSHIP OR OCCUPATION OF ANY REAL ESTATE UPON WHICH ANY HAZARDOUS OR ENVIRONMENTALLY HARMFUL SUBSTANCE IS OR WAS PREVIOUSLY LOCATED.

**PROTECTION OF COLLATERAL.** Debtor agrees that Lender may, at Lender's sole option, whether before or after any event of default, and without prior notice to Debtor, take the following actions to protect Lender's interest in the Collateral: (a) pay for the maintenance, preservation, repair, improvement, or testing of the Collateral; (b) pay any filing, recording, registration, licensing, certification, or other fees and charges related to the Collateral; or (c) take any other action to preserve and protect the Collateral or Lender's rights and remedies under this Agreement, as Lender may deem necessary or appropriate from time to time. Debtor agrees that Lender is not obligated and has no duty whatsoever to take the foregoing actions. Debtor further agrees to reimburse Lender promptly upon demand for any payment made or any expenses incurred by Lender pursuant to this authorization. Payments and expenditures made by Lender under this authorization shall constitute additional Obligations, shall be secured by this Agreement, and shall bear interest thereon from the date incurred at the maximum rate of interest, including any default rate, if one is provided, as set forth in the notes secured by this obligation.

**INFORMATION AND REPORTING.** The Debtor agrees to supply to the Lender such financial and other information concerning its affairs and the status of any of its assets as the Lender, from time to time, may reasonably request. The Debtor further agrees to permit the Lender, its employees, and agents, to have access to the Collateral for the purpose of inspecting it, together with all of the Debtor's other physical assets, if any, and to permit the Lender, from time to time, to verify Accounts, if any, as well as to inspect, copy, and to examine the books, records, and files of the Debtor.

**DEFAULT.** The occurrence of any of the following events shall constitute a default of this Agreement: (a) the non-payment, when due (whether by acceleration of maturity or otherwise), of any amount payable on any of the Obligations or any extension or renewal thereof; (b) the failure to perform any agreement of the Debtor contained herein or in any other agreement Debtor has or may have with Lender; (c) the publication of any statement, representation, or warranty, whether written or oral, by the Debtor to the Lender, which at any time is untrue in any respect as of the date made; (d) the condition that any Debtor becomes insolvent or unable to pay debts as they mature, or makes an assignment for the benefit of the Debtor's creditors, or conveys substantially all of its assets, or in the event of any proceedings instituted by or against any Debtor alleging that such Debtor is insolvent or unable to pay debts as they mature (failure to pay being conclusive evidence of inability to pay); (e) Debtor makes application for appointment of a receiver or any other legal custodian, or in the event that a petition of any kind is filed under the Federal Bankruptcy Code by or against such Debtor and the resulting proceeding is not discharged within thirty days after filing; (f) the entry of any judgment against any Debtor, or the issue of any order of attachment, execution, sequestration, claim and delivery, or other order in the nature of a writ levied against the Collateral; (g) the death of any Debtor who is a natural person, or of any partner of any Debtor that is a partnership; (h) the dissolution, liquidation, suspension of normal business, termination of existence, business failure, merger, or consolidation or transfer of a substantial part of the property of any Debtor which is a corporation, limited liability company, partnership, or other non-individual business entity; (i) the Collateral or any part of the Collateral declines in value in excess of normal wear, tear, and depreciation or becomes, in the judgment of Lender, impaired, unsatisfactory, or insufficient in character or value, including but not limited to the filing of a competing financing statement; breach of warranty that the Debtor is the owner of the Collateral free and clear of any encumbrances (other than those encumbrances disclosed by Debtor or otherwise made known to Lender, and which were acceptable to Lender at the time); sale of the Collateral (except in the ordinary course of business) without Lender's express written consent; failure to keep the Collateral insured as provided herein; failure to allow Lender to inspect the Collateral upon demand or at reasonable time; failure to make prompt payment of taxes on the Collateral; loss, theft, substantial damage, or destruction of the Collateral; and, when Collateral includes inventory, accounts, chattel paper, or instruments, failure of account debtors to pay their obligations in due course; or (j) the Lender in good faith, believes the Debtor's ability to repay the Debtor's indebtedness secured by this Agreement, any Collateral, or the Lender's ability to resort to any Collateral, is or soon will be impaired, time being of the very essence.

**REMEDY.** Upon the occurrence of an event of default, Lender, at its option, shall be entitled to exercise any one or more of the remedies described in this Agreement, in all documents evidencing the Obligations, in any other agreements executed by or delivered by Debtor for benefit of Lender, in any third-party security agreement, mortgage, pledge, or guaranty relating to the Obligations, in the Uniform Commercial Code of the state of Texas, and all remedies at law and equity, all of which shall be deemed cumulative. The Debtor agrees that, whenever a default exists, all Obligations may (notwithstanding any provision in any other agreement), at the sole option and discretion of the Lender and without demand or notice of any kind, be declared, and thereupon immediately shall become due and payable; and the Lender may exercise, from time to time, any rights and remedies, including the right to immediate possession of the Collateral, available to it under applicable law. The Debtor agrees, in the case of default, to assemble, at its own expense, all Collateral at a convenient place acceptable to the Lender. The Lender shall, in the event of any default, have the right to take possession of and remove the Collateral, with or without process of law, and in doing so, may peacefully enter any premises where the Collateral may be located for such purpose. Debtor waives any right that Debtor may have, in such instance, to a judicial hearing prior to such retaking. The Lender shall have the right to hold any property then in or upon said Collateral at the time of repossession not covered by the security agreement until return is demanded in writing by Debtor. The Lender may sell,

