**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF NEBRASKA**

In re:

HANSEN-MUELLER CO.,[1]

        Debtor.

Case No. 25-81226-TLS

Chapter 11

**JOINDER OF THE OFFICIAL COMMITTEE OF**
**UNSECURED CREDITORS TO DEBTOR'S OMNIBUS OBJECTION**
**TO CERTAIN CLAIMS FILED PURSUANT TO 11 U.S.C. § 557 PROCEDURES**

The Official Committee of Unsecured Creditors (the "Committee") appointed in the Chapter 11 case of the above-captioned debtor and debtor-in-possession (the "Debtor"), hereby joins the (i) *Debtor's Omnibus Objection to Certain Claims Filed Pursuant to 11 U.S.C. § 557 Procedures* [Docket No. 430] (the "Objection"), and (ii) *Debtor's Brief in Support of its Omnibus Objection to Certain Claims filed Pursuant to 11 U.S.C. § 557 Procedures* [Docket No. 441] (the "Legal Brief"),[2] pursuant to this Court's *Stipulation and Agreed Order Establishing Procedures for Determination of Rights, Ownership Interests, Liens, Security Interests, and all other Interests in and to Grain and Proceeds of Grain Pursuant to 11 U.S.C. § 557 and for Segregation and Protection of Proceeds* [Docket No. 262] (the "557 Procedures"), and respectfully states as follows:

---

[1] The Debtor in this chapter 11 case, along with the last four digits of Debtor's federal tax identification number, is: Hansen-Mueller Co. (9385). Debtor's location is 13321 California Street, Suite 100, Omaha, NE 68154.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Objection and Legal Brief, as applicable.

<u>**PRELIMINARY STATEMENT**</u>

1. The Committee joins the Debtor and submits that all of the Objected Claims should be disallowed for the reasons set forth in the Objection (as supplemented by the Legal Brief) and the Exhibits attached thereto.[3] Allowance of the Objected Claims would not only run afoul of the 557 Procedures and the Bankruptcy Code, but would also detrimentally impact the Debtor's estate as Grain Claimants with meritless claims would receive recoveries to which they are otherwise not entitled. Strict enforcement of the 557 Procedures, Bankruptcy Code, and applicable state law is also of paramount importance here given that the Grain Claimants are seeking, among other things, secured and superpriority claims with priority over all other creditors. The Objection must be sustained in its entirety, therefore, such that only those claimants who have unquestionably demonstrated sufficient factual and legal grounds for entitlement to the relief sought in their respective Grain Claims will be entitled to recoveries.

2. The future of the Debtor's Chapter 11 case largely hinges upon the proper application of these 557 Procedures to protect the Debtor's estate. Unwarranted allowance of meritless Grain Claims not only diminishes the Debtor's limited estate resources, but could also jeopardize the Debtor's ability to confirm a Chapter 11 plan. As such, the Committee further joins in the Objection to ensure fairness, parity, and legal uniformity among the various creditor constituencies, including those unsecured creditors that the Committee represents in these proceedings.

---

[3] The Committee expressly reserves the right to submit further briefings in support of the Objection and Legal Brief, including responding to any Grain Claimants' submissions regarding the Objected Claims. The omission of any reply or specific reference to any Objected Claim, or omission of any arguments set forth in the Legal Brief, shall not constitute a waiver by the Committee of its right to submit further briefing in connection with such matters, nor shall such omission(s) be deemed an admission as to the allowance or sufficiency of any Objected Claim.

## JOINDER

### A. The Court Should Apply Nebraska Law when Analyzing any Purported Security Interests in the Debtor's Grain

3.        Without limiting those arguments already set forth in the Debtor's Objection and related Legal Brief, the Committee further highlights that numerous Grain Claimants appear to have improperly relied upon state laws other than Nebraska, including Texas, in seeking secured or even "superpriority" status for their Grain Claims.  This threshold choice-of-law issue is not only imperative in evaluating each individual Grain Claim and its purported secured status, but is also foundational to the 557 claims determination process itself.  Clarity is necessary here so that the parties can properly understand what laws to apply, and how such application impacts each Grain Claim *before* they undertake significant additional efforts to evaluate the underlying factual merits of each Grain Claim.  Establishing these legal parameters first will provide all parties necessary direction and will potentially conserve significant estate resources by eliminating claims that have been improperly asserted as secured claims where they were not entitled to such treatment.

