UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| In re: | Case No. 25-81226 |
| HANSEN-MUELLER CO.,[1] | Chapter 11 |
| Debtor. | |

**DEBTOR'S MOTION FOR ENTRY OF AN ORDER EXTENDING THE DEBTOR'S EXCLUSIVE PERIODS TO FILE A CHAPTER 11 PLAN AND SOLICIT ACCEPTANCES THEREOF PURSUANT TO SECTION 1121 OF THE BANKRUPTCY CODE**

Hansen-Mueller Co., as debtor and debtor-in-possession (the "Debtor") in the above-referenced chapter 11 case, by and through undersigned counsel, hereby requests that this Court enter an order extending the exclusivity period for the Debtor to file a Chapter 11 Plan by 120 days to allow for resolution of the claims asserted under 11 U.S.C. § 557 (the "557 Claims") to formulate a confirmable plan.

**INTRODUCTION**

1.     The Debtor commenced this chapter 11 case on November 17, 2025 (the "Petition Date"), and has since worked diligently to stabilize its operations, conduct a value-maximizing sale of its assets, and administer its estate for the benefit of all stakeholders. Since the Petition

---

[1] The Debtor in this chapter 11 case, along with the last four digits of Debtor's federal tax identification number, is: Hansen-Mueller Co. (9385). Debtor's location is 13321 California Street, Suite 100, Omaha, NE 68154.

1

Date, the Debtor has achieved numerous critical milestones, including the successful completion of asset sales that have generated significant proceeds for the estate.

2.      However, a fundamental issue remains unresolved that prevents the Debtor from meaningfully proposing a confirmable chapter 11 plan: the validity and amount of the 557 Claims. These claims, filed by numerous grain producers and other parties asserting interests in grain and grain proceeds, represent a substantial and contested portion of the estate's potential liabilities. The Court has established expedited procedures under Section 557 to determine the rights and interests in grain and grain proceeds, and the Debtor has filed an Omnibus Objection to numerous 557 Claims. A hearing on these objections is scheduled, but the final adjudication of these claims remains pending.

3.      Until the Court determines the validity, priority, and amount of the 557 Claims, the Debtor cannot in good faith propose a chapter 11 plan that meaningfully addresses distributions to creditors. Any plan proposed before such determination would be based on speculation regarding the claims pool, which would undermine the plan's feasibility and confirmability. Accordingly, the Debtor respectfully requests that the Court extend the Debtor's exclusive periods to file and solicit a chapter 11 plan by 120 days to allow for resolution of the 557 Claims and the formulation of a confirmable plan.

**RELIEF REQUESTED**

5.      By this Motion, the Debtor seeks the extension of (a) the period during which the Debtor has the exclusive right to file a chapter 11 plan (the "Filing Exclusivity Period") through and including July 15, 2026, and (b) the deadline under which the Debtor has the exclusive right to solicit acceptances of a plan filed during the Filing Exclusivity Period (the "Solicitation Exclusivity Period," and, with the Filing Exclusivity Period, collectively, the "Exclusivity

Periods") through and including September 13, 2026. Additionally, the Debtor respectfully requests leave to submit a proposed order for the Court's consideration to grant the relief requested herein.

## JURISDICTION AND VENUE

6.      The United States Bankruptcy Court for the District of Nebraska (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and Nebraska General Rule 1.5 of the United States District Court for the District of Nebraska. The Debtor confirms its consent, pursuant to rule 7008 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. The bases for the relief requested herein are section 1121 of the Bankruptcy Code, Bankruptcy Rule 3007(d), and Local Rule 9013-1 of the Nebraska Rules of Bankruptcy Procedure (the "Local Rules").

## BACKGROUND

7.      The Debtor filed its voluntary petition under chapter 11 of the United States Bankruptcy Code the Petition Date.

8.      Since the Petition Date, the Debtor has remained in possession of its assets and has operated its business and managed its financial affairs as a debtor-in-possession pursuant to 11 U.S.C. §§ 1107 and 1108.

9.      A detailed description of the Debtor and its business, the facts and circumstances leading up to the filing of this chapter 11 case, and the facts supporting this Motion are set forth in greater detail in the *Declaration of Michael Compton, Chief Restructuring Officer of Debtor*

3

*Hansen-Mueller Co., in Support of Chapter 11 Petition and First Day Motions* (the "First Day

Declaration") (Doc. 3).

10. Since the Petition Date, the Debtor has made significant progress in this chapter 11

case, including, but not limited to, stabilizing its business operations and conducting a Court-

supervised sale process pursuant to Section 363 of the Bankruptcy Code that yielded

approximately $24,172,850 in proceeds.