lease, or otherwise dispose of the Collateral, by public or private proceedings, for cash or credit, without assumption of credit risk. Unless the Collateral is perishable or threatens to decline speedily in value or of a type customarily sold on a recognized market, Lender will send Debtor reasonable notice of the time and place of any public sale or of the time after which any private sale or other disposition will be made. Any notification of intended disposition of the Collateral by the Lender shall be deemed to be reasonable and proper if sent United States mail, postage prepaid, electronic mail, facsimile, overnight delivery or other commercially reasonable means to the Debtor at least ten (10) days before such disposition, and addressed to the Debtor either at the address shown herein or at any other address provided to Lender in writing for the purpose of providing notice. Proceeds received by Lender from disposition of the Collateral may be applied toward Lender's expenses and other obligations in such order or manner as Lender may elect. Debtor shall be entitled to any surplus if one results after lawful application of the proceeds. If the proceeds from a sale of the Collateral are insufficient to extinguish the Obligations, the parties obligated thereon shall be liable for a deficiency. Lender shall have the right, whether before or after default, to collect and receipt for, compound, compromise, and settle, and give releases, discharges, and acquittances with respect to, any and all amounts owed by any person or entity with respect to the Collateral. Lender may remedy any default and may waive any default without waiving the default remedied and without waiving any other prior or subsequent default. The rights and remedies of the Lender are cumulative, and the exercise of any one or more of the rights or remedies shall not be deemed an election of rights or remedies or a waiver of any other right or remedy.

**EXERCISE OF LENDER'S RIGHTS.** Any delay on the part of the Lender in exercising any power, privilege, or right hereunder, or under any other document executed by Debtor to the Lender in connection herewith, shall not operate as a waiver thereof, and no single or partial exercise thereof or any other power, privilege, or right shall preclude other or further exercise thereof. The waiver by the Lender of any default of the Debtor shall not constitute a waiver of subsequent default.

**CONTINUING AGREEMENT.** This is a continuing agreement and the security interest (and pledge and assignment, as applicable) hereby granted and all of the terms and provisions of this Agreement shall be deemed a continuing agreement and shall remain in full force and effect until the Obligations are paid in full. In the event that Lender should take additional Collateral, or enter into other security agreements, mortgages, guarantees, assignments, or similar documents with respect to the Obligations, or should Lender enter into other such agreements with respect to other obligations of Debtor, such agreements shall not discharge this Agreement, which shall be construed as cumulative and continuing and not alternative and exclusive.

Any attempted revocation or termination shall only be effective if explicitly confirmed in a signed writing issued by Lender to such effect and shall in no way impair or affect any transactions entered into or rights created or liabilities incurred or arising prior to such revocation or termination, as to which this Agreement shall be truly operative until same are repaid and discharged in full. Unless otherwise required by applicable law, Lender shall be under no obligation to issue a termination statement or similar document unless Debtor requests same in writing, and providing further, that all Obligations have been repaid and discharged in full and there are no commitments to make advances, incur any obligations, or otherwise give value.

**ABSENCE OF CONDITIONS OF LIABILITY.** This Agreement is unconditional. Lender shall not be required to exhaust its remedies against Debtor, other collateral, guarantors, or any third party, or pursue any other remedies within Lender's power before being entitled to exercise its remedies hereunder. Lender's rights to the Collateral shall not be altered by the lack of validity or enforceability of the Obligations against Debtor, and this Agreement shall be fully enforceable irrespective of any counterclaim which the Debtor may assert on the underlying debt and notwithstanding any stay, modification, discharge, or extension of Debtor's Obligation arising by virtue of Debtor's insolvency, bankruptcy, or reorganization, whether occurring with or without Lender's consent.

**NOTICES.** Any notice or demand given by Lender to Debtor in connection with this Agreement, the Collateral, or the Obligations, shall be deemed given and effective upon deposit in the United States mail, postage prepaid, electronic mail, facsimile, overnight delivery or other commercially reasonable means addressed to Debtor at the address designated at the beginning of this Agreement, or such other address as Debtor may provide to Lender in writing from time to time for such purposes. Actual notice to Debtor shall always be effective no matter how such notice is given or received.

**WAIVERS.** Debtor waives notice of Lender's acceptance of this Agreement, defenses based on suretyship, and to the fullest extent permitted by law, any defense arising as a result of any election by Lender under the Bankruptcy Code or the Uniform Commercial Code. Debtor and any maker, endorser, guarantor, surety, third-party pledgor, and other party executing this Agreement that is liable in any capacity with respect to the Obligations hereby waive demand, notice of intention to accelerate, notice of acceleration, notice of nonpayment, presentment, protest, notice of dishonor, and any other similar notice whatsoever. Debtor further waives any defense arising by reason of a disability or other defense of any third party or by reason of the cessation from any cause whatsoever of the liability of any third party.

**WAIVER OF JURY TRIAL. All parties to this Agreement hereby knowingly and voluntarily waive, to the fullest extent permitted by law, any right to trial by jury of any dispute, whether in contract, tort, or otherwise, arising out of, in connection with, related to, or incidental to the relationship established between them in this Agreement or any other instrument, document or agreement executed or delivered in connection with this Agreement or the Related Documents.**

**JOINT AND SEVERAL LIABILITY.** The liability of all parties obligated in any manner under this Agreement shall be joint and several, to the extent of their respective obligations.

**SEVERABILITY.** Whenever possible, each provision of this Agreement shall be interpreted in such manner as to be effective and valid under applicable law; but, in the event any provision of this Agreement shall be prohibited by or invalid under applicable law, such provision shall be ineffective to the extent of such prohibition or invalidity and shall be severed from the rest of this Agreement without invalidating the remainder of such provision or the remaining provisions of this Agreement.