4.        The Committee thus joins the Debtor and submits that the Court should apply Nebraska law when considering the secured or "superpriority" status of any Grain Claim.  As an initial matter, Nebraska law appears to expressly govern many if not all of the contracts as between the Debtor and the various Grain Claimants.  *See Legal Brief*, Section XII at pp. 34-35.  Where an express choice-of-law provision exists in the applicable grain contract applying Nebraska law, the Court should uphold and enforce this provision.  *See DCS Sanitation Mgmt., Inc. v. Castillo*, 435 F.3d 892, 895 (8th Cir. 2006)("[I]n deciding choice-of-law questions, Nebraska follows the Restatement (Second) of Conflict of Laws (Restatement).  Nebraska courts generally give effect to the parties' choice of law"); *see also Nebraska Furniture Mart, Inc. v. Guardsman US LLC*,

2022 WL 2905842, at *3 (D. Neb. July 22, 2022) ("Nebraska courts honor choice-of-law provisions in contracts"), *citing DCS Sanitation Mgmt., Inc. v. Castillo*, 435 F.3d 892, 895 (8th Cir. 2006) ("We have recognized that persons residing in different states may select the law of either state to govern their contract and that the parties' choice of law will govern").

5.      Even if the Court is inclined to look beyond the express choice-of-law provisions set forth in the relevant grain contracts, Nebraska law still applies.  First, the Court should utilize the choice-of-law rules of the forum state – here, Nebraska – to decide what state law to apply. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941) (A federal court applies the choice-of-law rules of the forum state); *see also Whitney v. Guys, Inc.*, 700 F.3d 1118 (8th Cir. 2012) ("In determining which state's law applies, a court generally employs the forum state's choice-of-law rules").

6.      When applying Nebraska's choice-of-law rules, <u>Nebraska law</u> – specifically, the Uniform Commercial Code ("<u>UCC</u>") as adopted in Nebraska – applies to determine the secured status of any Grain Claim.  Article 9 of the UCC provides its own choice-of-law rules that should be applied in the context of secured transactions, and courts have recognized that § 9-301 of the UCC provides a statutory choice-of-law directive that must be applied as written.  *See, e.g.*, *Shapiro v. Newtek Small Bus. Fin. (In re Glob. One Media)*, 667 B.R. 878, 883–84 (B.A.P. 9th

Cir. 2025); *see also In re SemCrude, L.P.*, 407 B.R. 82, 105 (Bankr. D. Del. 2009).[4] Specifically, Nebraska law states in relevant part that "except as otherwise provided in this section, while a debtor is *located* in a jurisdiction, the local law of that jurisdiction governs perfection, the effect of perfection or non-perfection, and the priority of a security interest in collateral." Neb. Rev. Stat. § 9-301(1) (emphasis added). A registered organization that is organized under the law of a state is "located" in that state. Neb. Rev. Stat. § 9-307(e).

7.     Here, the Debtor is incorporated and organized in the state of Nebraska, and thus the Debtor is "located" there as well. *See, e.g.*, *Platte Valley Bank v. Tetra Financial Group, LLC*, 682 F.3d 1078, 1085-87 (8th Cir. 2012) ("Under Neb. U.C.C. § 9–301(2), 'While collateral is located in a jurisdiction, the local law of that jurisdiction governs perfection, the effect of perfection or non-perfection, and the priority of a possessory security interest in that collateral.'"); *Platte Valley Bank v. Tetra Fin. Grp., LLC*, 682 F.3d 1078, 1088 at Fn. 4 (8th Cir. 2012); *In re Qualia Clinical Servs., Inc.*, 652 F.3d 933, 942, FN 4 (8th Cir. 2011) ("…[A] . a security interest is perfected by filing a financing statement in the debtor's location, which is where the debtor is organized."). Accordingly, when determining whether Grain Claimants have properly perfected their Grain Claims, the Court should apply Nebraska law.

---

[4] Revised Article 9 of the UCC was adopted by all states in 2001. The revision worked a fundamental change by shifting the focus for filing purposes from "location of the goods" as the controlling factor to "*location of the debtor*." 8 QUINN'S UCC COMMENTARY & LAW DIGEST § 9-307[A][3] [REV] (Rev. 2d ed.) (emphasis added). In their official comment to UCC § 9-301, the drafters gave two reasons behind their shift towards the "location of the debtor." First, they noted that focusing on the debtor's location would reduce the frequency of cases in which governing law changes after a UCC-1 is properly filed. *See* UCC § 9-301 cmt. 4 ("Presumably, debtors change their own location less frequently than they change the location of their collateral."). Second, they noted the efficiency gained by eliminating difficult priority issues, removing the need to distinguish between "mobile" and "ordinary" goods, and reducing the number of filing offices when collateral is located in several jurisdictions. *Id.* Ignoring Article 9's choice of law rules would not only compromise this system and unravel a national, notice-filing system, but also would ignore the enactment of UCC 9-301 by each state legislature.