11. The central issue that prevents the Debtor from proposing a confirmable chapter 11

plan is the pendency of the 557 Claims. These claims, filed by grain producers from Texas, Iowa,

Minnesota, North Dakota, Wisconsin, and other states, assert various interests in grain and grain

proceeds, including claims based on storage, security interests, reclamation, and state agricultural

liens.

12. On January 9, 2026, the Court entered a Stipulation and Agreed Order Establishing

Procedures for Determination of Rights, Ownership Interests, Liens and Security Interests in and

to Grain and Grain Proceeds (the "557 Procedures Order"). Pursuant to the 557 Procedures Order,

a deadline of February 2, 2026, was established for filing Grain Claim Forms.

13. On March 3, 2026, the Debtor filed an Omnibus Objection to Grain Claims,

objecting to numerous claims on various grounds including insufficient documentation, claims

based on grain sold rather than stored, unperfected security interests, untimely filings, and claims

that do not meet the legal definition of "grain" under Section 557.

14. The 557 Claims present complex legal and factual issues that must be resolved

before the Debtor can meaningfully assess the claims pool and propose a distribution scheme under

a chapter 11 plan.

15. The Court must determine the applicable law and the validity of these asserted liens as the aggregate amount of the 557 Claims is substantial and will materially affect the distribution waterfall under any chapter 11 plan. Until the Court adjudicates these claims, the Debtor cannot determine with any reasonable certainty the size and priority of the claims pool, which is essential to formulating a feasible and confirmable plan.

## LEGAL STANDARD FOR EXTENDING EXCLUSIVITY

16. Section 1121(b) of the Bankruptcy Code establishes an initial period of 120 days after the commencement of a chapter 11 case during which only a debtor may file a plan and an additional 60-day period during which only the debtor may solicit votes for a plan. The foregoing periods may be extended for cause upon "request of a party in interest made within the [foregoing 120 day period] and after notice and a hearing[.]" *See* 11 U.S.C. § 1121(d).

17. Although the Bankruptcy Code does not define "cause," under section 1121(d)(1) of the Bankruptcy Code, bankruptcy courts have discretion to extend exclusivity to promote the orderly, consensual, and successful reorganization of a debtor's affairs. *See In re Tony Downs Foods Co.*, 34 B.R. 405, 406 (Bankr. D. Minn. 1983) (noting that the legislative intent of section 1121 was for the bankruptcy court to have discretion to determine whether "cause" has been shown, which should be viewed in the context of the Bankruptcy Code's goal of fostering reorganizations); *In re Hoffinger Indus., Inc.*, 292 B.R. 639, 643 (B.A.P. 8th Cir. 2003) (noting that an extension of exclusivity is typically granted where there is "some promise of probable success [for reorganization]").

18. Courts often use the following factors in determining whether "cause" exists to extend a debtor's exclusive plan filing period: (a) the size and complexity of the case; (b) the need for sufficient time to permit the debtor to negotiate a plan of reorganization and prepare adequate

information for the creditors' committee; (c) whether good faith progress is being made toward reorganization; (d) whether an unresolved contingency exists; (e) the fact that the debtor is paying their bills as they become due; (f) the amount of time which has elapsed in the case due to any previous extensions of exclusivity; (g) whether the debtor is seeking to extend exclusivity to pressure creditors to accede to the debtor's reorganization demands; (h) whether the debtor has resolved fundamental reorganization matters essential to their survival; and/or (i)  whether there has been a gross mismanagement of the debtor. *See, e.g., In re Acceptance Ins. Companies, Inc.*, No. BK05-80059-TJM, 2008 WL 3992799, at *2 (Bankr. D. Neb. Aug. 20, 2008) (listing the nine factors relevant to whether "cause" exists to extend exclusivity periods); *see also Hoffinger Indus., Inc.*, 292 B.R. at 643-44 (listing the nine factors relevant to whether "cause" exists to extend exclusivity periods); *Matter of Fansteel, Inc.*, No. 16-01823-ALS11, 2017 WL 782865, at *2-3 (Bankr. S.D. Iowa Feb. 28, 2017) (affirming that nine factors are used by courts in the Eighth Circuit to determine whether "cause" under section 1121(d)(1) has been shown). Not all factors are relevant to every case, and the existence of even one of the above-listed factors may be sufficient to extend a debtor's exclusivity periods. *See, e.g., In re Standard Mill Ltd. P'ship*, No. BKY 4-96-2656, 1996 WL 521190, at *1 (Bankr. D. Minn. Sept. 12, 1996); *In re Wisconsin Barge Line, Inc.*, 78 B.R. 946, 948 (Bankr. E.D. Mo. 1987).