**SURVIVAL.** The rights and privileges of the Lender hereunder shall inure to the benefits of its successors and assigns, and this Agreement shall be binding on all heirs, executors, administrators, assigns, and successors of Debtor.

**ASSIGNABILITY.** Lender may assign, pledge, or otherwise transfer this Agreement or any of its rights and powers under this Agreement without notice, with all or any of the Obligations, and in such event the assignee shall have the same rights as if originally named herein in place of Lender. Debtor may not assign this Agreement or any benefit accruing to it hereunder without the express written consent of the Lender.

**ATTORNEY'S FEES, COSTS, AND EXPENSES.** Debtor agrees to pay all of Lender's costs, fees, and expenses arising out of or related to the enforcement of this Agreement or the relationship between the parties. Included in the fees that Lender may recover from Debtor are the reasonable attorney's fees that Lender incurs, including all fees incurred in the course of representing Lender before, during, or after any lawsuit, arbitration, or other proceeding and those incurred in appeals, whether the issues arise out of contract, tort, bankruptcy, or any other area of law. Included in the costs and expenses which Lender may recover are all court, alternative dispute resolution or other collection costs, and all expenses incidental to perfecting Lender's security interests and liens, preserving the Collateral (including payment of taxes and insurance), records searches, and expenses related to audits, inspection, and copying. All costs and expenses Lender is entitled to recover shall accrue interest at the highest rate set forth in any of the Related Documents.

**GOVERNING LAW.** This Agreement has been delivered in the State of Texas and shall be construed in accordance with the laws of that state.

**HEADINGS AND GENDER.** The headings preceding text in this Agreement are for general convenience in identifying subject matter, but have no limiting impact on the text which follows any particular heading. All words used in this Agreement shall be construed to be of such gender or number as the circumstances require.

**COUNTERPARTS.** This Agreement may be executed by the parties using any number of copies of the Agreement. All executed copies taken together will be treated as a single Agreement.

**TIME IS OF THE ESSENCE.** Time is of the essence in the performance of all obligations of Debtor.

**INTERPRETATION AND CONSTRUCTION.** Except as otherwise defined in this Agreement, all terms herein shall have the meanings provided by the Uniform Commercial Code as it has been adopted in the state of Texas. Any ambiguities between this Agreement and any loan agreement executed by the Debtor in conjunction with this Agreement shall be resolved using the provisions of the loan agreement, to the extent necessary to eliminate any such ambiguity.

**RELEASE OF LIABILITY.** Debtor releases Lender from any liability which might otherwise exist for any act or omission of Lender related to the collection of any debt secured by this Agreement or the disposal of any Collateral, except for the Lender's willful misconduct.

**By signing this Agreement, Debtor acknowledges reading, understanding, and agreeing to all its provisions and receipt of a copy hereof.**

FLEMING GRAIN & CATTLE LLC

OCT 0 3 2025

By: ROBERT S FLEMING
Its: LLC Member Manager

OCT 0 3 2025

By: MARGERY LYNN FLEMING
Its: LLC Member Manager

© TruStage Compliance Solutions 2004-2023

Page 6 of 6

6520c5f8-76c6acc7 - 2023.211.5.5
Commercial - Security Agreement DL4808

## UNLIMITED CONTINUING GUARANTY

**First National Bank of Central Texas**
1835 N Valley Mills Dr
Waco, Texas 76710
Gatesville
(254)772-9330

| GUARANTY DATE | | |
|---|---|---|
| October 2, 2025 | | |

**GUARANTOR INFORMATION**
MARGERY LYNN FLEMING
6084 ARTHUR CEMETERY RD
TROY, TX 76579

Type of Entity: Individual
State of Residence: Texas

**BORROWER INFORMATION**
FLEMING GRAIN & CATTLE LLC
6084 ARTHUR CEMETERY RD
TROY, TX 76579

Type of Business Entity: Limited Liability Company
State of Organization/Formation: Texas

**UNLIMITED CONTINUING GUARANTY.** This Unlimited Continuing Guaranty will be referred to in this document as the "Guaranty."

**LENDER.** "Lender" means First National Bank of Central Texas whose address is 1835 N Valley Mills Dr, Waco, Texas 76710, its successors and assigns.

**BORROWER.** "Borrower" means each party identified above to whom Lender has extended credit and financial accommodations.

**GUARANTOR.** "Guarantor" means the party identified above that is undertaking certain liabilities to the Lender, as specified herein.

**OBLIGATIONS.** "Obligations" means any and all indebtedness, obligations, undertakings, covenants, agreements, and liabilities of the Borrower to the Lender, and all claims of the Lender against the Borrower, now existing or hereafter arising, direct or indirect (including participations or any interest of the Lender in indebtedness of the Borrower to others), acquired outright, conditionally, or as collateral security from another, absolute or contingent, joint or several, secured or unsecured, matured or not matured, monetary or nonmonetary, arising out of contract or tort, liquidated or unliquidated, arising by operation of law or otherwise and all extensions, renewals, refundings, replacements, and modifications of any of the foregoing.

**NOTICE TO GUARANTOR.** Lender has agreed to extend credit and financial accommodations to Borrower pursuant to a promissory note executed on even date herewith (the "Note"), and all agreements, instruments, and documents executed or delivered in connection with the foregoing or otherwise related thereto (together with any amendments, modifications, or restatements thereof, the "Related Documents").