8.      Further, the Committee joins the Debtor in its conclusion that the grain at issue does not constitute "farm products", and therefore section 9-302 of the Nebraska UCC does not apply. *See* Neb. Rev. Stat. § 9-302 (where goods at issue are "farm products", the law of the location of such goods governs). "Farm products" is defined as "goods…with respect to which the debtor is engaged in a farming operation" and which constitute various types of crops, livestock and other farming products. Neb. Rev. Stat. § 9-102(34). "Farming Operation" is defined as "raising, cultivating, propagating, fattening, grazing, or any other farming, livestock, or aquacultural operation." Neb. Rev. Stat. § 9-102(35). Here, the Debtor is clearly not a "farming operation" as it does not engage in raising, cultivating, propagating grain, but instead "is a nationwide merchandiser and processor of grain" and "is one of the largest traders" of grain such as oats. *Declaration of Michael Compton, Chief Restructuring Officer of the Debtor Hansen-Mueller Co., in Support of Chapter 11 Petition and First-Day Motions* [Docket No. 3] at ¶¶ 3, 9. Accordingly, in the hands of the Debtor, the grain is properly classified as inventory. *United States v. Continental Grain Co.*, 691 F.Supp. 1193, 1199 (W.D.Wis. 1988) ("Once the products leave the farmer and come into the possession of a person not engaged in farming operations, they are characterized as 'inventory' rather than 'farm products'"). Courts have concluded that goods in the hands of similar businesses – those not engaged in farming operations – constitute mere inventory and not farm products, as the goods are being held for immediate and/or ultimate sale. *See, e.g., First State Bank v. Producers Livestock Marketing Asso. Non-Stock Cooperative*, 200 Neb. 12, 16 (1978) ("[T]he principal test to determine whether goods are inventory is whether they are held for immediate or ultimate sale. In borderline cases the principal use to which the property is put should be considered determinative."); *Production Credit Assn. of Marshall v. Dakota Livestock Co.*, 1986 U.S.Dist.LEXIS 17377 at *8 (D.Minn. Nov. 21, 1986) ("[T]he court concludes

that the cattle became inventory once the Kjergaards moved them to Dakota for sale on commission."); *United States v. Continental Grain Co.*, 691 F.Supp. at 1199 ("In the instant case the grain defendant bought was in possession of Messner Grain, a grain dealer. Because Messner Grain held the wheat for sale and did not engage in farming operations, the wheat is properly defined as 'inventory'"). Here, the grain at issue is mere inventory and not farm products, and therefore the default "debtor-location" rule governs.

### B. Nebraska Law Requires UCC Financing Statements in the State Where the Debtor is Located

9.      Applying Nebraska law, Grain Claimants were required to file their UCC financing statements in Nebraska, rather than any other state, such as where the Debtor's grain may have been located. Failure to properly or timely file a financing statement,[5] or failure to properly file in Nebraska warrants reclassification of such claims to general unsecured status.

10.      The Debtor is "organized" in Nebraska and maintains its principal place of business in Nebraska, and therefore is "located" in Nebraska such that Nebraska law applies. *See* Neb. Rev. Stat. § 9-307(e); *see also Platte Valley Bank v. Tetra Financial Group, LLC*, 682 F.3d 1078. Given that Nebraska law applies, Grain Claimants were required to file their U.C.C. financing statements in Nebraska in order to properly perfect their security interest in their Grain Claims. *See* Neb. Rev. Stat. § 9-301(1) (law of location governs); Neb. Rev. Stat. § 9-501(a)(2) ("if the local law of this state governs perfection of a security interest…the office in which to file a financing statement to perfect the security interest…is…the office of the Secretary of State"). Courts applying the Nebraska UCC are in accord. *See, e.g.*, *Matter of Ellingson Motors, Inc.*, 139 B.R. 919, 923

---

[5] As stated in the Debtor's Objection, the UCC is clear that a financing statement is required in order to perfect a security interest in goods or grain inventory. *See* Neb. Rev. Stat. §§ 9-308; 9-310(a); 9-501. To the extent any Grain Claimants failed to file a UCC financing statement, that claim is clearly subject to reclassification as an unsecured claim, at a minimum.

(Bankr. D. Neb. 1991) ("[F]ailure to file financing statement or continuation statement in proper location is fatal to perfection").

11. To the extent Grain Claimants failed to make the proper (and timely) UCC filings in Nebraska, such Grain Claimants have no more than unsecured claims as against the Debtor, at best, and the Court is well within its authority to deny these purported secured claims as a matter of law.

**C. Even Under Texas Law, UCC Financing Statements Should be Filed in Nebraska**

12. Various Grain Claimants have asserted claims under Texas law in seeking secured or other priority status. As set forth above, Nebraska law – not Texas law – governs the perfection of security interests in Grain Claims emanating from Texas. Even applying Texas law, however, the result is the same; i.e., Texas law required Grain Claimants to file their UCC financing statements in <u>Nebraska</u>, not in Texas, in order to perfect their security interests.