19. Moreover, courts routinely grant a debtor's first request for an extension of the debtor's exclusive period to file a chapter 11 plan. *See In re Apex Pharm., Inc.*, 203 B.R. 432, 441 (N.D. Ind. 1996) ("It is true that during the initial 120-day period in which debtors have an exclusive right to file a plan of reorganization . . . the bankruptcy courts apply a lesser standard in determining whether the burden of showing 'a reasonable possibility of a successful reorganization

6

within a reasonable time' has been satisfied."); *see also In re Borders Grp., Inc.*, 460 B.R. 818, 825 (Bankr. S.D.N.Y. 2011) (same).

**ARGUMENT: CAUSE EXISTS TO EXTEND EXCLUSIVITY**

20.     Currently, the Filing Exclusivity Period will expire on March 17, 2026, and the Solicitation Exclusivity Period will expire on May 16, 2026. The Debtor believes it is prudent to seek an extension of the Exclusivity Periods in order to preserve its exclusive ability to file and solicit a chapter 11 plan and that cause exists for such extension.

21.     There is ample precedent for an initial extension of exclusivity of at least 120 days, as the Debtor seeks here. *See, e.g., Hoffinger Indus., Inc.*, 292 B.R. at 644 (granting a five-month extension prior to the exclusivity period expiring); *Wisconsin Barge Line, Inc.*, 78 B.R. at 948 (granting exclusivity extension in large and complex case).

*I.     The Unresolved Section 557 Claims Constitute a Significant Unresolved Contingency*

22.     The most compelling basis for extending the Exclusivity Periods is the existence of a significant unresolved contingency-the pending adjudication of the 557 Claims. The Eighth Circuit has recognized that an "unresolved contingency" is a factor supporting an extension of exclusivity. *See Hoffinger Indus., Inc.*, 292 B.R. at 643-44.

23.     The 557 Claims represent a substantial and contested portion of the estate's potential liabilities. The Debtor has filed an Omnibus Objection to numerous 557 Claims, raising multiple legal and factual issues that require Court determination. These issues include questions of applicable law (Nebraska versus other states' agricultural lien statutes), the definition of "producer" under Section 557, the distinction between sold and stored grain, the perfection of security interests, and the timeliness of claims.

24.     Until the Court resolves these issues, the Debtor cannot meaningfully assess: (a) the total amount of allowed claims against the estate; (b) the priority of claims (*i.e.*, whether claimants hold secured, priority, or general unsecured claims); (c) the distribution waterfall under a chapter 11 plan; and (d) the feasibility of any proposed plan.

25.     Courts have consistently recognized that the pendency of unresolved claims disputes justifies extending exclusivity. *See, e.g., In re Express Grain Terminals, LLC*, No. 21-11832-SDM, 2022 WL 245421 (Bankr. N.D. Miss. Jan. 25, 2022) (recognizing the need for expedited procedures under Section 557 to determine interests in grain and grain proceeds). The same logic applies here: the Debtor should not be forced to propose a chapter 11 plan based on speculation about the claims pool. Rather, the Debtor should be permitted to await the Court's determination of the 557 Claims before formulating a plan that can be confirmed and consummated.

## II.     *This Chapter 11 Case is Large and Complex*

26.     This chapter 11 case involves substantial complexity arising from the Debtor's nationwide grain merchandising and processing operations. At the height of its operations, the Debtor operated in 44 states and 24 countries, with facilities in Nebraska, Iowa, Missouri, Kansas, Minnesota, North Dakota, Louisiana, Wisconsin, Ohio, Texas, and Alabama. The Debtor operated nine elevators, four port terminals, and an oats processing facility.

27.     The complexity of the 557 Claims alone demonstrates the size and complexity of this case. The Court has established expedited procedures under Section 557, and the Debtor has filed an Omnibus Objection raising multiple categories of objections to the 557 Claims, including objections based on insufficient documentation, claims based on sold grain rather than stored grain, unperfected security interests, untimely reclamation demands, late-filed claims, claims improperly

8

applying non-Nebraska law, claims that do not constitute "grain" under Section 557(b)(1), and claims asserting improper priority status under Section 507(a)(6).

28.    The size and complexity of this chapter 11 case thus weigh in favor of extending the Exclusivity Periods.

*III.    The Debtor Has Made Substantial Progress in These Cases*

29.    As set forth above, the Debtor has made significant progress in this case, including: (a) obtaining critical first-day relief; (b) completing a successful Section 363 asset sale that generated approximately $24,172,850 in proceeds; (c) filing schedules and statements; (d) establishing a claims bar date and commencing claims reconciliation; (e) holding the meeting of creditors; (f) working collaboratively with the Committee; (g) establishing Section 557 procedures; (h) filing an Omnibus Objection to the 557 Claims; and (i) maintaining operations under interim cash collateral orders.

30.    The Debtor's substantial progress in administering this case and working collaboratively with stakeholders supports the extension of the Exclusivity Periods.