Guarantor is affiliated with Borrower, and as such, shall be benefited directly by the transaction contemplated by the Related Documents, and shall execute this Guaranty in order to induce Lender to enter the transaction.

In consideration of the foregoing premises and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Guarantor hereby guarantees, promises and undertakes, both jointly and severally, as follows:

**UNLIMITED CONTINUING GUARANTY.** Guarantor hereby unconditionally, absolutely, and irrevocably guarantees to Lender the full and prompt payment and performance when due (whether at the maturity date or by required prepayment, acceleration, or otherwise) of all Obligations of the Borrower to the Lender (notwithstanding the fact that from time to time, such Obligations may be reduced and later increased, entirely extinguished and later reincurred, or there may be no indebtedness outstanding), however created, of every kind and description, whether now existing or hereafter arising and whether direct or indirect, due or which may become due, absolute or contingent, primary or secondary, liquidated or unliquidated, whether originated with Lender or owed to others and acquired by Lender by purchase, assignment, or otherwise, and including without limitation all loans, advances, indebtedness, and each and every other obligation arising under the Related Documents, and all agreements, instruments, and documents evidencing, guarantying, securing or otherwise executed in connection with any of the foregoing, together with any amendments, modifications, and restatements thereof, plus Expenses (as that term is defined below).

This Guaranty is an absolute, present, unconditional, and continuing guaranty of payment and performance that shall remain in full force and effect until such time as Lender agrees to terminate this Guaranty in writing, notwithstanding the fact that, from time to time, the Obligations (a) may be extended, increased, or decreased; (b) may be reduced and later increased; or (c) may be satisfied or entirely extinguished with new Obligations being later incurred.

To the extent permitted by law, if any settlement, discharge, payment, grant of security or transfer of property relating to discharging any duty or liability created under or guaranteed by this Guaranty is rescinded or avoided by virtue of any provision of any bankruptcy, insolvency, or other similar law affecting creditors' rights, Lender will be entitled to recover the value or amount of any such settlement, discharge, payment, grant of security or transfer of property from Guarantor as if such settlement, discharge, payment, grant of security or transfer of property had not occurred.

**EXPENSES.** Guarantor hereby agrees, to the extent permitted by law, to pay any and all expenses incurred in enforcing any rights under this Guaranty. Without limiting the foregoing, Guarantor agrees that whenever any attorney is used by the Lender to obtain payment hereunder, to enforce this Guaranty, to adjudicate the rights of the parties hereunder, or to advise the Lender of its rights, the Lender shall be entitled to recover reasonable attorneys' fees, all court costs, and expenses attributable thereto (the "Expenses").

**CONSENT.** The Guarantor consents to all extensions, renewals, and modifications made by the Lender for, or on account of, any indebtedness of Borrower to Lender. Lender may proceed directly against Guarantor in the event of any default by Borrower without resorting to any other persons, to the assets of Borrower, to any collateral security granted by Borrower to Lender, or the liquidation of any collateral security given hereunder to secure this Guaranty. Furthermore, to the extent permitted by law, Guarantor hereby agrees and consents that the Lender may from time to time without notice to Guarantor and without affecting the liability of Guarantor (a) release, impair, sell or otherwise dispose of any security or collateral, (b) release or agree not to sue any guarantor or surety, (c) fail to perfect its security interest in or realize upon any security or collateral, (d) fail to realize upon any of the obligations of Borrower or to proceed against Borrower or any guarantor or surety, (e) renew or extend the time of payment, (f) increase or decrease the rate of interest, (g) accept additional security or collateral, (h) determine the allocation and application of payments and credits and accept partial payments, (i) determine what, if anything, may at any time be done with reference to any security or collateral, and (j) settle or compromise the amount due or owing or claimed to be due or owing from any Borrower, guarantor, or surety, which settlement or compromise shall not affect the undersigned's liability for the full amount of the guaranteed obligations. To the extent permitted by law, Guarantor expressly consents to and waives notice of all of the above.

**REPRESENTATIONS.** Guarantor represents and warrants that Guarantor has established adequate means of obtaining from sources other than Lender, on a continuing basis, financial and other information pertaining to Borrower's financial condition, and the status of Borrower's performance of obligations imposed by the loan documents, and Guarantor agrees to keep adequately informed from such means of any facts, events or circumstances which might in any way affect Guarantor's risks hereunder, and Lender has made no representation to Guarantor as far as any such matters. Guarantor further represents and warrants that (i) neither this Guaranty nor any other Related Document to which Guarantor is a party will violate any provision of law, rule, or regulation, or any order of any court or other governmental agency to which Guarantor is subject, any provision of any agreement or instrument to which the Guarantor is a party or by which the Guarantor or any of the Guarantor's assets are bound, or be in conflict with, result in a breach of, or constitute a default under any such agreement or instrument; and (ii) no action, approval, filing, or registration with any governmental public body or authority, nor the consent of any other person or entity, nor any other legal formality, is required in connection with the entering into, performance, or enforcement of this Guaranty, except such as have already been obtained or taken and with respect to which a copy or other satisfactory evidence has been provided to Lender.

**SUBROGATION.** Until the Obligations are irrevocably paid and discharged in full, Guarantor waives all rights of subrogation, reimbursement, indemnity, contribution, and any other right of recourse against or with respect to Borrower or any other person. Notwithstanding any payment or payments made by the Guarantor hereunder, the Guarantor will not exercise any rights of the Lender against the Borrower, nor shall the Guarantor seek contribution from any other Guarantor until all the Obligations shall have been paid and performed in full. If any amount shall be paid to the Guarantor on account of such subrogation rights at any time when all the Obligations will not have been paid in full, such amount shall be held in trust for the benefit of the Lender and shall forthwith be paid to the Lender to be credited and applied to the Obligations, whether matured or unmatured.