13. Like Nebraska, Texas law applies the UCC as adopted in Texas and provides that the law where the debtor is "located" governs the creation of a security interest and related perfection. *See* Tex. Prop. Code § 70.404(a) (applying Article 9 of U.C.C. as adopted in Texas to security interests "including applicable filing and perfection requirements"); Tex. Bus. & Com. Code § 9-301(1) ("[W]hile a debtor is located in a jurisdiction, *the local law of that jurisdiction governs perfection*, the effect of perfection or non-perfection, and the priority of a security interest in collateral.") (emphasis added).

14. Texas law further provides, like Nebraska, that a debtor is "located" in the state where it maintains its chief executive office, and more specifically, where it was organized, both of which are in Nebraska in this case. *See* Tex. Bus. & Com. Code § 9-307(b)(3), (e). Thus, since Texas law provides that the state of "location" governs, and because the Debtor is "located" in

Nebraska, Texas law leads back to Nebraska law as the exclusive jurisdiction governing perfection of any security interest. As set forth above, Nebraska law explicitly requires the filing of a financing statement in the state of location. Neb. Rev. Stat. §§ 9-301(1), 9-307(e), 9-501; *see also LOL Finance Co. v. Paul Johnson & Sons Cattle Co.*, Inc., 758 F. Supp. 2d 871, 893 (D. Neb. 2010) (South Dakota law governed perfection of the secured party's interest because debtor was "located" in South Dakota).

15. To the extent any Grain Claimants assert that the location of the goods governs, such arguments are misplaced even under Texas law. As previously stated, it is clear that the goods at issue are merely inventory rather than farm products. Insofar as the grain is properly considered inventory, the law of the grain's location is only relevant in determining the *effect* of perfection or non-perfection (*see* Tex. Bus. & Com. Code § 9-301(3)(C)), while the law of the debtor's location remains the determinative factor when analyzing where to properly perfect a security interest. *See, e.g.*, *In re Diabetes America, Inc.*, 2012 WL 6694074, at *5 (Bankr. S.D. Tex. Dec. 21, 2012) (Explaining that § 9-301(3)(C) governs only the *effect* of perfection or non-perfection and priority, not the act of perfection itself); *see also In re Global One Media, Inc.*, 667 B.R. 878, 883 (B.A.P. 9th Cir. 2025) (Although § 9-301(3)(C) provides that the law of the collateral's location governs only the effect of perfection or non-perfection and priority, it does not govern perfection itself; perfection remains governed by § 9-301(1)'s debtor-location rule). The result is in the same under Nebraska law. *See* Neb. Rev. Stat. Ann. UCC §§ 9-301(1), 9-307(e); *see also LOL Finance Co. v. Paul Johnson & Sons Cattle Co.*, Inc., 758 F. Supp. 2d 871 at 893 (While collateral located in Nebraska, South Dakota law of debtor's location governed perfection).

16. Even applying Texas law, it is clear that a debtor's location – here, Nebraska – governs how and where to create and perfect a security interest in a debtor's assets. As such, in order to be considered secured claims under the 557 Procedures, Grain Claimants were unquestionably required to file their UCC financing statements in Nebraska, and the failure to do so is fatal to asserting any secured claims.

## CONCLUSION

17. The Committee joins the Debtor in its Objection and submits that the Objected Claims should either be disallowed in their entirety or reclassified to reflect their proper priority statuses, as applicable. Proper administration of the Grain Claims under these § 557 Procedures, including application of the correct underlying state laws, serves to benefit all creditor constituencies by ensuring that the Debtor's limited resources are distributed only to those Grain Claimants that are rightly entitled to recoveries.

[ *Remainder of Page Intentionally Left Blank* ]

WHEREFORE, for the foregoing reasons, the Committee respectfully requests that the Court (i) sustain the Debtor's Objection; and (ii) grant such other relief as the Court deems necessary and appropriate.

Dated: March 10, 2026

<div style="margin-left:40%;">

**THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS**

**LALLY LEGAL GROUP, LLC**
By: /s/ Elizabeth M. Lally
Elizabeth M. Lally (#26428)
12020 Shamrock Plaza, Suite 200
Omaha, NE 68154
Telephone: (712) 899-6768
Email: elally@lally-legal.com

*Local Counsel the Official Committee of Unsecured Creditors*

-and-

**THOMPSON COBURN LLP**
By: /s/ Mark S. Indelicato
Mark S. Indelicato (pro hac vice)
Mark T. Power (pro hac vice)
Joseph Orbach (pro hac vice)
Jacob T. Schwartz (pro hac vice)
488 Madison Avenue
New York, New York 10022
Telephone: (212) 478-7200
Email: mindelicato@thompsoncoburn.com
Email: mpower@thompsoncoburn.com
Email: jorbach@thompsoncoburn.com
Email: jtschwartz@thompsoncoburn.com

*Lead Counsel the Official Committee of Unsecured Creditors*

</div>