*IV.    The Debtor Is Paying Its Bills as They Come Due*

31.    The Debtor has paid its postpetition debts in the ordinary course of business or as otherwise provided by Court order and intends to continue to do so. The Debtor has continued to operate under interim cash collateral orders, meeting its obligations to employees and critical vendors for goods and services provided after the Petition Date.

*V.    This Is the Debtor's First Request for an Extension of Exclusivity*

32.    This is the Debtor's first request for an extension of the Exclusivity Periods. Courts routinely grant a debtor's first request for an extension. *See In re Apex Pharm., Inc*., 203 B.R. 432, 441 (N.D. Ind. 1996) ("It is true that during the initial 120-day period in which debtors have an

exclusive right to file a plan of reorganization . . . the bankruptcy courts apply a lesser standard in determining whether the burden of showing 'a reasonable possibility of a successful reorganization within a reasonable time' has been satisfied."); *see also In re Borders Grp., Inc*., 460 B.R. 818, 825 (Bankr. S.D.N.Y. 2011) (same). There is ample precedent for an initial extension of exclusivity of at least 120 days, as the Debtor seeks here. *See, e.g., Hoffinger Indus., Inc*., 292 B.R. at 644 (granting a five-month extension prior to the exclusivity period expiring); *Wisconsin Barge Line, Inc*., 78 B.R. at 948 (granting exclusivity extension in large and complex case).

VI.     *The Debtor Is Not Seeking an Extension to Pressure Creditors*

33.     The Debtor has no ulterior motive in seeking an extension of the Exclusivity Periods. The Debtor has worked diligently and in good faith with all stakeholders, including the Committee, the prepetition secured lenders, the Texas Producers, and the sureties. The Debtor has engaged in extensive negotiations and has sought to resolve disputes consensually where possible.

34.     The Debtor is not seeking an extension to pressure its creditors or other parties in interest, but rather to allow sufficient time for the Court to resolve the 557 Claims so that the Debtor can propose a feasible and confirmable plan.

VII.     *An Extension of the Exclusivity Periods Will Not Prejudice Creditors*

35.     The Debtor seeks to maintain exclusivity to focus its efforts on the resolution of the 557 Claims and the formulation of a chapter 11 plan that maximizes value for all creditors. Extending the Exclusivity Periods will benefit creditors by avoiding the drain on estate assets attendant to the potential proposal of competing chapter 11 plans and disputes relating thereto.

36.     All stakeholders benefit from the continued stability and predictability that comes with the Debtor being the sole plan proponent during the exclusivity period. Moreover, even if the Court approves an extension of the Exclusivity Periods, nothing prevents parties in interest from

10

later appearing before the Court to assert that cause supports termination of the Debtor's exclusivity.

37.     Accordingly, the relief requested herein is without prejudice to the Debtor's creditors and will instead benefit the Debtor's estate, its creditors, and all other key parties in interest. As outlined herein, since the Petition Date, the Debtor has actively worked towards a successful conclusion of this chapter 11 case. Accordingly, the Debtor respectfully submits that sufficient cause exists to extend the Exclusivity Periods as provided herein.

## **NOTICE**

38.     The Debtor will provide notice of this Motion to the following parties or their respective counsel, if known: (a) the Office of the United States Trustee for the District of Nebraska; (b) counsel to the Official Committee of Unsecured Creditors; (c) counsel to BMO Bank N.A., as administrative agent for the prepetition secured lenders; (d) counsel to the Texas Producers; (e) counsel to Harco National Insurance Company and International Fidelity Insurance Company; (f) all parties who have filed Grain Claim Forms in this case; (g) all creditors and parties in interest who have filed proofs of claim; and (h) any party that has requested notice pursuant to Bankruptcy Rule 2002.

39.     In light of the nature of the relief requested, the Debtor submits that no other or further notice is required.

## **NO PRIOR REQUEST**

40.     No prior request for the relief sought in this Motion has been made to this or any other court.

WHEREFORE, the Debtor respectfully requests: (1) that the Court enter an order extending the Filing Exclusivity Period through and including July 15, 2026, and the Solicitation

Exclusivity Period through and including September 13, 2026; and (2) leave to submit a proposed

order for the Court's consideration granting such relief.

DATED this 13th day of March, 2026.

HANSEN-MUELLER CO., Debtor,

By: */s/ Brian J. Koenig*
Brian J. Koenig, #23807
Donald L. Swanson, #16385
Trevor J Lee, #27063
KOLEY JESSEN P.C., L.L.O.
1125 South 103rd Street, Suite 800
Omaha, NE 68124
(402) 390-9500
(402) 390-9005 (fax)
Brian.Koenig@koleyjessen.com
Don.Swanson@koleyjessen.com
Trevor.Lee@koleyjessen.com