**GENERAL WAIVERS.** Guarantor, to the extent permitted by law, hereby waives (a) notice of acceptance of this Guaranty and all notice of the creation, extension or accrual of any of the Obligations, (b) diligence, presentment, protest, demand for payment, notice of dishonor, notice of intent to accelerate, and notice of acceleration, (c) notice of any other nature whatsoever to the extent permitted by law, (d) any requirement that the Lender take any action whatsoever against the Borrower or any other party or file any claim in the event of the bankruptcy of the Borrower, or (e) failure to protect, preserve, or resort to any collateral, and (f) any and all defenses that could be asserted by Borrower or Guarantor, including, but not limited to, any defenses arising out of failure of consideration, breach of warranty, fraud, payment, statute of frauds, bankruptcy, lack of capacity, statute of limitations, Lender liability, unenforceability of any loan document, accord and satisfaction, or usury.

Guarantor, to the extent permitted by law, further waives and agrees not to assert any and all rights, benefits, and defenses that might otherwise be available under the provisions of the governing law that might operate, contrary to Guarantor's agreements in this Guaranty, to limit Guarantor's liability under, or the enforcement of, this Guaranty, including all defenses of suretyship.

Guarantor hereby expressly waives any and all rights pursuant to Rule 31 of the Texas Rules of Civil Procedure, Section 17.001 and Chapter 43 of the Texas Civil Practice and Remedies Code, and all amendments, recodifications or supplements to any such laws.

**LENDER'S RIGHTS.** Any delay, failure, omission, or lack on the part of the Lender to enforce, assert, or exercise any provision or take any action pursuant to the Related Documents, including any right, power, or remedy conferred on Lender in any of the Related Documents or any action on the part of Lender granting indulgence or extension in any form Guaranty or any Related Documents does not operate as a waiver of the Lender's ability to exercise all of its rights. The Lender may choose to partially exercise rights under this Guaranty and any Related Documents, but that does not prevent the Lender from fully exercising these rights.

**SURVIVAL.** This Guaranty is binding on all heirs, executors, personal representatives, administrators, assigns, and successors of the Guarantor.

**ASSIGNABILITY.** The Lender may, without notice, assign the Obligations, in whole or in part, and each successive assignee of the Obligations so assigned may enforce this Guaranty for its own benefit with respect to the Obligations so assigned. In the event that any person other than the Lender shall become a holder of any of the Obligations, the reference to the Lender shall be construed to refer to each such holder.

**RIGHT OF SET-OFF.** To the extent permitted by law, Guarantor gives Lender the right to set-off any of Guarantor's accounts or property which may be in Lender's possession against any amount owed under this Guaranty. This right of set-off does not extend to any Keogh account, IRA, or similar tax deferred deposit. Further, the Lender shall have available all remedies under applicable state and federal laws, including the garnishment of wages, to the extent permitted by law.

**WAIVER OF JURY TRIAL.** All parties to this Guaranty hereby knowingly and voluntarily waive, to the fullest extent permitted by law, any right to trial by jury of any dispute, whether in contract, tort, or otherwise, arising out of, in connection with, related to, or incidental to the relationship established between them in this Guaranty or any other instrument, document or agreement executed or delivered in connection with this Guaranty or the Related Documents.

**SEVERABILITY.** If a court of competent jurisdiction determines any term or provision of this Guaranty is invalid or prohibited by applicable law, that term or provision will be ineffective, but only to the extent required to make it lawful. Any term or provision that has been determined to be invalid or prohibited will be severed from the rest of this Guaranty without invalidating the remainder of the provisions of this Guaranty.

**GOVERNING LAW.** This Guaranty shall be governed by and construed in accordance with the laws of the State of Texas except to the extent that federal law controls.

**HEADINGS AND GENDER.** The headings in this Guaranty are for convenience in identifying subject matter. The headings have no limiting effect on the text that follows any particular heading. As the context herein requires, the singular shall include the plural and one gender shall include one or both other genders.

**JOINT AND SEVERAL LIABILITY.** The liability of all parties obligated in any manner under this Guaranty shall be joint and several, to the extent of their respective obligations.

**ACKNOWLEDGMENT.** Guarantor hereby acknowledges that: (a) the liabilities undertaken by Guarantor in this Guaranty are complex in nature; and (b) numerous possible defenses to the enforceability of these liabilities may presently exist and/or may arise hereafter. As part of Lender's consideration for entering into this transaction, Lender has specifically bargained for the waiver and relinquishment by Guarantor of all such defenses, and Guarantor has had the opportunity to seek and receive legal advice from skilled legal counsel in the area of financial transactions of the type contemplated herein. Given all of the above, Guarantor does hereby represent and confirm to Lender that Guarantor is fully informed regarding, and that Guarantor does thoroughly understand: (i) the nature of all such possible defenses, and (ii) the circumstances under which such defenses may arise, and (iii) the benefits which such defenses might confer upon Guarantor, and (iv) the legal consequences to Guarantor of waiving such defenses. Guarantor acknowledges that Guarantor makes this Guaranty with the intent that this Guaranty and all of the informed waivers herein shall each and all be fully enforceable by Lender, and that Lender is induced to enter into this transaction in material reliance upon the presumed full enforceability thereof.

By signing this Guaranty, Guarantor acknowledges reading, understanding, and agreeing to all its provisions.

OCT 0 3 2025

MARGERY LYNN FLEMING
Individually

C TruStage Compliance Solutions 2004-2024

a8cbe392-c339fb2c - 2023.211.25.2
Unlimited Continuing Guaranty - DL4011

**UNLIMITED CONTINUING GUARANTY**

**First National Bank of Central Texas**
1835 N Valley Mills Dr
Waco, Texas 76710
Gatesville
(254)772-9330

| GUARANTY DATE | | |
|---|---|---|
| October 2, 2025 | | |

**GUARANTOR INFORMATION**
ROBERT S FLEMING
6084 ARTHUR CEMETERY RD
TROY, TX 76579

**Type of Entity:** Individual
**State of Residence:** Texas

**BORROWER INFORMATION**
FLEMING GRAIN & CATTLE LLC
6084 ARTHUR CEMETERY RD
TROY, TX 76579

**Type of Business Entity:** Limited Liability Company
**State of Organization/Formation:** Texas

**UNLIMITED CONTINUING GUARANTY.** This Unlimited Continuing Guaranty will be referred to in this document as the "Guaranty."

**LENDER.** "Lender" means First National Bank of Central Texas whose address is 1835 N Valley Mills Dr, Waco, Texas 76710, its successors and assigns.

**BORROWER.** "Borrower" means each party identified above to whom Lender has extended credit and financial accommodations.

**GUARANTOR.** "Guarantor" means the party identified above that is undertaking certain liabilities to the Lender, as specified herein.

**OBLIGATIONS.** "Obligations" means any and all indebtedness, obligations, undertakings, covenants, agreements, and liabilities of the Borrower to the Lender, and all claims of the Lender against the Borrower, now existing or hereafter arising, direct or indirect (including participations or any interest of the Lender in indebtedness of the Borrower to others), acquired outright, conditionally, or as collateral security from another, absolute or contingent, joint or several, secured or unsecured, matured or not matured, monetary or nonmonetary, arising out of contract or tort, liquidated or unliquidated, arising by operation of law or otherwise and all extensions, renewals, refundings, replacements, and modifications of any of the foregoing.

**NOTICE TO GUARANTOR.** Lender has agreed to extend credit and financial accommodations to Borrower pursuant to a promissory note executed on even date herewith (the "Note"), and all agreements, instruments, and documents executed or delivered in connection with the foregoing or otherwise related thereto (together with any amendments, modifications, or restatements thereof, the "Related Documents").

Guarantor is affiliated with Borrower, and as such, shall be benefited directly by the transaction contemplated by the Related Documents, and shall execute this Guaranty in order to induce Lender to enter the transaction.

In consideration of the foregoing premises and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Guarantor hereby guarantees, promises and undertakes, both jointly and severally, as follows:

**UNLIMITED CONTINUING GUARANTY.** Guarantor hereby unconditionally, absolutely, and irrevocably guarantees to Lender the full and prompt payment and performance when due (whether at the maturity date or by required prepayment, acceleration, or otherwise) of all Obligations of the Borrower to the Lender (notwithstanding the fact that from time to time, such Obligations may be reduced and later increased, entirely extinguished and later reincurred, or there may be no indebtedness outstanding), however created, of every kind and description, whether now existing or hereafter arising and whether direct or indirect, due or which may become due, absolute or contingent, primary or secondary, liquidated or unliquidated, whether originated with Lender or owed to others and acquired by Lender by purchase, assignment, or otherwise, and including without limitation all loans, advances, indebtedness, and each and every other obligation arising under the Related Documents, and all agreements, instruments, and documents evidencing, guarantying, securing or otherwise executed in connection with any of the foregoing, together with any amendments, modifications, and restatements thereof, plus Expenses (as that term is defined below).

This Guaranty is an absolute, present, unconditional, and continuing guaranty of payment and performance that shall remain in full force and effect until such time as Lender agrees to terminate this Guaranty in writing, notwithstanding the fact that, from time to time, the Obligations (a) may be extended, increased, or decreased; (b) may be reduced and later increased; or (c) may be satisfied or entirely extinguished with new Obligations being later incurred.

To the extent permitted by law, if any settlement, discharge, payment, grant of security or transfer of property relating to discharging any duty or liability created under or guaranteed by this Guaranty is rescinded or avoided by virtue of any provision of any bankruptcy, insolvency, or other similar law affecting creditors' rights, Lender will be entitled to recover the value or amount of any such settlement, discharge, payment, grant of security or transfer of property from Guarantor as if such settlement, discharge, payment, grant of security or transfer of property had not occurred.

**EXPENSES.** Guarantor hereby agrees, to the extent permitted by law, to pay any and all expenses incurred in enforcing any rights under this Guaranty. Without limiting the foregoing, Guarantor agrees that whenever any attorney is used by the Lender to obtain payment hereunder, to enforce this Guaranty, to adjudicate the rights of the parties hereunder, or to advise the Lender of its rights, the Lender shall be entitled to recover reasonable attorneys' fees, all court costs, and expenses attributable thereto (the "Expenses").

**CONSENT.** The Guarantor consents to all extensions, renewals, and modifications made by the Lender for, or on account of, any indebtedness of Borrower to Lender. Lender may proceed directly against Guarantor in the event of any default by Borrower without resorting to any other persons, to the assets of Borrower, to any collateral security granted by Borrower to Lender, or the liquidation of any collateral security given hereunder to secure this Guaranty. Furthermore, to the extent permitted by law, Guarantor hereby agrees and consents that the Lender may from time to time without notice to Guarantor and without affecting the liability of Guarantor (a) release, impair, sell or otherwise dispose of any security or collateral, (b) release or agree not to sue any guarantor or surety, (c) fail to perfect its security interest in or realize upon any security or collateral, (d) fail to realize upon any of the obligations of Borrower or to proceed against Borrower or any guarantor or surety, (e) renew or extend the time of payment, (f) increase or decrease the rate of interest, (g) accept additional security or collateral, (h) determine the allocation and application of payments and credits and accept partial payments, (i) determine what, if anything, may at any time be done with reference to any security or collateral, and (j) settle or compromise the amount due or owing or claimed to be due or owing from any Borrower, guarantor, or surety, which settlement or compromise shall not affect the undersigned's liability for the full amount of the guaranteed obligations. To the extent permitted by law, Guarantor expressly consents to and waives notice of all of the above.

**REPRESENTATIONS.** Guarantor represents and warrants that Guarantor has established adequate means of obtaining from sources other than Lender, on a continuing basis, financial and other information pertaining to Borrower's financial condition, and the status of Borrower's performance of obligations imposed by the loan documents, and Guarantor agrees to keep adequately informed from such means of any facts, events or circumstances which might in any way affect Guarantor's risks hereunder, and Lender has made no representation to Guarantor as far as any such matters. Guarantor further represents and warrants that (i) neither this Guaranty nor any other Related Document to which Guarantor is a party will violate any provision of law, rule, or regulation, or any order of any court or other governmental agency to which Guarantor is subject, any provision of any agreement or instrument to which the Guarantor is a party or by which the Guarantor or any of the Guarantor's assets are bound, or be in conflict with, result in a breach of, or constitute a default under any such agreement or instrument; and (ii) no action, approval, filing, or registration with any governmental public body or authority, nor the consent of any other person or entity, nor any other legal formality, is required in connection with the entering into, performance, or enforcement of this Guaranty, except such as have already been obtained or taken and with respect to which a copy or other satisfactory evidence has been provided to Lender.

**SUBROGATION.** Until the Obligations are irrevocably paid and discharged in full, Guarantor waives all rights of subrogation, reimbursement, indemnity, contribution, and any other right of recourse against or with respect to Borrower or any other person. Notwithstanding any payment or payments made by the Guarantor hereunder, the Guarantor will not exercise any rights of the Lender against the Borrower, nor shall the Guarantor seek contribution from any other Guarantor until all the Obligations shall have been paid and performed in full. If any amount shall be paid to the Guarantor on account of such subrogation rights at any time when all the Obligations will not have been paid in full, such amount shall be held in trust for the benefit of the Lender and shall forthwith be paid to the Lender to be credited and applied to the Obligations, whether matured or unmatured.

**GENERAL WAIVERS.** Guarantor, to the extent permitted by law, hereby waives (a) notice of acceptance of this Guaranty and all notice of the creation, extension or accrual of any of the Obligations, (b) diligence, presentment, protest, demand for payment, notice of dishonor, notice of intent to accelerate, and notice of acceleration, (c) notice of any other nature whatsoever to the extent permitted by law, (d) any requirement that the Lender take any action whatsoever against the Borrower or any other party or file any claim in the event of the bankruptcy of the Borrower, or (e) failure to protect, preserve, or resort to any collateral, and (f) any and all defenses that could be asserted by Borrower or Guarantor, including, but not limited to, any defenses arising out of failure of consideration, breach of warranty, fraud, payment, statute of frauds, bankruptcy, lack of capacity, statute of limitations, Lender liability, unenforceability of any loan document, accord and satisfaction, or usury.

Guarantor, to the extent permitted by law, further waives and agrees not to assert any and all rights, benefits, and defenses that might otherwise be available under the provisions of the governing law that might operate, contrary to Guarantor's agreements in this Guaranty, to limit Guarantor's liability under, or the enforcement of, this Guaranty, including all defenses of suretyship.

Guarantor hereby expressly waives any and all rights pursuant to Rule 31 of the Texas Rules of Civil Procedure, Section 17.001 and Chapter 43 of the Texas Civil Practice and Remedies Code, and all amendments, recodifications or supplements to any such laws.

**LENDER'S RIGHTS.** Any delay, failure, omission, or lack on the part of the Lender to enforce, assert, or exercise any provision or take any action pursuant to the Related Documents, including any right, power, or remedy conferred on Lender in any of the Related Documents or any action on the part of Lender granting indulgence or extension in any form Guaranty or any Related Documents does not operate as a waiver of the Lender's ability to exercise all of its rights. The Lender may choose to partially exercise rights under this Guaranty and any Related Documents, but that does not prevent the Lender from fully exercising these rights.

**SURVIVAL.** This Guaranty is binding on all heirs, executors, personal representatives, administrators, assigns, and successors of the Guarantor.

**ASSIGNABILITY.** The Lender may, without notice, assign the Obligations, in whole or in part, and each successive assignee of the Obligations so assigned may enforce this Guaranty for its own benefit with respect to the Obligations so assigned. In the event that any person other than the Lender shall become a holder of any of the Obligations, the reference to the Lender shall be construed to refer to each such holder.

**RIGHT OF SET-OFF.** To the extent permitted by law, Guarantor gives Lender the right to set-off any of Guarantor's accounts or property which may be in Lender's possession against any amount owed under this Guaranty. This right of set-off does not extend to any Keogh account, IRA, or similar tax deferred deposit. Further, the Lender shall have available all remedies under applicable state and federal laws, including the garnishment of wages, to the extent permitted by law.

**WAIVER OF JURY TRIAL.** All parties to this Guaranty hereby knowingly and voluntarily waive, to the fullest extent permitted by law, any right to trial by jury of any dispute, whether in contract, tort, or otherwise, arising out of, in connection with, related to, or incidental to the relationship established between them in this Guaranty or any other instrument, document or agreement executed or delivered in connection with this Guaranty or the Related Documents.

**SEVERABILITY.** If a court of competent jurisdiction determines any term or provision of this Guaranty is invalid or prohibited by applicable law, that term or provision will be ineffective, but only to the extent required to make it lawful. Any term or provision that has been determined to be invalid or prohibited will be severed from the rest of this Guaranty without invalidating the remainder of the provisions of this Guaranty.

**GOVERNING LAW.** This Guaranty shall be governed by and construed in accordance with the laws of the State of Texas except to the extent that federal law controls.

**HEADINGS AND GENDER.** The headings in this Guaranty are for convenience in identifying subject matter. The headings have no limiting effect on the text that follows any particular heading. As the context herein requires, the singular shall include the plural and one gender shall include one or both other genders.

**JOINT AND SEVERAL LIABILITY.** The liability of all parties obligated in any manner under this Guaranty shall be joint and several, to the extent of their respective obligations.

**ACKNOWLEDGMENT.** Guarantor hereby acknowledges that: (a) the liabilities undertaken by Guarantor in this Guaranty are complex in nature; and (b) numerous possible defenses to the enforceability of these liabilities may presently exist and/or may arise hereafter. As part of Lender's consideration for entering into this transaction, Lender has specifically bargained for the waiver and relinquishment by Guarantor of all such defenses, and Guarantor has had the opportunity to seek and receive legal advice from skilled legal counsel in the area of financial transactions of the type contemplated herein. Given all of the above, Guarantor does hereby represent and confirm to Lender that Guarantor is fully informed regarding, and that Guarantor does thoroughly understand: (i) the nature of all such possible defenses, and (ii) the circumstances under which such defenses may arise, and (iii) the benefits which such defenses might confer upon Guarantor, and (iv) the legal consequences to Guarantor of waiving such defenses. Guarantor acknowledges that Guarantor makes this Guaranty with the intent that this Guaranty and all of the informed waivers herein shall each and all be fully enforceable by Lender, and that Lender is induced to enter into this transaction in material reliance upon the presumed full enforceability thereof.

By signing this Guaranty, Guarantor acknowledges reading, understanding, and agreeing to all its provisions.

OCT 0 3 2025

**ROBERT S FLEMING**
Individually

© TruStage Compliance Solutions 2004-2024

a8cbc392-987908ca - 2023.211.25.2
Unlimited Continuing Guaranty - DL4011

UCC FINANCING STATEMENT

FOLLOW INSTRUCTIONS

A. NAME & PHONE OF CONTACT AT SUBMITTER (optional)
Sloan Kuehl 254-772-9330

B. E-MAIL CONTACT AT SUBMITTER (optional)

C. SEND ACKNOWLEDGMENT TO: (Name and Address)
Sloan Kuehl
PO Box 2662
Waco, TX 76702
USA

SEE BELOW FOR SECURED PARTY CONTACT INFORMATION

FILING NUMBER: 23-0029149565
FILING DATE: 07/05/2023     10:06 AM
DOCUMENT NUMBER: 1263607070003
FILED: Texas Secretary of State
IMAGE GENERATED ELECTRONICALLY FOR WEB FILING
THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S NAME - Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor Information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| FLEMING GRAIN & CATTLE, LLC | | | | |
| OR 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 6084 ARTHUR CEMETERY ROAD | TROY | TX | 76579 | USA |

2. DEBTOR'S NAME - Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| OR 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

3. SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY) - Provide only one Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| FIRST NATIONAL BANK OF CENTRAL TEXAS | | | | |
| OR 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| P O BOX 2662 | Waco | TX | 76702 | USA |

4. COLLATERAL: This financing statement covers the following collateral:
ALL OF DEBTOR'S LIVESTOCK NOW OWNED OR HEREAFTER ACQUIRED, INCLUDING BUT NOT LIMITED TO ALL PRODUCTS AND PROCEEDS THEREOF AND WHEREVER LOCATED.

ALL OF DEBTOR'S EQUIPMENT NOW OWNED OR HEREAFTER ACQUIRED, TOGETHER WITH ALL SUBSTITUTES AND REPLACEMENTS THEREOF, ALL ACCESSIONS AND ATTACHMENTS THERETO, NOW, OR HEREAFTER ADDED TO OR USED IN CONNECTION WITH SUCH EQUIPMENT, ALL PROCEEDS THEREOF AND WHEREVER LOCATED.

ALL OF DEBTOR'S FARM PRODUCTS INCLUDING, BUT NOT LIMITED TO ALL CROPS, ANNUAL OR PERENNIAL, AND ALL PRODUCTS OF THE CROPS; AND ALL FEED, SEED, FERTILIZER, MEDICINES, AND OTHER SUPPLIES USED OR PRODUCED IN FARMING OPERATIONS.

5. Check only if applicable and check only one box Collateral is ☐ held in a Trust (see UCC1Ad item 17 and Instructions) ☐ being administered by a Decedent's Personal Representative
6a. Check only if applicable and check only one box:          6b. Check only if applicable and check only one box
☐ Public-Finance Transaction ☐ Manufactured-Home Transaction ☐ A Debtor is a Transmitting Utility    ☐ Agricultural Lien ☐ Non-UCC Filing

7. ALTERNATIVE DESIGNATION (if applicable): ☐ Lessee/Lessor ☐ Consignee/Consignor ☐ Seller/Buyer ☐ Bailee/Bailor ☐ Licensee/Licensor
8. OPTIONAL FILER REFERENCE DATA:

FILING OFFICE COPY